UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------- x

HOLLY MARIE HUMMEL, on behalf of    )    No. 07-civ-5473
herself and others similarly situated,    )
    )
    Plaintiff,    )
    )
    -against-    )
    )
ASTRAZENECA LP,    )
    )
    Defendant.    )
    )

--------------------------------------------------- x


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT


Michael R. DiChiara
Charles Joseph
JOSEPH & HERZFELD, LLP
757 Third Avenue, 25th Floor
New York, New York 10017
Tel. (212) 688-5640
MD@JHLLP.COM

James A. Jones
Gillespie Rozen Watsky & Jones, P.C.
3402 Oak Grove Ave., Suite 200
Dallas, TX 75204
jaj@grwlawfirm.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...............................................................i

I.   INTRODUCTION...............................................................1

    A.   PLAINTIFF AND OTHER PSS  ARE NOT EXEMPT AS OUTSIDE SALESPEOPLE.....................................1

    B.   PLAINTIFF AND OTHER PSS ARE NOT EXEMPT AS ADMINISTRATIVE EMPLOYEES...........................1

II.   ARGUMENT ..................................................................2

    A.   DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF THE RELEASE..............2

    B.   EXEMPTIONS TO THE FLSA ARE NARROWLY CONSTRUED AGAINST EMPLOYERS....................6

    C.   THE OUTSIDE SALES EXEMPTION OF THE FLSA DOES NOT APPLY TO PLAINTIFF.........................7

    D.   THE ADMINISTRATIVE EXEMPTION OF THE FLSA DOES NOT APPLY TO PLAINTIFF.....................11

        1.   PSSs Do Not Perform Administrative Work..11

        2.   PSSs Do Not Exercise Discretion or Independent Judgment Concerning Matters of Significance.......................................16

        3.   The Discretion of PSSs is Limited to Insignificant Matters

III.   Conclusion.................................................................23

## TABLE OF AUTHORITES

**Cases** ...........................................................................................................................**Page**

*A. H. Phillips, Inc.* v. *Walling,* 324 U.S. 490, 493 (1945) ............................................ 22

*Addison* v. *Holly Hill Fruit Products, Inc.,* 322 U.S. 607, 617 (1944)........................... 23

*Amendola* v. *Bristol-Myers Co.,* ___ F.Supp.2d ___, 2008 WL 2309165 (S.D.N.Y. June 4, 2008) .......................................................................................................................... 8

*Amendola* v. *Bristol-Myers Co.,* No. 07 Civ 6088 (DLC), 2008 U.S. Dist. LEXIS 43681 (S.D.N.Y. June 4, 2008)...................................................................................... 10, 11

*Amendola* v. *Bristol-Myers Squibb Co.*................................................................................. 13

*Arnold* v. *Ben Kanowsky, Inc.,* 361 U.S. 388, 392 (1960) .............................................. 7

*Black* v. *Comdial Corp.,* NO. 92-081-C, 1994 U.S. Dist. LEXIS 2457, at *12 (W.D. Va. Feb. 5, 1994) ............................................................................................................... 19

*Bothell* ............................................................................................................................... 22

*Bothell* v. *Phase Metrics, Inc.,* 299 F.3d 1120 (9th Cir. 2002) .................................. 12, 13, 14, 15

*Casas* v. *Conseco Finance Corp.,* 2002 WL 507059.......................................................... 12

*Casas,* 2002 U.S. Dist LEXIS 5775 ............................................................................. 18, 20

*Cherry Green Prop. Corp. v. Wolf,* 281 A.D.2d 367, 368, 722 N.Y.S.2d 537, 528 (1ˢᵗ Dep't 2001) .................................................................................................................... 4

*Cherry Green Prop. Corp. v. Wolf,* 281 A.D.2d 367, 368, 722 N.Y.S.2d 537, 538 ...................... 6

*Citicorp. Industrial Credit, Inc., v. Brock.*......................................................................... 22

*Clark* v. *J.M. Benson Co. Inc.,* 789 F.2d 282, 287-288 (4ᵗʰ Cir. 1986)............................ 21

*Clements* v. *Resource Consultants, Inc.,* 2006 WL 1579634 (D. Utah June 2, 2006)................... 9

*Coultrip et al.* v. *Pfizer, Inc.,* 1:06-cv-9952 (S.D.N.Y. June 19, 2008) ............................ 8

*Cusumano* v. *Maquilan Int'l Inc.,* 2005 U.S.Dist. LEXIS 30257, at *18 (M.D. Fla. 2005)......... 18

*Difilippo* v. *Barclays Capital, Inc* ........................................................................................ 2

*Difilippo* v. *Barclays Capital, Inc.,* 05 Civ. 4990, 2008 U.S. Dist. LEXIS 37064, *21 (S.D.N.Y. May 5, 2008)............................................................................................... 2

*Enock* v. *National Westminster Bankcorp,* 226 A.D.2d 235, 235-236, 641 N.Y.S.d 27, 28 (1ˢᵗ Dep't 1996)........................................................................................................... 5

*Enock* v. *National Westminster Bankcorp,* 226 A.D.2d 235, 235-36, 641 N.Y.S.2d 27, 28 (1st Dep't 1996)........................................................................................................... 5

*Freeman* v. *Nat'l Broad. Co., Inc.,* 80 F.3d 78, 82 (2d Cir. 1996) ................................... 7

*Gazes* v. *Delprete (In re Clinton Street Foor Corp.),* 254 B.R. 523, 535 (Bankr. S.D.N.Y. 2000) ............................................................................................................................ 5

*Heidtman* v. *County of El Paso,* 171 F. 3d 1038, 1042 (5ᵗʰ Cir. 1999)............................ 19

*Jacobson* v. *Sassower,* 66 N.Y.2d 991, 993, 499 N.Y.S.2d 381, 382 (N.Y. 1985) .................... 6

*Johannes* v. *Aerotek,* 2001 U.S. Dist. Lexis 25409 (C.D. Cal. 2001)............................... 22

*Mabee* v. *White Plains Publishing Co.,* 327 U.S. 178, 183-184 (1946)............................. 23

*Maddaloni Jewelers, Inc.* v. *Rolex Watch U.S.A., Inc.,* 354 F. Supp. 2d 293, 299 (S.D.N.Y. 2004)......................................................................................................... 5

*Martin* v. *Cooper Electric Supply Co.,* 940 F.2d 896, 900 (3rd Cir. 1991) ........................ 7

*Martin* v. *Cooper Electric Supply Co.,* 940 F.2d 896, 905 (3rd Cir. 1991) .................... 12, 14

*Miranda-Albino* v. *Ferrero, Inc.* 455 F.Supp.2d 66, 74 n.6 (D.P.R. 2006) ...................... 9

