UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HOLLY MARIE HUMMEL, on behalf of
herself and others similarly situated,

               Plaintiff,

      -against-

ASTRAZENECA LP,

             Defendant.

No.:  07-CV-5473(VM)

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT ASTRAZENECA LP'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................i

INTRODUCTION ........................................................................................................1

LEGAL ARGUMENT ...................................................................................................1

I.    Hummel's Release Is Valid And It Bars Her Claims .................................................1

II.    AstraZeneca Properly Classified Hummel As Exempt ..............................................4

       A.    Hummel Was An Exempt Outside Salesperson ...................................................4

            1.    Hummel's Job Was Making Sales .................................................................4

            2.    Hummel's Job Was Obtaining Orders ...........................................................7

       B.    Hummel Was An Exempt Administrative Employee ..............................................7

CONCLUSION ..........................................................................................................10

## TABLE OF AUTHORITIES

## FEDERAL CASES

*Amendola v. Bristol-Myers Co.,*
--- F. Supp.2d ---, 2008 WL 2309165 (S.D.N.Y. June 4, 2008)............................................6, 8, 10

*Barnick v. Wyeth*, 522 F .Supp. 2d 1257 (2007).....................................................................6, 7

*Brody v. AstraZeneca Pharm. LP,*
Case No. CV 06-6862 ABC (MANx) (C.D. Cal. June 11, 2008) ......................................1, 5, 6, 7

*Casas v. Conseco Finance Corp.*, 2002 WL 507059 (D. Minn. 2002) ...........................................9

*Cote v. Burroughs Wellcome Co.*, 558 F. Supp. 883 (E.D. Pa. 1982) ...........................................10

*D'Este v. Bayer Corp.*, 2007 U.S. Dist LEXIS 87228 (C.D. Cal. Oct. 9, 2007) ...........................7

*Dewey v. PTT Telecom NE, US, Inc.*, 1995 WL 542447 (S.D.N.Y. Sept. 12, 1995) .................2, 3

*Dimon Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359 (S.D.N.Y. 1999).....................................................3

*Dixson v. U.S.*, 465 U.S. 482 (1984)..................................................................................................5

*Dunlop v. Ashy*, 555 F.2d 1228 (5th Cir. 1977).................................................................................5

*Golden v. Merrill Lynch & Co., Inc.*, 2007 WL 4299443 (S.D.N.Y. Dec. 6, 2007) ..................4, 9

*Hogan v. Allstate Insurance Co.*, 361 F.3d 621 (11th Cir. 2004)..................................................10

*In re Clinton Street Food Corp.*, 254 B.R. 523 (S.D.N.Y. 2000)................................................2, 3

*Maddaloni Jewelers, Inc., v. Rolex Watch U.S.A., Inc.*, 354 F. Supp. 2d 293 (S.D.N.Y. 2004) .....2

*Martin v. Cooper Electric Supply Co.*, 940 F.2d 896 (3rd Cir. 1991)............................................9

*Mattison v. Potter*, 515 F. Supp. 2d 356 (W.D.N.Y. Sep 20, 2007)..............................................10

*McComb v. Hunt Foods, Inc.*, 167 F.2d 905 (9th Cir. 1948)............................................................5

*McPherson v. New York City Dep't. of Educ.*, 457 F.3d 211 (2nd Cir. 2006) ...........................4, 7

*Menes v. Roche Labs. Inc.*, 2008 U.S. Dist. LEXIS 4230 (C.D. Cal. Jan. 7, 2008) ..................6, 7

*Nielsen v. Devry. Inc.*, 302 F. Supp. 2d 747 (W.D. Mich. 2003)....................................................5

*Palmieri v. Nynex Long Distance Co.*, 2005 WL 767170 (D. Me. Mar 28, 2005)........................5

*Renfro v. Ind. Mich. Power Co.*, 370 F.3d 512 (6th Cir. 2004)....................................................10

*Volk v. Liggett Group Inc.*, 1997 WL 107458 (S.D.N.Y. March 11, 1997) ...............................2, 3

*Wright v. Eastman Kodak Co.*, 445 F. Supp. 2d 314 (W.D.N.Y. 2006)...........................................3

## STATE CASES

*Cherry Green Property Corp. v. Wolf*, 281 A.D.2d 367, 722 N.Y.S.2d 537 (1st Dep't 2001)........3