*Neary,* 517 F. Supp. 2d at 616 ..................................................................................... 19

*Pharmaceuticals, Inc.* v. *Hoffman-La Roche, Inc.,* 2006 WL 2588002 at *31 (S.D.N.Y., Sept. 6, 2006) ............................................................................................................ 22

*Pontius v. Delta Financial Corp.*, No.04-1737, 2007 U.S. Dist. LEXIS 50980, at *42-43
(W. D. Pa., Mar. 20, 2007)................................................................................. 18
*Powell v. United States Cartridge Co.*, 339 U.S. 497, 512 (1950)............................. 23
*Proctor & Gamble Pharmaceuticals, Inc. v. Hoffman-La Roche, Inc.*, 2006 WL 2588002
at *31 (S.D.N.Y., Sept. 6, 2006)......................................................................... 22
*Reich v. John Alden Life Ins. Co.*, 126 F.3d 1 (1ˢᵗ Cir. 1997)................................. 13
*Reich v. State of New York*, 3 F.3d 581, 589 (2d Cir. 1993).................................... 14
*Reimnitz v. Source One Distribs., Inc.*, 2007 WL 1624778 (S.D. Fla. June 4, 2007)....... 9
*Robinson-Smith v. Government Employees Ins. Co.*, 323 F.Supp.2d 12, 25 (D.D.C. 2004)........ 20
*Roney*, 790 F. Supp. at 27 ................................................................................. 19
*Seminole Tribe v. Florida*, 517 U.S. 44, 59-66 (1996) ........................................... 15
*Simel v. JP Morgan Chase,* 05 CV 9750 (GBD), 2007 U.S. Dist. LEXIS 18693 (S.D.N.Y.
March 19, 2007)................................................................................................. 2
*Simel*, 2007 U.S. Dist. LEXIS 18693.................................................................... 2
*Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 413 (5th Cir. 1975) ...................... 9
*Structural Processing Corp. v. Farboil Co.*, 234 A.D.2d 284, 650 N.Y.S.2d 769, 770 (2d
Dep't 1996).......................................................................................................... 3
*Wirtz v. Charleston Coca Cola Bottling Co.*, 356 F.2d 428 (4th Cir. 1966) ............... 9
*Wirtz v. Keystone Readers Service, Inc.*, 418 F.2d 249, 252-53 (5th Cir. 1969) ........... 9

## Other Authorities

1997 DOLWH LEXIS 30, at *4-5 (DOL Opinion Letter, July 23, 1997)..................... 12
1999 DOLWH Lexis 45, April 20, 1999 ................................................................. 9
DOL Op. Letter, 1997 DOLWH LEXIS 30 at *6......................................... 19, 21
DOL Op. Letter, 1997 DOLWH LEXIS 52, at *3 (Oct. 20, 1997.) ......................... 21
DOL Op. Letter, FLSA2005-54, 2005 DOLWH LEXIS 68, at *16 (Dec. 16, 2005)........... 22
DOL Op. Letter, FLSA2006-23NA, 2006 DOLWH LEXIS 54, at *15 (Oct. 16, 2006) ........ 22
DOL Op. letter, FLSA2006-27, 2006 DOLWH LEXIS 37, at *7 (July 24, 2006)........... 19
DOL Op. letter, FLSA2006-27, 2006 DOLWH LEXIS 37, at *7-8 (July 24, 2006) ........... 21
DOL Op. Letter, FLSA2005-54, 2005 DOLWH LEXIS 68, at *18 (Dec. 16, 2005)........... 20

## Regulations

29 C.F.R. § 541.200-202............................................................................... 11
29 C.F.R. § 541.205(b)................................................................................. 11
29 C.F.R. § 541.503(a)................................................................................... 8
29 C.F.R. § 541.504(c)(3)............................................................................... 9
29 C.F.R. §541.500....................................................................................... 7
29 C.F.R. §541.503(b)................................................................................... 8
29 U.S.C. §203(k)........................................................................................ 7
29 U.S.C.§ 213(a)(1).................................................................................... 11

21 U.S.C. § 333(b)(1)(B) .............................................................................. 20
29 C.F.R. §541.201(a)................................................................................... 2
29 C.F.R. §541.202(a)-(b)............................................................................. 2
3 Fed. Reg. 2518 (Oct. 20, 1938)................................................................... 15
69 Fed. Reg. 22, 122, 141 .............................................................................. 13

69 Fed. Reg. 22122, 22141 ............................................................................................ 14, 15

69 Fed. Reg. 22122, 22141 (2004) ...................................................................................... 15

## I.    <u>INTRODUCTION</u>

New York Labor Law requires employers to provide their employees with overtime pay ("overtime") for every hour of work exceeding 40 in each work week.  Plaintiff is a former pharmaceutical sales specialist representative ("PSS") formerly employed by Defendant AstraZeneca ("AZ") in New York.  Plaintiff and other similarly situated PSSs work more than 40 hours per week, but J&J pays them no overtime because the Company misclassifies them as exempt from the overtime requirements of the FLSA.

### A.    **PLAINTIFF AND OTHER PSS  ARE NOT EXEMPT AS OUTSIDE SALESPEOPLE**

AZ incorrectly classifies PSSs as outside salespersons. A PSS's primary job duty is "detailing" -- promoting AZ's products by visiting/calling on doctors and delivering, often by rote, "core messages" that AZ has scripted describing the drugs.  PSSs do not "sell" anything. In accordance with the plain language of New York Labor Law, as well as the FLSA and corresponding regulations, an employee must be engaged in making his own "sales" in order to qualify for the outside salesperson exemption.  Indeed, it defies common sense, and the plain meaning of the state and federal statutes, as well as federal regulations, to classify an interaction as "selling" or "sales" where one party (a PSS) does not sell anything and one party (the health care provider) does not purchase anything. Thus, Defendant cannot establish that PSSs plainly and unmistakably fit within a narrow interpretation of the terms of the outside sales exemption.  Accordingly, Defendant's motion for summary judgment on the outside sales exemption must be denied.

### B.    **PLAINTIFF AND OTHER PSS ARE NOT EXEMPT AS ADMINISTRATIVE EMPLOYEES**

Similarly, PSSs are not exempt from overtime pay under the "administrative exemption." A PSS's primary duty does not encompass either of the requirements of the administrative exemption. First, PSSs do not perform work "directly related to [their employer's] management affairs or general business operations," a term which the FLSA's regulations define broadly by as "servicing the

–1–

employer's business." *See* 29 C.F.R. §541.201(a). Second, PSSs do not "exercise discretion and independent judgment on matters of significance." *Id.* at §541.202(a)-(b). Indeed, Defendant strictly controls a PSSs' activities, as Defendant assigns each Rep a territory and dictates which health care providers to call on and how often, the hours they must be in the field, which materials a Rep can use on a "sales" call, and policies with which PSSs must strictly comply.