*Enock v. National Westminster Bankcorp. Inc.*,
226 A.D.2d 235, 641 N.Y.S.2d 27 (1st Dep't 1996) ....................................................................3

*Hack v. United Capital Corp.*, 247 A.D.2d 300, 669 N.Y.S.2d 280 (1st Dep't 1998).................1, 3

*Mangini v. McClurg*, 24 N.Y.2d 556 (1969) .....................................................................................1

*Mergler v. Crystal Prop. Assocs.*, 179 A.D.2d 177, 583 N.Y.S.2d 229 (1st Dep't 1992) ...............3

*Mosberg v. Nat'l Prop. Analyst. Inc.*, 217 A.D.2d 482, 630 N.Y.S.2d 50 (1st Dep't 1995)............1

*Shklovskiy v. Khan*, 273 A.D.2d 371, 709 N.Y.S.2d 208 (2d Dep't 2000) ......................................2

*Skluth v. United Merchs. & Mfrs.. Inc.*,
163 A.D.2d 104, 559 N.Y.S.2d 280 (1st Dep't 1990) ...............................................................2, 3

## FEDERAL REGULATIONS

29 C.F.R. § 541.201(a) (2008).........................................................................................................8

29 C.F.R. § 541.201(b) (2008).........................................................................................................8

29 C.F.R. § 541.201(d) (2008).........................................................................................................8

29 C.F.R. § 541.205(c) (2004).........................................................................................................8

29 C.F.R. § 541.503(a) (2008).........................................................................................................6

29 C.F.R. § 541.504(a) (2004).........................................................................................................6

*Defining and Delimiting the Exemptions for Executive. Administrative. Professional.
Outside Sales and Computer Employees.* 69 Fed. Reg. 22122-01 (2004)......................................8

## ADDITIONAL AUTHORITY

Oxford Encyclopedic English Dictionary (1991) ............................................................................6

Wage & Hour Opinion Letter, 1997 DOLWH LEXIS 30 (July 23, 1997) ......................................9

Webster's 3rd New World Int'l Dictionary,
unabridged edition, G & C Merriam & Co. (1981) ...................................................................5, 6, 7

## INTRODUCTION

In her Opposition to AstraZeneca's Motion for Summary Judgment, Plaintiff Holly Hummel engages in little more than misdirection. While she entered an enforceable, targeted release of employment-related claims, she raises a series of arguments addressing non-specific waivers wholly unlike her own. Similarly, while she makes unsupported contentions as to pharmaceutical sales specialists as an industry wide group – perhaps unsurprisingly, largely without record citation – she ignores the recent holding that an AstraZeneca pharmaceutical sales specialist qualified for the outside sales person exemption. See Brody v. AstraZeneca Pharm. LP, No. CV 06-6862 ABC (MANx), slip op. at 11-15 (C.D. Cal. June 11, 2008) (citing and relying upon FLSA authority) (appeal pending).[1] More directly, Hummel fails to address her multiple admissions regarding her own job duties, which concretely demonstrate that she functioned as a salesperson and routinely exercised discretion, warranting summary judgment on the exemptions at issue here.

## LEGAL ARGUMENT

**I.     Hummel's Release Is Valid And It Bars Her Claims.**

As an initial matter, Hummel's various attempts to create jury questions as to her Release fall flat. First, contrary to Hummel's assertion (Opp. at 3) "[i]t is plaintiffs' burden, in seeking to set aside the release, either to demonstrate that it does not apply to [her] claim or to establish an equitable basis to vitiate its effect." Hack v. United Capital Corp., 247 A.D.2d 300, 302, 669 N.Y.S.2d 280, 282 (1st Dep't 1998).[2] Hummel's Release waives "any and all … causes of action … relating in any way to [her] employment relationship." SUF ¶ 62. In asserting that this

---

[1] The Brody decision is attached as Exhibit B to the concurrently filed Declaration of Harry I. Johnson.

[2] See also Mangini v. McClurg, 24 N.Y.2d 556, 563 (1969); Mosberg v. Nat'l Prop. Analyst, Inc., 217 A.D.2d 482, 484, 630 N.Y.S.2d 50, 52 (1st Dep't 1995).

plain language does not extend to her employment-related wage claims, Hummel bears the burden.