Accordingly, PSSs are also not exempt under the administrative exemption, and the Court should deny Defendant's motion in its entirety.

## II. <u>ARGUMENT</u>

### A.   DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF THE RELEASE.

In *Difilippo v. Barclays Capital, Incl.*, this Court recently held that releases of New York wage and hour claims could be enforced where they "are clear and unambiguous on their face." 05 Civ. 4990, 2008 U.S. Dist. LEXIS 37064, *21 (S.D.N.Y. May 5, 2008).2 However, in this case -- unlike the cases relied upon by Defendant -- there is no "express" or "clear and unambiguous" waiver of Plaintiff's wage-hour claims. Thus, Defendant's motion for summary judgment should be denied.

In both *Simel* and *Difilippo*, the releases at issue contained language expressly giving up the right to bring wage and hour claims. *See Simel*, 2007 U.S. Dist. LEXIS 18693, at *5 (waiving claims for "violation of any Federal or State wages and hours laws, statutes or regulations"); *Difilippo*,

---

1 Ironically, the Court in this case also found that plaintiffs were not exempt under the administrative exemption for reasons similar to those set forth below.
2      *See also Simel v. JP Morgan Chase,* 05 CV 9750 (GBD), 2007 U.S. Dist. LEXIS 18693 (S.D.N.Y. March 19, 2007) (enforcing release where "[t]he Agreement specifically covers claims for wages, hours and conditions of employment" because it "expresse[d] the clear and unambiguous intent of plaintiff to settle and release the state law claims contained in his complaint").

2008 U.S. Dist. LEXIS 37064, at *23-24 (release specifically referenced claims under the "New York State Labor Law"). The courts in both cases relied on that express language in finding that the plaintiffs had specifically waived their New York wage-hour claims. *Id.*

Here, there is no such express waiver of Plaintiff's wage-hour claims. Defendant's argument relies entirely on a general release, which – albeit broad – makes no mention whatsoever of wage and hour or compensation claims. This is remarkably unsurprising given that Plaintiff did not enter into the underlying settlement agreement as a result of any dispute with Defendant regarding her compensation. Rather, she signed the release in connection with claims she alleged against Defendant for employment discrimination. Thus, predictably, there is an entire paragraph in the Release specifically listing and waiving all possible discrimination claims. (Release, ¶3) Discrimination claims, however, are not wage and hour claims. Indeed, discrimination claims are governed by wholly separate statutes than are wage and hour claims and are administered by wholly separate governmental agencies. Had the parties specifically intended to waive wage and hour claims in addition to discrimination claims, Defendant, who drafted the release, could easily have included language specifically releasing any and all wage-hour claims, just as the parties in the cases upon which Defendant now attempts to rely did.

On its summary judgment motion, Defendant bears the burden of establishing that the parties intended that the Release discharge the overtime claims alleged in this action.3 Defendant, however, has failed to offer any evidence that either party even considered the specific issues in this litigation when Plaintiff signed the Release in November 2005. This lack of evidence is not unexpected.

---

3    *See Structural Processing Corp. v. Farboil Co.*, 234 A.D.2d 284, 650 N.Y.S.2d 769, 770 (2d Dep't 1996). Moreover, all inferences must be drawn in favor of the non-movant – Plaintiff. *Global IP Solutions, Inc. v. Delta Three, Inc.*, Civil Action No. 07-7631, 2008 U.S. Dist. LEXIS 35313, *3 (S.D.N.Y. Apr. 29, 2008) (citation omitted).

Plaintiff signed the Release before the recent spate of class action suits by pharmaceutical PSSs against their employers for unpaid overtime, objecting to their misclassification as exempt from FLSA and state wage-hour requirements. The first such class action complaint was not filed until March of 2006. (Declaration of Michael DiChiara ("DiChiara Decl") at ¶ 27.) So Plaintiff was unaware and could not have been aware of her potential overtime claims.

Moreover, Defendants should not be heard to argue that overtime was within the contemplation of either party. Defendant has consistently taken the position that it is unthinkable that PSSs are entitled to overtime. Defendant's memorandum at 3 (it is long standing precedent that PSSs are exempt) (*citing* Cote 558 F. Supp at 885). *See also* DiChiara Decl. at ¶ 3, Ex. 1, Excerpts from Brief of *Amici Curiae*, at pp. 2-6 (noting the decades old practice of classifying pharmaceutical representatives as exempt). *See also* deposition of Cindy Atha, AstraZeneca corporate representative, Ex. 24, at 226, 234-36("PSSs have been exempt as long as AstraZeneca has been around and as long as I can recall in the industry.")

Regardless of whether Defendant deliberately misclassified its pharmaceutical PSSs as exempt from overtime requirements – as alleged by Plaintiff (Compl. ¶19) – or whether Defendant truly "always" believed that its PSSs were exempt, neither positions supports a finding that the parties intended to include state overtime claims in the Release. If the Defendant's failure to specifically include New York Labor Law claims was deliberate, it would have been an intentional attempt to mislead Plaintiff into waiving claims of which she was unaware. New York courts have held that statutory rights may only be waived "if made with knowledge of the right and the intention to waive it." *Cherry Green Prop. Corp. v. Wolf,* 281 A.D.2d 367, 368, 722 N.Y.S.2d 537, 528 (1st Dep't 2001) (citing cases). If Defendant's misclassification was not in bad faith, and it had no basis

–4–

for anticipating that Plaintiff would bring claims against it for unpaid overtime, then, obviously, neither party contemplated the inclusion of overtime claims in the Release, making it "less likely that [those claims] are covered by the Release." *See Gazes v. Delprete (In re Clinton Street Foor Corp.),* 254 B.R. 523, 535 (Bankr. S.D.N.Y. 2000).

"A release that employs general terms will not bar claims outside the parties' contemplation at the time the release was executed." *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.,* 354 F. Supp. 2d 293, 299 (S.D.N.Y. 2004). "'The meaning and coverage of a general release depends on the controversy being settled and upon the purpose for which the release was actually given . . . . A release may not be read to cover matters which the parties did not desire or intend to dispose of.'" *Enock v. National Westminster Bankcorp,* 226 A.D.2d 235, 235-236, 641 N.Y.S.d 27, 28 (1st Dep't 1996) (citations omitted).