      Second, Hummel incorrectly (Opp. at 3) argues that her Release is ineffective because it does not "expressly" waive New York wage claims. Courts have repeatedly held that a waiver of all employment-related claims is broadly effective as to New York employment statutes. See Volk v. Liggett Group Inc., 1997 WL 107458, at *5 (S.D.N.Y. Mar. 11, 1997) (enforcing release as to "any and all claims ... in connection with his employment," though claims at issue were not named); see also Dewey v. PTT Telecom NE, US, Inc., 1995 WL 542447, at *2 (S.D.N.Y. Sept. 12, 1995); Skluth v. United Merchs. & Mfrs., Inc., 163 A.D.2d 104, 107, 559 N.Y.S.2d 280, 282 (1st Dep't 1990). Such a release need not name specific causes of action to be effective. See id.

      Third, Hummel mistakenly contends (Opp. at 3-6) that her Release is limited by the parties' purported unexpressed intent. But it is the express language of a release that controls, not retroactive musings as to the parties' supposed states of mind, and where, as here, "the language of the release is clear, effect must be given to the intent of the parties as indicated by the language employed." Shklovskiy v. Khan, 273 A.D.2d 371, 372, 709 N.Y.S.2d 208, 209 (2d Dep't 2000) (emphasis added). Hummel was represented by an attorney in connection with her Release (SUF ¶ 65; Defendant's Reply in Support of SUF ¶ 65), the document itself unambiguously waived employment-related claims (SUF ¶ 62), and she may not undercut her Release with self-serving speculation that contradicts its plain language.

      Hummel's case law (Opp. at 4-6) does not dictate a contrary result. Maddaloni Jewelers, Inc., v. Rolex Watch U.S.A., Inc., 354 F. Supp. 2d 293, 298 (S.D.N.Y. 2004) and In re Clinton Street Food Corp., 254 B.R. 523, 528 (S.D.N.Y. 2000) did not involve targeted waivers of employment-related claims, but rather non-specific releases that failed to identify any particular

universe of claims.[3]  At best, Hummel's cases hold that, if the parties have not clarified their intentions through express language, a release "cannot necessarily be taken at face value." Clinton Street, 254 B.R. at 534.  But here, the parties' language demonstrates an unqualified intent to waive employment-related claims, and this language controls.  See Volk, 1997 WL 107458, at *5; Dewey, 1995 WL 542447, at *2; Skluth, 559 N.Y.S. 2d 281-82.[4]

Hummel's additional arguments merit little attention.  For instance, she contends (Opp. at 2) that her Release is limited by its mention of certain discrimination claims.  But the parties expressly provided that this language does not limit the scope of waiver.  SUF ¶ 62 ("In addition to and not in limitation of the foregoing ...").  Indeed, the Release carves out certain benefit claims, which Hummel is permitted to pursue.  Id.  This carve-out would be unnecessary if the Release were confined to discrimination claims.  Similarly, while Hummel asserts (Opp. at 6) that she did not receive "any additional consideration," she concedes that, in exchange for her Release, AstraZeneca provided her a $13,000 cash payment and other benefits.  Plaintiff's Response to Defendant's SUF, ¶ 61; see also, SUF ¶ 62, at ¶ 2 (providing that this consideration would not be paid absent Hummel's execution of the Release).  Hummel cannot legitimately challenge the adequacy of this consideration.  See Wright v. Eastman Kodak Co., 445 F. Supp. 2d 314, 317-18 (W.D.N.Y. 2006) (rejecting similar challenge, noting that "[t]he only real problem here, apparently, is that plaintiffs now believe that they should have held out for more").

---

[3] Hummel's other case law (Opp. at 4-6) is likewise inapposite.  Cherry Green Property Corp. v. Wolf, 281 A.D.2d 367, 368, 722 N.Y.S.2d 537 (1st Dep't 2001) addressed the validity of "defendant shareholders' waiver of their right to dividends on their stock in plaintiff corporation," not a release of legal causes of action.  The court in Enock v. Nat'l Westminster Bankcorp, Inc., 226 A.D.2d 235, 236, 641 N.Y.S. 2d 27, 28 (1st Dep't 1996), failed to identify the language of the release at issue.