At the time Plaintiff signed the Settlement Agreement, Defendant took the position that Plaintiff and other pharmaceutical PSSs were not eligible to receive overtime compensation. The pending claims were unknown to Plaintiff and either undisclosed or unrecognized by Defendant, and hence, not the subject of dispute at the time, making it "less likely that [those claims] are covered by the Release." *See Gazes v. Delprete (In re Clinton Street Food Corp.),* 254 B.R. 523, 535 (Bankr. S.D.N.Y. 2000).

"A release that employs general terms will not bar claims outside the parties' contemplation at the time the release was executed." *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.,* 354 F. Supp. 2d 293, 299 (S.D.N.Y. 2004). "'The meaning and coverage of a general release depends on the controversy being settled and upon the purpose for which the release was actually given . . . . A release may not be read to cover matters which the parties did not desire or intend to dispose of.'"

–5–

*Enock v. National Westminster Bankcorp*, 226 A.D.2d 235, 235-36, 641 N.Y.S.2d 27, 28 (1st Dep't 1996) (citations omitted). Plaintiff's current overtime claims were neither contemplated by the parties nor were those claims related to the controversy settled by the agreement. New York courts further have held that statutory rights may only be waived "if made with knowledge of the right and the intention to waive it." *Cherry Green Prop. Corp. v. Wolf*, 281 A.D.2d 367, 368, 722 N.Y.S.2d 537, 538 (1st Dep't 2001) (citing cases). Here, there is no indication that Plaintiff had any intention to waive her rights to overtime compensation under New York Labor Law.

Moreover, it does not appear that Plaintiff received any additional consideration for releasing her potentially valuable claims for overtime pay. The Settlement Agreement provided that she would receive a lump sum payment of approximately $13,000 and six months of health, dental and life insurance coverage. (Release, ¶2) Plaintiff's overtime claims, however, are estimated at least $100,000. Even discounting that amount for the possibility that her claim will not succeed, it is highly unlikely that Plaintiff knowingly forfeited those claims – in addition to her discrimination claim – for only $13,000. *See Gazes,* 254 B.R. at 535 (denying summary judgment on the basis of general release, in part, because "it does not appear . . . that the estate received any additional consideration for releasing such potentially valuable claims).

Finally, the Release clearly is not unambiguous. It is axiomatic that any ambiguities in the Release "must be construed most strongly against the party who prepared it [Defendant], and favorably to [Plaintiff] who had no voice in the selection of its language. *Jacobson v. Sassower,* 66 N.Y.2d 991, 993, 499 N.Y.S.2d 381, 382 (N.Y. 1985). At the very least, there exists a material issue of disputed fact regarding the parties' intent with respect to the Release. Thus, Defendant's motion for summary judgment should be denied.

B.    **EXEMPTIONS TO THE FLSA ARE NARROWLY CONSTRUED AGAINST EMPLOYERS**

Any exceptions to the FLSA's overtime requirement must be "'narrowly construed' against the employers seeking to assert them ..." *Arnold* v. *Ben Kanowsky, Inc.,* 361 U.S. 388, 392 (1960). Only those employees who are "plainly and unmistakably within their terms and spirit" may be denied overtime pay. *Id.* If an employer fails to meet even a single element of its affirmative defense of exemption, the employees are not exempt and are entitled to overtime pay. *Martin v. Cooper Electric Supply Co.*, 940 F.2d 896, 900 (3rd Cir. 1991).

C.    **THE OUTSIDE SALES EXEMPTION OF THE FLSA DOES NOT APPLY TO PLAINTIFF**

The regulations[4] define an "outside salesman" as an employee "(1) Whose primary duty is: (i) making sales within the meaning of section 3(k) of the Act, or (ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and (2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty." 29 C.F.R. §541.500. Given that PSSs admittedly do not obtain orders or contracts for services or for the use of facilities, and given that it is undisputed that PSSs are customarily and regularly engaged away from the employer's place or places of business, the ultimate issue regarding the outside sales exemption is whether A-Z can meet its heavy burden of proving that PSSs are engaged in making sales within the meaning of section 3(k) of the FLSA. Section 3(k) of the FLSA defines sales as "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. §203(k).

---

[4]    Department of Labor regulations "have the force of law and are to be given controlling weight unless they are found to be arbitrary, capricious, or manifestly contrary to the statute." *Freeman v. Nat'l Broad. Co.,*

court to have considered them. Indeed, within the past month one district court in this very district has determined that the outside sales exemption does not apply to pharmaceutical PSSs, *Amendola v. Bristol-Myers Co.*, ___ F.Supp.2d ___, 2008 WL 2309165 (S.D.N.Y. June 4, 2008), and another district court in this district has denied a pharmaceutical company's motion for summary judgment on this very issue. *Coultrip et al. v. Pfizer, Inc.*, 1:06-cv-9952 (S.D.N.Y. June 19, 2008). Those cases to which A-Z makes reference are all from a single district in California, are all decided pursuant to California state law and not the FLSA, are all on appeal to the Ninth Circuit, and are all wrongly decided.

A-Z's argument is creative, convoluted, and complicated: somehow by using the language of "sales," A-Z can transmogrify people who have not sold, will not sell, and cannot sell, into salespersons. In making this argument, however, A-Z ignores the fundamental difference between selling someone ON a product and selling someone a product.

The fundamental concept that underlies this case is the promotion/sales distinction – promotion (selling someone **on** a product) is not sales (selling someone a product), unless that promotional activity is undertaken in connection with consummating one's own sales (in other words, in connection with actually selling someone a product). *See* 29 C.F.R. § 541.503(a) ("Promotional work that is actually performed incidental to and in conjunction with an employee's *own* outside sales or solicitations is exempt work. On the other hand, promotional work that is incidental to sales made, or to be made, by someone else is not exempt outside sales work.") (emphasis added); 29 C.F.R. §541.503(b) ("Promotional activities designed to stimulate sales that will be made by someone else are not exempt outside sales work."). Following the regulations, Courts have consistently required that employees must complete sales to fall within the "outside

–8–

sales" exemption.[5] *See also* 29 C.F.R. § 541.504(c)(3) ("[T]he [employee] is not an outside salesman since he does not consummate the sale or direct his efforts toward making the sale himself.").