[4] Hummel's contention (Opp. at 4) that she "could not have been aware of her potential overtime claims" is irrelevant.  It is "not a prerequisite . . . that the releasor be subjectively aware of the precise claim he or she is releasing," and the "lack of such knowledge does not preclude summary judgment."  Mergler v. Crystal Prop. Assocs., 179 A.D.2d 177, 181, 583 N.Y.S.2d 229, 232 (1st Dep't 1992); see also Dimon Inc. v. Folium, Inc., 48 F. Supp. 2d 359, 366 (S.D.N.Y. 1999); Hack, 669 N.Y.S. 2d at 300.

Finally, Hummel's conclusory and unsupported position (Opp. at 6) that her Release is "not unambiguous" fails to manufacture a triable issue, as Hummel fails to even identify language that is supposedly unclear.  See McPherson v. New York City Dep't. of Educ., 457 F.3d 211, 215 n.4 (2nd Cir. 2006) (holding that a party "may not rely simply on conclusory statements" to defeat summary judgment) (internal citations omitted).  In sum, Hummel's Release is enforceable, and AstraZeneca is entitled to summary judgment on this basis alone.

## II.    AstraZeneca Properly Classified Hummel As Exempt.

Similarly, Hummel has not identified jury issues as to AstraZeneca's second, independent ground for summary judgment – namely, that it properly classified her as exempt.

### A.    Hummel Was An Exempt Outside Salesperson.

#### 1.    Hummel's Job Was Making Sales.

Hummel's various attempts to create jury questions as to whether her job involved making sales are of no avail.  First, Hummel concedes facts that demonstrate – as a matter of law – that her duties qualified as "selling."  Specifically, Hummel admitted that she spent the vast majority of her time in the field, making in-person calls on physicians, for the purpose of persuading those doctors to write more prescriptions for her products.  Plaintiff's Response to SUF, ¶¶ 20, 22-23, 25, 27-29, 33; see also, SUF ¶¶ 26 (she "sold Seroquel"); 27 (she engaged in "pharmaceutical sales"); 28 (she "sold cardiovascular pharmaceuticals"); 29 (her job was "selling Nexium and Seroquel"); see also, SUF ¶¶ 16, 21-23, 30-33.  She cannot now disavow these admissions, even with her eleventh-hour declaration.  See Golden v. Merrill Lynch & Co., Inc., 2007 WL 4299443, at *9 (S.D.N.Y. Dec. 6, 2007) ("Courts in this Circuit have rejected such attempts to rely on declarations that contradict the witness's prior deposition") (collecting cases).  As AstraZeneca showed in its Opening Brief (at 11-17), the duties Hummel admitted to

4

engaging in constitute "making sales" for purposes of the outside salesperson exemption, and, on this basis alone, Hummel's Complaint should be dismissed.

Second, Hummel cannot create a genuine issue of fact with her legal contention (Opp. at 7) that exemptions should be narrowly construed. A narrow construction does not mean that an exemption should be applied in a hypertechnical manner that would frustrate its language or produce absurd results. See Dunlop v. Ashy, 555 F.2d 1228, 1234 (5th Cir. 1977) (wage statutes are to be liberally construed, but "must be applied with reason and in a common sense fashion"); McComb v. Hunt Foods, Inc., 167 F.2d 905, 906 (9th Cir. 1948) (allowing "no formalistic characterizations"). Nor do courts ignore accepted meanings of words under the guise of narrow construction. See, e.g., Dixson v. U.S., 465 U.S. 482, 501 n.19 (1984) (strict construction does not "demand that a statute be given the narrowest meaning") (internal citations omitted).

Here, even under a "narrow" construction, Hummel was properly classified as exempt. See Webster's 3rd New World Int'l Dictionary, unabridged edition, G & C Merriam & Co. (1981) (defining "sales" as "operations and activities involved in promoting and selling goods or services"); see also Brody, supra, slip op. at 16-17 (rejecting contention that "literal execution of contracts" is required); Nielsen v. Devry, Inc., 302 F. Supp. 2d 747, 759 (W.D. Mich. 2003) ("making sales" includes obtaining "an order or commitment from the customers") (internal citations omitted); Palmieri v. Nynex Long Distance Co., 2005 WL 767170, at *15 (D. Me. Mar 28, 2005) (examining whether employee "obtain[s] a commitment to buy from the person to whom he is selling") (internal citation omitted). In this regard, Hummel's attempt to distinguish (Opp. at 8-10) the concepts of "selling" and "selling on" is unavailing. The first, she contends, involves "provid[ing] a product to a customer in return for payment or the promise of payment." (Id. at 10.) The second involves persuading doctors to write more AstraZeneca prescriptions.