The best case that A-Z can make is that PSSs sell doctors **on** their products. PSSs provide information to doctors in the hope that doctors, armed with the information provided by PSSs, will

---

[5] *See Clements v. Resource Consultants, Inc.*, 2006 WL 1579634 (D. Utah June 2, 2006) ("In order for the outside sales exemption to apply, an employee must actually make a sale."); *Miranda-Albino v. Ferrero, Inc.* 455 F.Supp.2d 66, 74 n.6 (D.P.R. 2006) ("[Defendant] argues that the delivery, merchandising, collection, and other tasks [plaintiff] performed were 'incidental to and in conjunction with' his outside sales. [Plaintiff] does not directly contest this assertion. Rather, he argues that he was not engaged in outside sales at all. If [Plaintiff] successfully argues he was not making sales, then the analysis [regarding whether other tasks were 'incidental'] becomes irrelevant."); *Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 413 (5th Cir. 1975) ("[T]he trial court overlooked completely the basic fact that Skipper's testimony was undisputed to the extent that he did no selling, in the sense that he had no face-to-face negotiation with a store owner or manager who was in the position of purchasing or ordering the products which Skipper was delivering."); *Wirtz v. Charleston Coca Cola Bottling Co.*, 356 F.2d 428 (4th Cir. 1966); *Wirtz v. Keystone Readers Service, Inc.*, 418 F.2d 249, 252-53 (5th Cir. 1969) ("To the extent that [plaintiffs] are engaged in promotional activities designed to stimulate sales which will be made by someone else, the work must be considered non-exempt."); *Reimnitz v. Source One Distribs., Inc.*, 2007 WL 1624778 (S.D. Fla. June 4, 2007) (denying defendant's motion to dismiss where plaintiffs did not make sales, rather were promoters); *see also* U.S. Dep't of Labor, Wage and Hour Division, Opinion Letter, 1999 DOLWH Lexis 45, April 20, 1999 (college recruiter whose "primary responsibility is to 'sell' students and their parents on the college" "is not engaged in making sales of the college's services, or obtaining contracts for its services. Rather, college recruitment activity appears analogous to sales promotion work, since, like a promotion person who solicits customers for a business, the college recruiter is engaged in identifying qualified customers, i.e., students, and inducing their application to the college, which in turn decides whether to make a contractual offer of its educational services to the applicant. Accordingly, it is our opinion that the outside salesman exemption does not apply").

prescribe more of A-Z's prescription drug products, which will lead to more sales by pharmacies of A-Z's prescription drug products, which will lead pharmacies to purchase more of A-Z's prescription drug products from wholesalers, which will lead the wholesalers to order and purchase more of A-Z's prescription drug products from A-Z.

This, of course, is the same cycle driven by A-Z's other promotion vehicles. A-Z spends hundreds of millions of dollars on direct-to-consumer advertising each year, the purpose of which is to sell consumers and/or doctors **on** A-Z's prescription drug products in the hope that doctors will prescribe more of A-Z's prescription drug products, which will lead to more sales by pharmacies of A-Z s prescription drug products, which will lead pharmacies to purchase more of A-Z's prescription drug products from wholesalers, which will lead the wholesalers to order and purchase more of A-Z's prescription drug products from A-Z. Were there an actual sale involved in the PSSs' activities, the cycle would end there. Therein lies the essential difference between promotion and sales.

PSSs are not salesmen. They do not provide a product to a customer in return for payment or the promise of payment. They do not take or obtain orders for their employer's products that are filled by their employer. They are promoters who seek to sell a doctor **on** their employer's product in the hope that the doctor will write more prescriptions that will be filled by an unknown, unrelated third-party pharmacy. At bottom, A-Z's entire argument in this case can be boiled down to a refusal to recognize this fundamental difference between selling someone **on** a product and actually selling someone a product.

In contrast to the California state law decisions upon which A-Z so heavily relies, in an opinion issued on June 4, 2008, Judge Cote of the Southern District of New York held that the outside sales exemption does *not* apply to pharmaceutical PSSs. *See Amendola v. Bristol-Myers Co.*,

No. 07 Civ. 6088 (DLC), 2008 U.S. Dist. LEXIS 43681 (S.D.N.Y. June 4, 2008). Judge Cote

rejected the precise arguments that A-Z makes in this case, including the contention that the "indicia

of sales" test should be used to determine whether PSSs are exempt. *Amendola*, 2008 U.S. Dist.

LEXIS 43681 at *29-32. In holding that PSSs were not exempt outside salespersons, Judge Cote

specifically declined to follow the recent trio of California cases upon which A-Z relies:

> These California decisions will not be followed here. Of course,
> these cases apply California's labor laws, and not the FLSA. More
> significantly, however, they do not do not acknowledge that the
> FLSA's exemptions must be narrowly construed against employers,
> or address the governing principles of statutory construction in
> grappling with the plain meaning of the regulatory term "sales."

*Id.* at *33.

### D.    THE ADMINISTRATIVE EXEMPTION OF THE FLSA DOES NOT APPLY TO PLAINTIFF

To prove that PSSs are exempt as administrative employees under federal law, A-Z must

prove <u>both</u> that: (1) PSSs' primary duty consists of performing office work or non-manual work

directly related to the management or the general business operations of the employer or the

employer's customers; *and* (2) that PSSs' primary duties include the exercise of discretion and

independent judgment with respect to matters of significance. *See* 29 U.S.C.§ 213(a)(1); 29 C.F.R. §

541.200-202. If A-Z fails to carry its heavy burden with respect to <u>either</u> prong of the administrative

exemption, the exemption cannot be applied to A-Z's PSSs.

### 1.    PSSs Do Not Perform Administrative Work

A-Z erroneously concludes that, because PSSs performed the kinds of work listed in 29

C.F.R. § 541.205(b), they must be doing exempt administrative work. A-Z's argument fails because

not all activities that involve marketing or promotion constitute exempt administrative work.

Obviously, the employee who hands out flyers on the street, while performing promotion activities,

is not engaging in exempt administrative work. Rather, in order for the listed tasks to be administrative in nature, the employee must be engaged *in running the business itself or determining its overall course or policies.* *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120 (9th Cir. 2002). Here, Plaintiff and other PSSs did not make, affect, interpret, or implement policy for AZ, nor were they involved in planning long term or short term business objectives for AZ. Moreover, the job of a PSS did not require any special schooling or background in science, health care, or pharmacology.

As a matter of law, merely promoting a drug to a very limited group of doctors, as PSSs accomplish here, is not deemed work "directly related to the management policies or general business operations" of A-Z. See 1997 DOLWH LEXIS 30, at *4-5 (DOL Opinion Letter, July 23, 1997) ("An employee whose primary duty is sales promotion within the meaning of section 541.05 **engages in administratively exempt marketing activity geared to furthering the company's overall sales effort**, and is not engaged in the ordinary day-in-day-out selling activity directed at making specific sales. Examples of employees engaged in administrative sales promotion work would include those performing public relations or advertising, **those who design and/or organize a company's overall sales campaign, or those who advise management on general sales policy or formulate such policy**") (emphasis added). Courts consistently differentiate between a corporation's **general** marketing efforts, such as designing an overall sales campaign, and targeted marketing efforts, which is the case with PSSs. *See Martin v. Cooper Electric Supply Co.*, 940 F.2d 896, 905 (3rd Cir. 1991) 29 (to meet the administrative exemption, employee's sales promotion must be aimed at increasing, developing, or maintaining customer sales "generally" (as opposed to his own specific targets)); *Casas v. Conseco Finance Corp.*, 2002 WL 507059, at *9 (D. Minn. 2002) (holding that plaintiffs did not engage in duties directly related to the management or the general business

–12–

operations of defendant's business . . . Plaintiffs' efforts are not promoting [. . .] sales **generally**' but are actually selling loans directed to individual customers.").