5

(Id. at 9-10.)  But Hummel's purported distinction is artificial because the concept of selling encompasses both direct *quid pro quo* exchange and the concept of "influenc[ing] or induc[ing] to make a purchase."   Webster's 3rd New World Int'l Dictionary, *supra*, (defining "sell"); see also Oxford Encyclopedic English Dictionary (1991) (defining "sell" as to "cause to be sold" and to "give (a person) information on the value of something, inspire with a desire to buy or acquire or agree to something").  That Hummel's duties involved influencing, persuading, and soliciting does not lessen the fact that she was a salesperson or undercut the applicability of the exemption.

Third, Hummel's invocation (Opp. at 8-10) of "promotion" does not create jury issues. For purposes of the outside salesperson exemption, promotion work is a nonexempt function where it is "incidental to sales made, or to be made, by someone else."  29 C.F.R. § 541.504(a) (2004) (emphasis added); see also, 29 C.F.R. § 541.503(a) (2008).  But Hummel did not support other salespersons.  No one followed Hummel to "close" sales, and AstraZeneca employs no sales force other than its pharmaceutical sales specialists.  See Barnick v. Wyeth, 522 F. Supp. 2d 1257, 1262 (C.D. Cal. 2007) (appeal pending); Brody, *supra*, slip op. at 15.  Hummel was not a "promotions person" for purposes of the outside salesperson exemption.

Fourth, Hummel's reliance on Amendola v. Bristol-Myers Co., --- F. Supp.2d ---, 2008 WL 2309165 (S.D.N.Y. June 4, 2008) (Opp. at 10-11), for purposes of the outside salesperson exemption alone, is misplaced.  As an initial matter, Amendola did not involve the facts before this Court, including Hummel's multiple admissions.  Further, AstraZeneca respectfully submits that Amendola incorrectly parsed the definition of the term "sell."  Id. at *9.  As noted above, the ordinary and common meaning of the term includes the concepts of influencing, persuading, and soliciting that are at the heart of Hummel's duties.  Moreover, AstraZeneca respectfully submits that the Amendola court erred in its attempts to distinguish Barnick, Menes v. Roche Labs. Inc.,

2008 U.S. Dist. LEXIS 4230 (C.D. Cal. Jan. 7, 2008) (appeal pending), and D'Este v. Bayer Corp., 2007 U.S. Dist LEXIS 87228 (C.D. Cal. Oct. 9, 2007) (appeal pending). Those cases did not improperly rely on a multi-factor test in reaching their conclusions. Rather, in each case, the court properly considered whether the plaintiff's actual job duties constituted "sales." See D'Este, 2007 U.S. Dist. LEXIS 87229 at *14 ("doctors are the 'customers' … and the [plaintiff's] job was to 'close' … by getting them to 'commit' to write more prescriptions"); Barnick, 522 F. Supp. 2d at 1262; Menes, 2008 U.S. Dist. Lexis 87229 at *13; see also, Brody, supra, slip op. at 15-16. Those courts properly looked to indicia of outside sales positions – e.g., sales training, lack of direct supervision, compensation – only as an aid in analyzing the plaintiffs' duties, and they properly concluded that the plaintiffs fell within the exemption's language and its purpose of exempting employees who operate mostly in the field as Hummel was. Here, too, Hummel was an outside salesperson, and AstraZeneca is entitled to summary judgment on this basis.

### 2.    Hummel's Job Was Obtaining Orders.

AstraZeneca also showed (Opening Br. at 17) that Hummel qualified for the outside sales person exemption because her job involved obtaining orders. Hummel's only response is an unsupported claim (Opp. at 7) that "PSSs admittedly do not obtain orders." This is not admitted. The record evidence demonstrates that Hummel did obtain orders – i.e., prescriptions. See also Webster's 3rd New World Int'l Dictionary, supra, (defining "obtain" as "to bring about or call into being"). Hummel's conclusory statement to the contrary is insufficient to avoid summary judgment. See McPherson, 457 F.3d at 215 n.4.