In defining "work directly related to the management policies or general business operations," DOL regulations clearly envision higher, policy level marketing activities that focus on company-wide techniques – not targeted territory and doctor specific efforts to increase the writing of prescriptions.

As explained in the preamble to the revised DOL's administrative exemption regulations, the administrative exemption "relates to employees whose work involves servicing the business itself – employees who can be described as staff rather than line employees." 69 Fed. Reg. 22, 122, 141. Foot soldiers like PSSs are "line" employees, not "staff." *See, Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120 (9th Cir. 2002) ("The key issue is whether Bothell's primary duty while employed at Phase Metrics involved the performance of non-manual work "directly related to management policies or general business operations of Phase Metrics [. . .] The requirement is met if the employee engages in running the business itself or determining its overall course or policies, not just in the day-to-day carrying out of the business's affairs.").

While Judge Cote in *Amendola v. Bristol-Myers Squibb Co.*, was spot on in her analysis of the outside sales exemption, she missed the mark in her review of the administrative exemption. Judge Cote attempted to rely on the so-called "administrative/production" dichotomy in determining that PSSs were most likely administrative employees. However, in so doing, Judge Cote fell into the trap that many litigants and courts have fallen into – utilizing the administrative/production dichotomy as a bright line test in a manner for which it was never intended. Judge Cote relied upon the First Circuit's decision in *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1 (1st Cir. 1997), a decision

–13–

that represents a line of cases which wholly misuse the administrative/production dichotomy and which improperly conflate the second prong of the administrative exemption with the first. The analysis of the *John Alden* line of cases misinterpret the administrative/production dichotomy as a bright line test – determining what the "product" of the employer is, determining whether the employee at issue is involved in the production of that product, and then labeling the employee "administrative" or "production" based on the answer to that question. The fallacy in this analysis is that the administrative/production dichotomy was never intended to be such a bright line test. The administrative/production dichotomy is only intended as a tool to determine whether an employee is engaged in the management or general business operations of the employer, and is helpful ONLY if the employee clearly falls within the "production" category. *See Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120 (9th Cir. 2002) ("Only when work falls 'squarely on the production side of the line,' has the administration/production dichotomy been determinative. . . .[T]he distinction should only be employed as a tool toward answering the ultimate question, whether work is 'directly related to management policies or general business operations,' not as an end in itself."); 69 Fed. Reg. 22122, 22141 (same). The converse, however, is not true – an employee who is not involved in production is not necessarily "administrative." This is the primary fallacy of the *John Alden* line of cases which has been rejected by cases such as *Martin v. Cooper Electric Supply Co.*, 940 F.2d 896, 905 (3rd Cir. 1991), and *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120 (9th Cir. 2002). Moreover, by focusing on issues of discretion in analyzing the first prong of the administrative exemption, *John Alden* and its progeny improperly conflate the first prong with the second. This type of analysis was specifically rejected by the Second Circuit in *Reich v. State of New York*, 3 F.3d 581, 589 (2d Cir. 1993) (that police investigators exercised discretion in their duties was irrelevant to the first prong of the

–14–

administrative exemption because it did address itself "to the relevant inquiry: i.e., the relationship of the Investigators to the management policies or general business operations of" the employer), *overruled by implication on other grounds by Seminole Tribe v. Florida*, 517 U.S. 44, 59-66 (1996).

"[T]he administrative exemption covers only employees performing a particular type of work – work related to assisting with the running or servicing of the business." 69 Fed. Reg. 22122, 22141 (2004). PSSs simply do not fit within this category of employee. They are not among "those who can be described a staff rather than line employees, or functional rather than departmental heads." *Id.*[6] As such, A-Z cannot carry its heavy burden of showing that PSSs such as Plaintiff meet the first prong of the administrative exemption – that they engage in work directly related to the management or general business operations of their employer.

---

[6]     This limitation on those employees included within the definition of administrative employees is consistent with the history of that exemption. The FLSA became law on June 25, 1938. The Department of Labor issued its first regulations defining and delimiting the terms "executive, administrative, and professional" later that year, in October 1938. 3 Fed. Reg. 2518 (Oct. 20, 1938). In these initial regulations, the DOL did not separately define the administrative exemption from the executive exemption because the DOL recognized that the administrative exemption was intended to cover no more than a small subclass of executive employees. The administrative exemption did not obtain a separate definition until 1940, when the Stein Report explained that a separate definition was necessary to cover those employees who had "functional rather than departmental authority," meaning they did not "give orders to individuals." *See* Executive, Administrative, Professional * * * Outside Salesman Redefined, Wage and Hour Division, U.S. Department of Labor, Report and Recommendation of The Presiding Officer (Harold Stein) at Hearings Preliminary to Redefinition (Oct. 10, 1940). This history illuminates why the administrative exemption is limited to those employees engaged "in running the business itself or determining its overall course or policies, not just in the day-to-day carrying out of the business's affairs." *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120 (9th Cir. 2002).

**2.     PSSs Do Not Exercise Discretion or Independent Judgment Concerning Matters of Significance**

Because Hummel does not work in an administrative capacity to begin with, A-Z cannot possibly establish all the requirements of the administrative exemption and this Court need not go further to conclude that A-Z cannot establish that its PSSs are administratively exempt. Nevertheless, even if this Court were to reach the additional requirement under the administrative exemption that the employee exercise discretion and independent judgment on matters of substantial importance, material issues of material fact exist that would prohibit affirming the District Court's grant of summary judgment on this basis.  A-Z has failed to demonstrate as a matter of law that Hummel regularly exercised discretion and independent judgment on matters of substantial importance.

All of the following are examples concerning of the lack of discretion bestowed upon a PSS. All PSS are required to work at least 7.5 hours a day in the field calling on health care providers, exclusive of lunch and drive time to and from the first and last call.  If a PSS cannot be in the field for two or more hours on a particular day, the PSS must notify their district manager prior to 9 a.m. PSSs are required to be in the field a set number of days per year. (In 2007, PSSs were required to be in the field 220 days per year.)  Defendant requires each PSS to check their voice mail a minimum of three times per day, and a PSS *must* respond to all voice messages within 48 hours. A PSS is required to synchronize their computer every night (including Friday).  If a PSS is unable to synchronize for two consecutive days, the PSS must notify the DSM.  In addition, all email messages requiring a response must be submitted within 48 hours of receipt.  All of the above-referenced

–16–

expectations are *not suggestions*; rather, they are *requirements* of a PSS's job. Failure "to meet these expectations can and may result in discipline, up to an including termination."