### B.    Hummel Was An Exempt Administrative Employee.

Likewise, Hummel identifies no jury questions as to AstraZeneca's alternative argument that she was an exempt administrative employee. First, Hummel misstates (Opp. at 12-13) the

7

legal test applicable to the requirement that she engage in work directly related to management policies or general business operations. This test does <u>not</u> limit the exemption to persons engaged in "higher, policy level marketing activities that focus on company-wide techniques." (<u>Id.</u> at 13). Rather, it broadly encompasses persons, such as Hummel, who work in functional areas such as advertising and marketing:

> [T]he phrase "directly related to management policies or general business operations" <u>is not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole.</u> Employees whose work is "directly related" to management policies or to general business operations <u>include those whose work affects policy or whose responsibility it is to execute or carry it out.</u>

29 C.F.R. § 541.205(c) (2004) (emphasis added); <u>see also</u>, 29 C.F.R. § 541.201(a) & (b) (2008) (adopting "functional area" concept, noting that "[t]he phrase. . . refers to the type of work performed"); <u>Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees</u>, 69 Fed. Reg. 22122-01, 22141 (2004) (including those with "miscellaneous policy-making <u>or policy-executing</u> responsibilities") (emphasis added).[5] Under this standard, so-called "promotion men" are administratively exempt administrative even if a company employs many of them. <u>See</u> 29 C.F.R. § 541.205(c)(5) & (6) (2004) ("[E]mployer's volume of activities may make it necessary to employ a number of employees in some of these categories."); <u>see also</u>, 29 C.F.R. § 541.201(d) (2008).

    <u>Second</u>, astoundingly, Hummel seeks refuge (Opp. at 12) in cases holding that <u>selling</u> is not work directly related to management policies or general business operations. <u>See, e.g.,</u>

---

[5] Hummel cites (Opp. at 13) <u>Defining and Delimiting</u> for its discussion of "line" and "staff" employees. This does not help her cause. In <u>Defining and Delimiting</u>, the Department of Labor used line and staff employees to illustrate the production/administrative dichotomy – a concept that Hummel vigorously attempts (Opp. at 12-15) to avoid. Under the dichotomy, a "useful tool in appropriate cases," exempt persons who "service" a business are distinguished from non-exempt persons who work on a production line. <u>Defining and Delimiting</u>, 69 Fed. Reg. 22122-01, 22141 (2004). Hummel, obviously, was not a "line" employee. <u>See Amendola</u>, 2008 WL 2309165 at *15 (finding pharmaceutical seller exempt, explicitly rejecting plaintiff's claim to be a "production" worker).

Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 904 (3rd Cir. 1991) ("produc[ing] sales");

Casas v. Conseco Fin. Corp., 2002 WL 507059 at *9 (D. Minn. 2002) ("selling loans"); Wage &

Hour Opinion Letter, 1997 DOLWH LEXIS 30 at *4-*5 (July 23, 1997) (distinguishing "sales

promotion" and "day-in-day-out selling activity"). These cases obviously do not bar summary

judgment because, to avail herself of them, Hummel must adopt a premise – that she was selling

– that concedes defeat under AstraZeneca's legal argument that she was exempt under the

outside salesperson exemption.

    Third, Hummel's attempts (Opp. at 16-21) to downplay her exercise of discretion and

judgment are unavailing. Indeed, her position that she lacked the ability to exercise discretion

defies common sense, as she worked alone in the field for days at a time, discussing approved

uses of AstraZeneca products with physicians – covering specialized areas of knowledge like

physiology, disease states, and drug efficacy and indications. SUF ¶¶ 23, 33-34, 58; Appx., Tab

1, Hummel Tr., 67:7-68:16, 277:13-278:4, 353:15-354:2. Moreover, Hummel cannot contest her

admission that she "assess[ed] and analyz[ed] specific situations and individual needs to move

business." SUF ¶¶ 52-53. She cannot contest that she constantly thought on her feet during her

dialogues with physicians, see SUF ¶¶ 23, 46, 51, 59, or that she "[p]repared detailed business

plans of action designed to increase market share." SUF ¶ 55. And she cannot contest the

substance of her own writings – her self-evaluations, scorecard, and resume – which she testified

were accurate, and which plainly demonstrate the significant amount of discretion and

independent judgment she regularly exercised. See SUF ¶¶ 51-55; see also, Golden, 2007 WL

4299443, at *9. In short, Hummel is in no position to contest that she regularly exercised

discretion and judgment in matters of significance. See Cote v. Burroughs Wellcome Co., 558 F.