In addition to controlling a PSS's time in the field and administrative requirements of their jobs, AZ has strict rules governing a PSS's interaction with a health care provider. Defendant provides PSSs with promotional material to assist them in their presentations with doctors, but those materials marked for background use only cannot be shared with health care providers. Thus, even if a PSS, in exercising discretion and independent judgment, believes such material may be helpful to provide to a health care provider, Defendant prohibits a PSS from doing do. PSSs cannot mark, highlight or underline promotional materials or reprints. AZ requires PSSs to have lunches, dinners, and other programs for doctors; they are given a budget for the programs that they are required to use entirely. AZ provides PSSs with a list of approved speakers from which a PSS cannot deviate if the PSS wanted to hold a speaker program.

Furthermore, AZ provides PSSs a list of doctors in their territory with whom PSSs should interact. Only under the guidance of their district manager, a PSS could refine this list by either adding or removing the names of doctors from the list. AZ requires the PSSs to call on the higher ranked physicians more frequently than the other physicians on their list, and even if PSSs are meeting their "sales" targets despite not meeting with their doctors the requisite number of times, their respective DM would inquire about the PSS's failure to follow AZ policy. AZ provides PSSs with scripts of what they should say during their sales calls. AZ requires PSSs to convey the core message and use a visual aid on each sales call. PSSs are required to offer the doctor a copy of the product insert. PSSs are not allowed to minimize the risks of any of Defendant's products, nor are they allowed to discuss off-label issues with health care providers. If a doctor requests off-label

–17–

information, the PSS is required to have a Professional Information Request sent to AZ. PSSs cannot present statements out of context from the full prescribing information or approved promotional materials, and PSS's are not allowed to present a side effect as a clinical benefit. PSS's cannot use homemade materials on sales calls, and they cannot compare Defendant's products with those of a competitor unless the PSS receives explicit direction from the company. AZ even requires PSSs to utilize a pen, rather than a finger, when pointing to a visual aid during a sales call.

After a sales call is completed, all PSSs are required to immediately enter call notes into their computer. A PSS may not engage in promotional discussions with patients. Also, PSSs were required to follow the ISS selling model on each and every sales call, even if they thought the ISS model was ineffective and they were reaching their sales target numbers. Moreover, the very limited time that a PSS has with a physician does not allow for the exercise of discretion.

Employees such as PSSs who are "significantly restricted/limited by Defendant's pre-existing and established operating procedures and guidelines in, *e.g.,* determining which ... products to offer and on what terms" lack "the discretion and independent judgment necessary to qualify for the exemption." *Pontius v. Delta Financial Corp.*, No.04-1737, 2007 U.S. Dist. LEXIS 50980, at *42- 43 (W. D. Pa., Mar. 20, 2007). *See also Cusumano v. Maquilan Int'l Inc.*, 2005 U.S.Dist. LEXIS 30257, at *18 (M.D. Fla. 2005) (finding "plaintiff's primary duties did not include the exercise of discretion or independent judgment regarding significant matters. The Plaintiff receives instruction on which customers to call, which locations to visit, what tasks to perform, and how much time to spend at certain locations."); *Casas*, 2002 U.S. Dist LEXIS 5775, at *30-31 (finding that "the decisions plaintiffs were empowered to make ... were all governed by [the employer's] pre-existing established standing operating procedures and guidelines" and ruling that plaintiffs did not exercise

discretion or independent judgment.) *Neary*, 517 F. Supp. 2d at 616 (finding that "[t]he evidence d[id] not show that [plaintiff-employee] was making "independent choice[s]" going beyond just following procedures set out by [employer]. . . ."); *Heidtman v. County of El Paso*, 171 F. 3d 1038, 1042 (5th Cir. 1999) (ruling that "[m]ost of [plaintiffs-employees'] employment actions were mechanical, rather than discretionary, in nature."); DOL Op. Letter, 1997 DOLWH LEXIS 30 at *6 (a "salesperson" who "is guided by the company's procedures and standards would not be exempt."); DOL Op. letter, FLSA2006-27, 2006 DOLWH LEXIS 37, at *7 (July 24, 2006) ("Nor is it sufficient that an employee makes limited decision within clearly 'prescribed parameters') (internal citation omitted); DOL Op. Letter, FLSA2005-54, 2005 DOLWH LEXIS 68, at *16 (Dec. 16, 2005) (same); DOL Op. Letter, 2000 DOLWH LEXIS 23, *5 (July 17, 2000) ("An employee who merely applies his knowledge in following prescribed procedures or determining which procedure . . . is not exercising discretion and independent judgment . . . even if there is some leeway in reaching a conclusion.") DOL Op. Letter, 1982 DOLWH LEXIS 28, at *3-4 (Oct. 4, 1982) (same); DOL Op. Letter, 1998 DOLWH LEXIS 31, *6-7 (recognizing that the administrative exemption did not apply to employees who "are merely applying their knowledge in following prescribed procedures or determining which procedure to follow or determining what standards are met. This is true even though they may have some leeway in reach a conclusion or performing their work.") *See also Black v. Comdial Corp.*, NO. 92-081-C, 1994 U.S. Dist. LEXIS 2457, at *12 (W.D. Va. Feb. 5, 1994) (finding plaintiff non-exempt where his "discretion . . . was confined not only by the nature of his task, but by constant supervision," and where his "work was under continual scrutiny, both informally . . . . and formally. . . ."); *Roney*, 790 F. Supp. at 27 ("[f]ar from advising the 'business' or agency regarding appropriate management techniques, [the plaintiff-employee] is subject to detailed

–19–

direction by his superiors with respect to the scope, time, area, and resources available for him to complete a specific task.").

In a recent opinion letter, the Department of Labor found that a Senior Legal Analyst did not exercise discretion and independent judgment with respect to matters of significance. DOL Op. letter, FLSA2006-27, 2006 DOLWH LEXIS 37 (July 24, 2006). The Department of Labor found that as "most jurisdiction have strict prohibitions against the unauthorized practice of law by laypersons . . . paralegal employees would not have the amount of authority to exercise independent judgments with regard to legal matters necessary to bring them within the administrative exemption." *Id.* at *8. *See* DOL Op. Letter, FLSA2005-54, 2005 DOLWH LEXIS 68, at *18 (Dec. 16, 2005) (same)   Likewise, here, the strict legal control of the pharmaceutical industry and the laws and regulations regarding Reps promotion of pharmaceutical products,[7] necessarily results in Reps lacking discretion and independent judgment with respect to matters of significance.