Supp. 883, 887 (E.D. Pa. 1982) (exempt "detail person was expected to use a wide degree of discretion in deciding how to encourage the use of the product").

At best, Hummel contends AstraZeneca has rules that required her to show up to work, make calls on physicians, and check voice mails and e-mails.  Plaintiff's Statement of Disputed Material Facts ¶¶ 100-03, 112-18.  She also notes that the Company authors its own universe of promotional materials, id. at ¶¶ 106-08, and expects employees to obey the law, id. at ¶¶ 99, 105, 126, 128-29.  However, as her own admissions demonstrate (Opening Brief at 21-23; supra at 9), none of this precluded Hummel herself from exercising discretion and independent judgment, and it does not raise a jury question.  See Renfro v. Ind. Mich. Power Co., 370 F.3d 512, 519 (6th Cir. 2004) (employee is exempt if, within the context of applicable rules, she "exercise[s] . . . judgment"); Hogan v. Allstate Ins. Co., 361 F.3d 621, 627 (11th Cir. 2004) (similar).

Lastly, Hummel makes no effort to distinguish the on-point Cote case, supra, and her efforts (Opp. at 13) to distinguish Amendola's similar on-point administrative exemption ruling fall flat.  Specifically, Amendola did not ground its decision in a misapplication of the production/administrative dichotomy.  Its consideration of the dichotomy was limited to a one paragraph rejection of the plaintiff's contention that she was a "production worker."  Amendola, 2008 WL 2309165 at *15.  The court held the plaintiffs exempt based upon a detailed application of the law to the plaintiff's job duties.  Such an analysis here leads to a similar result:  Hummel was exempt, and the Company is entitled to summary judgment.[6]

## CONCLUSION

For the foregoing reasons, and those in the Company's opening papers, this Court should grant AstraZeneca's Motion, and it should dismiss Hummel's Complaint with prejudice.

---

[6] Hummel offers no response to AstraZeneca's showing (Opening Brief at 23-25) that it is entitled to summary judgment on her spread of hours claim, and as such, she has abandoned any arguments to the contrary. Mattison v. Potter, 515 F. Supp. 2d 356, 370 (W.D.N.Y. Sep 20, 2007).

Dated:  August 13, 2008              Jones Day

By:  /s/ Matthew W. Lampe

    Matthew W. Lampe (*pro hac vice*)
    Shari M. Goldsmith  (SG 0909)
    JONES DAY
    222 East 41st Street
    New York, NY  10017
    Telephone: (212) 326-3939
    Facsimile: (212) 755-7306
    mwlampe@jonesday.com
    smgoldsmith@jonesday.com

    Harry I. Johnson, III (*pro hac vice*)
    JONES DAY
    555 S. Flower Street
    Fiftieth Floor
    Los Angeles, CA  90071
    Telephone: (213) 489-3939
    Facsimile: (213) 243-2539
    harryjohnson@jonesday.com

    Theresia Moser (*pro hac vice*)
    JONES DAY
    1420 Peachtree Street, N.E.
    Suite 800
    Atlanta, GA 30309
    Telephone: (404) 521-3939
    Facsimile:  (404) 581-8330
    tmoser@jonesday.com

    *Attorneys for Defendant*
    *AstraZeneca LP*

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2008, the foregoing Defendant AstraZeneca LP's

Reply Memorandum of Points and Authorities of Points and Authorities in Support of Defendant

AstraZeneca LP's Motion for Summary Judgment was filed with the Clerk of the Court and

served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's

Local Rules, and/or the Southern District's Rules on Electronic Service upon the following

parties:

> Charles Joseph
> Michael Palmer
> JOSEPH & HERZFELD
> 757 Third Avenue, Suite 2500
> New York, New York 10017
> Tel: 212-688-5640
> Fax: 212-688-2548
>
> James A. Jones
> GILLESPIE, ROZEN, WATSKY & JONES, P.C.
> 3402 Oak Grove Avenue
> Suite 200
> Dallas, TX 75204
> Tel: 214-720-2009
> Fax: 214-720-2291

> /s/ Shari M. Goldsmith
> Shari M. Goldsmith (SG-0909)
> Jones Day
> 222 East 41st Street
> New York, NY 10017-6702
> smgoldsmith@jonesday.com
> (212) 326-3939