Furthermore, an employee's use of skills in applying settled techniques, procedures, or specific standards, is not discretion and independent judgment. In ruling that plaintiffs were not exempt under the administrative exemption, the court in *Casas* found that "plaintiffs were using skills in applying techniques, procedures or specific standards of [the employer] rather than exercising the kind of independent judgment and discretion within the meaning of the regulations to qualify under the administrative exemption." *Casas,* 2002 U.S. Dist LEXIS 5775, at *30. *See also Robinson-Smith v. Government Employees Ins. Co.*, 323 F.Supp.2d 12, 25 (D.D.C. 2004) (finding that "[a]lthough some discretion is certainly exercised by the [plaintiff-adjusters], the Court is

---

7    *See, e.g.* 21 U.S.C. § 333(b)(1)(B) (imposing criminal penalties for "knowingly selling, purchasing, or trading a drug or drug sample or knowingly offering to sell, purchase, or trade a drug or drug sample, in violation of section 503(c)(1)")

satisfied that the vast majority of the adjusters' work consists of using their training and skills to assess the value of the damage to the vehicle in accordance with the standards laid out by [defendant]. . . [and] therefore must conclude that . . . adjusters do not exercise sufficient discretion and independent judgment. . . .") DOL Op. Letter, 1997 DOLWH LEXIS 30 at *6 ("The job may require a significant level of skill and proficiency, but that is not the same thing as discretion.").

In the case at bar, like all Reps, Plaintiff's primary duty was to deliver scripted core messages to doctors. Plaintiff was trained upon starting her employment how to present these messages and received continuing training on the presentation. Even if performed "skillfully," these mechanical chores do not satisfy the "discretion and independent judgment" branch of the administrative exemption.

### 3.    The Discretion of PSSs is Limited to Insignificant Matters

"[I]t is not sufficient that an employee makes decisions regarding relatively insignificant matters, such as 'when and where to do different tasks, as well as the manner in which to perform them'. . . . Rather, there must be the exercise of discretion and independent judgment on matters of significance or consequence related to the management or general business operations of the employer or the employer's customers." DOL Op. letter, FLSA2006-27, 2006 DOLWH LEXIS 37, at *7-8 (July 24, 2006) (quoting *Clark v. J.M. Benson Co. Inc.*, 789 F.2d 282, 287-288 (4th Cir. 1986). *See also* DOL Op. Letter, 1997 DOLWH LEXIS 43, at *9-10 (Sept. 12, 1997) (same). "The term ["discretion and independent judgment"] applies to the kinds of decisions normally made by persons who formulate or participate in the formulation of policy within their spheres of responsibility or who exercise authority within a wide range to commit their employer in substantial respects financially or otherwise." DOL Op. Letter, 1997 DOLWH LEXIS 52, at *3 (Oct. 20, 1997.)

–21–

Although Reps may have limited discretion in the performance of their work -- for example, providing different salutations upon meeting doctors -- this does not qualify Reps as exempt under the administrative exemption.  DOL Op. Letter, FLSA2006-23NA, 2006 DOLWH LEXIS 54, at *15 (Oct. 16, 2006) ([T]here must be true discretion and independent judgment exercised on matters of significance or consequence related to the management or general business operations of the employer or the employer's customer's.") DOL Op. Letter, FLSA2005-54, 2005 DOLWH LEXIS 68, at *16 (Dec. 16, 2005) (same).

"[Pharmaceutical] PSSs "are trained to tell doctors only what is previously authorized . . . . [S]ales calls are not spontaneous, but are carefully scripted presentations." *Proctor & Gamble Pharmaceuticals, Inc. v. Hoffman-La Roche, Inc.*, 2006 WL 2588002 at *31 (S.D.N.Y., Sept. 6, 2006).  Contrary to A-Z's assertions, the evidence shows that Hummel did not use discretion or independent judgment on matters of significance.  Thus, even if this Court were to find that Hummel indisputably worked in an administrative capacity to begin with, material factual disputes preclude summary judgment.  If the evidence is unclear or not dispositive as to whether the exemption applies, the employer will be held not to have satisfied its burden and the exemption will not apply. *Johannes v. Aerotek*, 2001 U.S. Dist. Lexis 25409 (C.D. Cal. 2001), at *38.  *See also*, *Bothell*, 299 F.3d at 1124 (employer must demonstrate that employee "plainly and unmistakably" meets "terms and spirit" of exemption).

## III.  CONCLUSION

In  *Citicorp. Industrial Credit, Inc., v. Brock*, the Supreme Court declared:

> [T]he Court has refused "to extend an exemption to other than those plainly and unmistakably within [the FLSA's] terms and spirit." *A. H. Phillips, Inc.* v. *Walling*, 324 U.S. 490, 493 (1945). Similarly, where the FLSA provides

exemptions "in detail and with particularity," we have found this to preclude "enlargement by implication." *Addison* v. *Holly Hill Fruit Products, Inc.*, 322 U.S. 607, 617 (1944). *See also Powell* v. *United States Cartridge Co.*, 339 U.S. 497, 512 (1950); *Mabee* v. *White Plains Publishing Co.*, 327 U.S. 178, 183-184 (1946). We see no reason to deviate from our traditional approach in this case.

483 U.S. 27, 35 (1987)

The Court should apply time-honored rule that exemptions should be narrowly construed and find that neither the outside sales nor administrative exemption applies to Plaintiff. PSSs do not sell drugs, and Plaintiff never sold anything on AZ's behalf. Thus, Plaintiff is not subject to the outside sales exemption. PSSs promote AZ's products to individual doctors by presenting messages dictated by AZ. Plaintiff did not operate or serving the AZ business and did not exercise discretion and independent judgment on matters of significance. Thus, she is not subject to the administrative exemption.

Wherefore, for the reasons set forth above, Defendant's Motion for Summary Judgment should be denied in its entirety, and the Court should award Plaintiff any further relief that the Court deems just and proper.

Dated:  New York, New York          Respectfully submitted,
        July 14, 2008
                                    JOSEPH & HERZFELD, LLP


                                    By:  _/s/ Michael R. DiChiara_____
                                         Michael R. DiChiara
                                         757 Third Avenue, Suite 2500
                                         New York, NY  10017
                                         Tel. (212) 688-5640
                                         Fax (212) 688-2548


                                         James A. Jones
                                         Gillespie Rozen Watsky & Jones, P.C.
                                         3402 Oak Grove Ave., Suite 200
                                         Dallas, TX  75204
                                         jaj@grwlawfirm.com