UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**HOLLY MARIE HUMMEL, on behalf of herself and others similarly situated,**

          **Plaintiff,**

    -against-

**ASTRAZENECA LP,**

          **Defendant.**

No.:  **07-CV-5473(VM)**

### DEFENDANT ASTRAZENECA LP'S RESPONSE TO PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS

Defendant AstraZeneca LP ("AstraZeneca"), pursuant to Local Civil Rule 56.1, submits this Response to Plaintiff's Statement of Disputed Material Facts ("Plaintiff's Statement").

### ASTRAZENECA'S GENERAL REPLY TO PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS

Local Rule 56.1 requires that an opponent to summary judgment submit a paragraph-by-paragraph response mirroring the movant's statement of material facts.  Local Rule 56.1 also permits a non-moving party, where necessary, to submit additional paragraphs containing a "short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried."  Local Civil Rule 56.1(b).  This statement "facilitates a court's determination of any factual disputes."  Coleman v. Galgano, 1996 WL 715533, at *2 (S.D.N.Y. Dec. 11, 1996); United States v. Laronga, 1996 WL 118545, at *3 (E.D.N.Y. Mar. 8, 1996) (non-movant must identify "the facts that it alleges are disputed," and "direct the court to that part of the record" that supports its view of the facts).

A party opposing summary judgment may not, however, use the separate statement of additional facts as a mechanism to subvert the page limit requirements of its opposing

memorandum of points and authorities and make improper legal arguments by offering

conclusory allegations, irrelevant or immaterial assertions, or inadmissible hearsay masquerading

as "additional facts" in its "paragraph-by-paragraph" counter-statement.  See Rodriguez v.

Schneider, 1999 WL 459813, at *1 & n.3 (S.D.N.Y. June 29, 1999); see also, Individual Rules

and Practices, Rule II.C.

Plaintiff Holly Hummel ("Hummel") does exactly that – repackaging and reformulating

the allegations of her Complaint, incorporating the legal arguments of her opposition brief,

referencing self-serving declarations and irrelevant documentation and deposition testimony, and

citing inadmissible evidence in order to compile her 155 paragraphs of purported disputed

"facts."  Specifically, Hummel's Statement is inappropriate because it contains and/or

references:

- Legal argument and opinion;

- Speculation and conclusory allegations;

- Affidavits contradicting record testimony; and

- Inadmissible evidence and hearsay.[1]

Not only are these elements inappropriate for a Rule 56.1 Statement, they are plainly

insufficient to create any triable issues of material fact in order to defeat AstraZeneca's motion

for summary judgment.  Because Hummel has failed to properly submit additional paragraphs

containing a "short and concise statement of additional *material facts* as to which [she]

contend[s] there exists a genuine issue to be tried," Local Rule 56.1(b) (emphasis added), all of

the material facts presented by AstraZeneca remain undisputed.  See Union Carbide Corp., 179

F.R.D. 425, 428 & nn.4-5 (S.D.N.Y. 1998) (rejecting plaintiff's Rule 56.1 statement which

---

[1] See AstraZeneca's General Reply To Plaintiff's Response to Defendant's Statement of Undisputed Material Facts, pgs 1-6.

constituted a "compendium of the arguments plaintiff plan[ned] to make at trial, rather than a short and concise statement of *facts*") (emphasis in original).

## ASTRAZENECA'S SPECIFIC REPLY TO
## PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS

## I.  ASTRAZENECA IMPROPERLY CLASSIFIED HUMMEL AS EXEMPT

### A.  BACKGROUND

**PLAINTIFF'S FACT NO. 1:**

1.  Plaintiff Holly Hummel ("Hummel" or "Plaintiff") is a New York resident and was employed as a Pharmaceutical Sales Specialist ("PSS") by AstraZeneca ("AZ" or "Defendant") from December 1999 through October 2005.  Declaration of Holly Hummel ("Hummel Decl.") at ¶¶ 1-2.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 1:**

Undisputed.

**PLAINTIFF'S FACT NO. 2:**

2.  District managers are the immediate supervisors for all PSSs.  Deposition Transcript of Cindy Atha ("Atha Dep.") at 64:17-22.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 2:**

Undisputed that Ms. Atha testified that District Sales Managers are "the immediate superior of PSSs."  DiChiara Dec., Ex. 2, Atha Tr., 64:17-22.

**PLAINTIFF'S FACT NO. 3:**

3.  Regional sales directors are the supervisors of district managers.  Atha Dep. at 64:23-65:5.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 3:**

Undisputed that Ms. Atha testified that Regional Sales Directors supervise the District Sales Managers.  DiChiara Dec., Ex. 2, Atha Tr., 64:23-65:5

### B.    ASTRAZENECA CLASSIFIED HUMMEL AS EXEMPT

**PLAINTIFF'S FACT NO. 4:**

4.    PSSs -- including Hummel -- do not receive overtime pay for working more than eight hours per day or 40 hours per week.  Hummel Decl. at ¶ 5; Atha Dep. at 226:14-16.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 4:**

Undisputed.

**PLAINTIFF'S FACT NO. 5:**

5.    Defendant has uniformly classified all PSSs -- including Hummel -- as exempt from overtime compensation.  Def's Answer to First Am. Compl. ¶ 59; Atha Dep. at 228:19-22.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 5:**

Undisputed.

### C.    TRAINING PROVIDED TO PLAINTIFF BY DEFENDANT

**PLAINTIFF'S FACT NO. 6:**

6.    Newly hired PSSs participate in initial training that is held at Defendant's headquarters in Wilmington, Delaware and all PSSs receive identical additional training at their respective business centers located throughout the country.  Deposition of Debra Ventura ("Ventura Dep."), Defendant's Director of Sales Training, at 55:1-5; 55:9-11.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 6:**

This fact is immaterial to the instant motion, which is directed at Hummel individually. In any event, while it is undisputed that newly hired PSSs participate in initial training held at AstraZeneca headquarters as well as training at the PSSs' respective business centers, Hummel

mischaracterizes Ms. Ventura's testimony in that she did not testify that <u>all</u> PSSs receive

identical training. Rather, she testified that the training for new PSSs "varies based on the selling

team in which they are hired for, as well as the products that they carry…" <u>See</u> DiChiara Dec.,

Ex. 3, Ventura Tr., 49:12-18. Further, Hummel herself testified that training varied. <u>See</u> Appx.

Vol. I, Tab 1, Hummel Tr., 350:7-13 ("So when I went from the different therapeutic areas,

different rules, I had to go back through training. So I would be trained on the marketing for

when I was from cardiovascular to specialty, and long-term care was for -- from cardiovascular

products to neuroscience products and Nexium.").

### PLAINTIFF'S FACT NO. 7:

7.      Defendant trained Plaintiff and other PSSs on scripts to use when on a sales call

with a physician. Def. Tab 1 at 236:25-241:6 ("Then the company says, Here is marketing, this

is what you can say. This in [sic] on label. This is what you can't say, but here's the script. So

if the doctor says, you know, this, typically is an introduction of yourself. And then if the doctor

says this, here is a response for that.")

### DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 7:

Immaterial. Also, misleading in that Hummel also testified that, while AstraZeneca

provided training and guidance on how to structure a call, Hummel was not forced to say any

particular thing during a sales call. Appx. Vol. I, Tab 1, Hummel Tr., 260:4-18.

### PLAINTIFF'S FACT NO. 8:

8.      PSSs do not need pharmacological training or scientific knowledge to perform

their job. AZ provided the PSSs with all the information needed to conduct a sales call. Also,

PSSs do not have the authority to communicate with health care providers about the efficacy or

indications for AZ products. Hummel Decl. at ¶ 17; Deposition of Susan Johnson ("Johnson

Dep."), former PSS, at 29:2-20 (English major, did not need a science or medical background to

be a successful PSS); Deposition of Mark Capistrano ("Capistrano Dep."), a District Manager for

AZ, at 229-230 (not need science background); Deposition of Stephanie Dempsey ("Dempsey

Dep."), a current Regional Alignment Leader and former District Manager for AZ, at 44:16-

45:19 (PSSs do not need background in medicine, healthcare, or science).

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 8:**

"Fact" 8 is flatly contradicted by Hummel's own deposition testimony and

contemporaneous writings she authored during her employment with AstraZeneca. See, e.g.,

Defendant's Concise Statement of Undisputed Material Facts ("Defendant's SUF"), ¶ 51

(Hummel "gains knowledge of disease states and related products through self-study. This was

evident with her promotion to LTC and her learning Seroquel and Nexium"); ¶ 54 (Hummel

wrote that she would "[e]nhance [her] clinical knowledge by keeping abreast with journals and

new information related to disease states").

Moreover, PSSs indisputably have the authority to communicate with health care

providers about the efficacy or indications for AZ products. See Appx. Vol. I, Tab 1, Hummel

Tr., 305:15-24 (Hummel testified that her supervisors evaluated her in part on her ability to

explain the strengths and weaknesses of AstraZeneca's products); see also, Dichiara Dec., Ex. 3,

Ventura Tr., 218:23-219:13 (PSS "needs to understand the needs of the customer and the patients

that that customer is treating and then share with them the features and benefits of the product

and then the appropriate issues that that patient may face while on the product").

Hummel cannot create a genuine dispute of fact by contradicting her prior deposition

testimony and contemporaneous writings with a self-serving conclusory "sham" declaration.

See, e.g., Santos v. Murdock, 243 F.3d 681, 684 (2d Cir. 2001) (holding that affidavit

contradicting prior deposition testimony could not be used to oppose a motion for summary

judgment); Raskin v. Wyatt Co., 125 F.3d 55, 63 (2d Cir. 1997) ("a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony"); Nugen v. St. Luke's/Roosevelt Hosp. Center, 2007 WL 1149979, at *20 (S.D.N.Y. Apr. 18, 2007) (refusing to consider affidavit which conflicted with affiant's prior testimony); Golden v. Merrill Lynch & Co., Inc., 2007 U.S. Dist. LEXIS 90106, at *24 (S.D.N.Y. Dec. 6, 2007) ("courts in the Second Circuit are particularly reluctant to credit affidavit testimony that alleges critical, obviously material facts that were not mentioned at deposition, noting that such circumstances strongly suggest a sham affidavit"; disapproving of declaration which contradicted documents evidencing plaintiff's exempt status and further noting that plaintiff's resume confirmed that she performed exempt duties).  Moreover, Hummel cannot rely on the testimony of other PSSs about their individual job duties to contradict her own deposition testimony or create a dispute of fact about her own specific job duties.  See, e.g., Prosser v. Ross, 70 F.3d 1005, 1008 (8th Cir. 1995) (plaintiff cannot avoid summary judgment by proffering testimony from another person that contradicts plaintiff's own testimony); see also, Fed. R. Evid. 602 (requiring personal knowledge of matters testified to; Hummel's failure to establish that the witnesses had personal knowledge of her own job duties precludes this evidence from being used to establish what her duties were). Accordingly, Defendant hereby objects to Hummel's citations throughout this Statement (as well as in her Response to Defendant's Statement of Undisputed Material Facts) to the depositions of Susan Johnson, Mark Capistrano, and Stephanie Dempsey, and respectfully requests that the Court not consider this deposition testimony in its determination of this motion.

**PLAINTIFF'S FACT NO. 9:**

9.      Throughout her employment, Hummel received continuing training and evaluations from her district managers who would sometimes accompany Hummel on visits with doctors and provide feedback about the interactions. Hummel Decl. at ¶¶27-28.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 9:**

Undisputed.

**PLAINTIFF'S FACT NO. 10:**

10.      Upon starting at AZ, Hummel received training on AZ pharmaceutical products as well as training on how to present information about the pharmaceutical products to doctors. Hummel Decl. at ¶ 27.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 10:**

Undisputed.

**PLAINTIFF'S FACT NO. 11:**

11.      Hummel received intensive training in which it was dictated 1) how a PSS was to interact with doctors, 2) the message to give to doctors about AZ products and 3) how to present the message.  According to AZ, everything a PSS did was considered "sales," even though PSSs cannot directly sell or take orders for a product.  Hummel Decl. at ¶¶10, 16.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 11:**

Undisputed that Hummel received training on how to interact with doctors.  The statement in Hummel's declaration that the message about AstraZeneca products and how to present it was "dictated" is flatly contradicted by Hummel's sworn deposition testimony.  See Appx. Vol. I, Tab 1, Hummel Tr., 260:4-18 (although AstraZeneca provided guidance on how to structure a sales call, Hummel was not required to say any particular thing in her interactions

with doctors).  Moreover, Hummel herself viewed her job as sales.  <u>See</u> Defendant's SUF, ¶¶ 26-28.  Hummel cannot create a genuine dispute of fact by contradicting her prior deposition testimony and contemporaneous writings with a self-serving conclusory "sham" declaration.  <u>See</u>, <u>e.g.</u>, <u>Santos</u>, 243 F.3d at 684; <u>Raskin</u>, 125 F.3d at 63; <u>Nugen</u>, 2007 WL 1149979, at *20; <u>Golden</u>, 2007 WL 4299443, at *9-10.  In any event, most of "Fact" 11 is not an actual fact, but a conclusory assertion.  Hummel cannot create a triable issue by inserting conclusory legal opinions into a declaration.  <u>BellSouth Telecomms. v. W.R. Grace & Co.</u>, 77 F.3d 603, 615 (2d Cir. 1996) (unsupported, conclusory allegations will not create an issue of fact); <u>Bickerstaff v. Vassar College</u>, 196 F.3d 435, 452 (2d Cir. 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.").

### D.    JOB DUTIES OF PLAINTIFF AND ALL PSSs

**PLAINTIFF'S FACT NO. 12:**

12.    All PSSs -- including Hummel -- are primarily responsible for meeting with an AZ-generated list of physicians within their assigned territory to provide AZ-approved information about AZ's pharmaceutical products.  Hummel Decl. at ¶¶ 9, 12; Overview of AstraZeneca Business Policies and Regulatory Review, DiChiara Decl. at Ex. 12, AZB_C 0001540-0001541 (outlining requirements for promotional discussions).

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 12:**

It is immaterial what "all PSSs" may be primarily responsible for, as the instant motion is directed to Hummel <u>individually</u> and does not involve the putative class as a whole.  Nevertheless, it is undisputed that Hummel met with physicians within her assigned territory to provide information about AstraZeneca's products, within FDA and AstraZeneca guidelines.  However, Hummel testified that her job was to persuade doctors to write more AstraZeneca

product prescriptions for appropriate patients in order to generate sales revenue, and her goal was to increase prescription growth among her physician customers.  See, e.g., Defendant's SUF, ¶¶ 16, 23.  Hummel cannot create a genuine dispute of fact by contradicting her prior deposition testimony with a "sham" declaration.  See, e.g., Santos, 243 F.3d at 684; Raskin, 125 F.3d at 63; Nugen, 2007 WL 1149979, at *20; Golden, 2007 WL 4299443, at *9-10.

**PLAINTIFF'S FACT NO. 13:**

13.    The goal of PSSs --including Hummel --was to keep AZ products in the minds of doctors so that they might consider prescribing AZ products in the future.  Hummel Decl. at ¶ 9.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 13:**

This motion is directed to Hummel individually, not all PSSs.  In any event, Hummel testified that her ultimate goal was to increase prescriptions of AstraZeneca product for approved uses.  See, e.g., Defendant's SUF, ¶ 23 (testifying: "I mean, the goal was -- is that to increase, you know, prescriptions.  Was a goal, is what we were told.  So this is what, you know, we want to do.  Go in, market, use the core selling method, talk to the physicians in hopes that that would deliver results."); see also, id., ¶¶ 16, 17.  Hummel cannot create a genuine dispute of fact by contradicting her prior deposition testimony with a declaration.  See, e.g., Santos, 243 F.3d at 684; Raskin, 125 F.3d at 63; Nugen, 2007 WL 1149979, at *20; Golden, 2007 WL 4299443, at *9-10.

**PLAINTIFF'S FACT NO. 14:**

14.    While in the field, all PSSs must make face-to-face calls on prescribers (i.e. doctors) within their assigned territories. DiChiara Decl., Ex. 10, AZB_C0001336-1338.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 14:**

Undisputed.

**PLAINTIFF'S FACT NO. 15:**

15.    "AstraZeneca defines a sales call as a face-to-face discussion between a prescriber and a PSS, where an approved visual aid and/or clinical paper is used to address the needs of the customer, and the most current promotional message is persuasively delivered.  All calls must include: product safety information, a direct request from a PSS for the appropriate action from the customer, and an offer to leave the Prescribing Information."  Id.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 15:**

Undisputed that this is a general definition of a sales call used by AstraZeneca.

**PLAINTIFF'S FACT NO. 16:**

16.    Defendant, from its Wilmington headquarters, provides each PSS with a list of physicians for them to target with "sales" calls.  Ventura Dep. at 123:14-124:15; Hummel Decl. at ¶12.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 16:**

Immaterial, but undisputed.

**PLAINTIFF'S FACT NO. 17:**

17.    Defendant provides PSSs visual aids and clinical papers to be used on sales calls. Ventura Dep. at 103:10-14; 104:4-12; Hummel Decl. at ¶¶ 10, 11.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 17:**

Undisputed.

**PLAINTIFF'S FACT NO. 18:**

18.    Defendant must pre-approve all visual aids and clinical papers.  Ventura Dep. at 103:15-18; 104:4-12.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 18:**

Undisputed.

**PLAINTIFF'S FACT NO. 19:**

19.    PSSs spend their time arranging meetings with doctors, gathering AZ-approved materials for meetings with doctors, getting to and from meetings with doctors, providing information to doctors and responding to their questions, and reporting information about their daily work activities through AZ's computer systems. Hummel Decl. at ¶¶ 9, 26; Ventura Dep. at 103:15-18, 104:4-12; DiChiara Decl., Ex. 10 (AZB_C0001336-1338).

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 19:**

This is undisputed as a general statement of how PSSs generally spend some of their time, but immaterial in that <u>Hummel</u> specifically admitted that she personally spent the vast majority of her time making calls on physicians.  <u>See</u> Appx. Vol. I, Tab 1, Hummel Tr., 176:15-23.  As this motion is directed to Hummel individually, it is immaterial how other PSSs generally spend their time.

**PLAINTIFF'S FACT NO. 20:**

20.    PSSs present information about AZ products from company-generated "detail pieces" that are shown to physicians as part of the product presentation – a practice known as "detailing." DiChiara Decl., Ex. 11 (AZB_C0001540 ("Promotions Discussions/Detailing").

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 20:**

Undisputed that company-generated detail pieces are made available to Pharmaceutical Sales Specialists to use during sales calls.  Moreover, AstraZeneca has always considered detailing to constitute selling activity.  <u>See</u>, <u>e.g.</u>, DiChiara Dec., Ex. 3, Ventura Tr., 185:24-186:6 (referring to the practice of detailing as "persuasive sales details").

**PLAINTIFF'S FACT NO. 21:**

21.    PSSs are prohibited by AZ's policies from providing healthcare providers with gifts or remuneration in exchange for prescriptions of AZ products. DiChiara Decl., Ex. 11, AZB_C 0001539 ("…illegal for anyone (including AstraZeneca) to provide anything of value…to induce or influence that person to prescribe or purchase one of our drugs."); Ex. 16, AZB_C0002637 (illegal to engage in quid pro quo).

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 21:**

Immaterial, but undisputed.

**PLAINTIFF'S FACT NO. 22:**

22.    PSSs are not permitted to recommend AZ's products to potential end-users, or obtain a commitment from a physician that she will prescribe an AZ product for a particular patient. DiChiara Decl., Ex. 16, AZB_C 0002650 ("product promotional discussions may not take place with patients); Ex. 16, AZB_C0002657 (a PSS must use "Fair Balance" on promotional calls so that a health care provider can understand benefit to risk ratio of a product to determine is appropriate use); Ex. 17, AZB_C0004202 ("promotional activities directed towards health care professionals must be designed to help HCP's improve treatment of and services to patients.")

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 22:**

Immaterial, but undisputed that PSSs are not permitted to discuss AstraZeneca products directly with patients. Undisputed that PSSs must fairly balance sales calls to enable health care providers to understand the benefit to risk ratio of a product to determine its appropriate use. Of course, the judgment involved in presenting a "fair balance" is one of the instances Hummel used discretion.

Hummel mischaracterizes the asserted evidence on "commitment." Hummel's cited evidence does not support the assertion that a PSS may not obtain a commitment from a physician to prescribe an AZ product for an appropriate patient type. Indeed, Hummel testified that she was expected to – and did – ask for commitments from physicians to prescribe AstraZeneca products for approved uses. See, e.g., Defendant's SUF, ¶¶ 30, 13; see also, id., ¶¶ 16, 23-24, 43 (admitting that the purpose of her calls was to persuade physicians to prescribe AstraZeneca products).

**PLAINTIFF'S FACT NO. 23:**

23.    PSSs do not sell to, interact with, or gather information about AZ's wholesale and retail customers in any way. Bradley Dep. at 22:18-23:2, 40:17-42:9; Hummel Decl. at ¶ 25.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 23:**

Immaterial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (asserting that "factual disputes that are irrelevant or unnecessary will not be counted" in considering a motion for summary judgment). Undisputed that PSSs do not interact with wholesalers.

The remainder of Hummel's Fact 23 is not supported by the cited evidence. In addition, this fact is contradicted by Hummel's own deposition testimony. Hummel testified that she regularly called on retail pharmacies and had discussions with pharmacists about, among other things, AstraZeneca's products and prior authorization language for insurance coverage; and Hummel also provided pharmacies with wholesaler information. Appx. Vol. I, Tab 1, Hummel Tr., 241:7-242:6; 116:5-21. Hummel cannot disavow her own testimony with a declaration crafted to survive summary judgment. See also, Santos, 243 F.3d at 684; Raskin, 125 F.3d at 63; Nugen, 2007 WL 1149979, at *20; Golden, 2007 WL 4299443, at *9-10.

**PLAINTIFF'S FACT NO. 24:**

24.    PSSs educate health care providers and present information to persuade doctors to write prescriptions in order to generate increased demand for AZ products. Ventura Dep. at 52:1-4.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 24:**

Fact 24 is undisputed as a general matter, but immaterial, as the instant motion is directed to Hummel <u>individually</u> and statements about PSSs generally cannot be used to create a triable issue of fact or contradict Hummel's specific deposition testimony and her own contemporaneous writings about what her job duties were.  <u>See</u> Defendant's SUF, ¶¶ 12, 16, 17, 23, 26-28, 30, 31; <u>see also</u>, <u>Prosser v. Ross</u>, 70 F.3d 1005, 1008 (8th Cir. 1995) (plaintiff cannot avoid summary judgment by proffering testimony from another person that contradicts plaintiff's own testimony).  Hummel concedes herein she was attempting "to persuade doctors to write prescriptions."  <u>See</u> Plaintiff's Fact No. 24.

**PLAINTIFF'S FACT NO. 25:**

25.    In executing this informational function, PSSs must comply with numerous AZ policies that constrain what they can say and do during product presentations, whom they must target and how often they must do so, and when they must work. DiChiara Decl., Ex. 17, AZB_C0004202; Ex. 5, AZB_C000820-21; Ex. 6, AZB_C000944; Ex. 7, AZB_C0001020-22; Ex. 8, AZB_C0001222-33; Ex. 9, AZB_C0001238-49; Ex. 10, AZB_C0001336-38; Ex. 11, AZB_C0001538-44; Ex. 12,  AZB_C0004230-31; Ex. 13, AZB_C00018072; Ex. 16, AZB_C0002632-73.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 25:**

Undisputed that PSSs must comply with the laws and regulations governing the pharmaceutical industry in the United States, but immaterial for purposes of the instant motion.

The generalized requirements therein do not remove discretion.  Indeed, the core visual aid in Dichiara Dec., Ex. 7 to be used by a PSS is <u>twenty-six</u> pages long, illustrating the discretion that a PSS must use choosing what material to present.

**PLAINTIFF'S FACT NO. 26:**

26.    AZ considers the detailing work performed by PSSs to be promotional work. DiChiara Decl., Ex. 16, AZB_C0002636 (purpose of access tools to "promote our products"), AZB_C0002650 ("Product promotional discussions must take placed with HCP's."); Ex. 17, AZB_C0004202; Ex. 15, AZB_C0002632-73; Ventura Dep. 156:17-157:24.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 26:**

Immaterial, and thus, insufficient to create an issue of fact for purposes of defeating summary judgment.  See Anderson, 477 U.S. at 248.  It is for the court to decide—not Hummel or AstraZeneca—whether Hummel's duties were "selling" or "promotional".  And, Hummel mischaracterizes the record.  Indeed, as Ms. Ventura testified,

> part of the sales process is the promotion of the products.  Also, part of the sales process is the education of the disease state and the clinical evidence of the product. But all leads to the request for a commitment to write the product and then the gaining of that commitment.  This is an element of the selling process. . . .  The PSS is involved in the selling, the promotion, the sharing of clinical evidence and education, all leading to the request for the commitment and getting the commitment from the physician to write the product.

See DiChiara Dec., Ex. 3, Ventura Tr., 300:1-11; 300:22-301:5.

## E.    WORK HOURS FOR PLAINTIFF AND ALL PSSs

**PLAINTIFF'S FACT NO. 27:**

27.    It is common that PSSs work more than eight hours per day during the work week, do not take meal breaks, and work on the weekends.  Hummel Decl. at ¶ 5. *See also* Ventura Dep. at 92:21-24.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 27:**

Immaterial and irrelevant to the determination of this motion. Moreover, Defendant's motion is directed to Hummel <u>individually</u>, so this generalized statement about what Hummel believes to be "common" for all PSSs is inappropriate and immaterial, and thus, insufficient to create an issue of fact for purposes of defeating summary judgment. See <u>Anderson</u>, 477 U.S. at 248. In addition, Hummel testified that she worked weekends *less than five times per year*, and she cannot contradict her deposition testimony with a self-serving declaration. See Appx. Vol. I, Tab 1, Hummel Tr., 223:5-14; <u>see</u> <u>also</u>, <u>Santos</u>, 243 F.3d at 684; <u>Raskin</u>, 125 F.3d at 63; <u>Nugen</u>, 2007 WL 1149979, at *20; <u>Golden</u>, 2007 WL 4299443, at *9-10.

**PLAINTIFF'S FACT NO. 28:**

28.    Hummel consistently worked over 40 hours per week. Id.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 28:**

Immaterial to the determination of this motion. See <u>Anderson</u>, 477 U.S. at 248.

**PLAINTIFF'S FACT NO. 29:**

29.    Hummel worked approximately 10 hours per weekday and also worked on weekends. Id.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 29:**

Immaterial to the determination of this motion. See <u>Anderson</u>, 477 U.S. at 248. In addition, Hummel testified that she worked weekends *less than five times per year*, and she cannot contradict her deposition testimony with a self-serving declaration. See Appx. Vol. I, Tab 1, Hummel Tr., 223:5-14; <u>see</u> <u>also</u>, <u>Santos</u>, 243 F.3d at 684; <u>Raskin</u>, 125 F.3d at 63; <u>Nugen</u>, 2007 WL 1149979, at *20; <u>Golden</u>, 2007 WL 4299443, at *9-10.

**PLAINTIFF'S FACT NO. 30:**

30.    On the weekends and when Hummel was not in the field visiting doctors, he worked from home on administrative work, including reading and responding to-emails, speaking with other AZ employees, and preparing reports; he also was sometimes required to travel on the weekends. Id. at ¶ 32.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 30:**

Immaterial to this motion.  See Anderson, 477 U.S. at 248.  In addition, Hummel testified that she infrequently worked weekends (less than five times per year), and the reason for having to work weekends usually was to attend special medical conventions.  See Appx. Vol. I, Tab 1, Hummel Tr., 223:5-21.

### F.    HUMMEL'S COMPENSATION

**PLAINTIFF'S FACT NO. 31:**

31.    Hummel, like all PSSs, received a salary and a bonus, which is referred to as the field sales incentive plan ("FSIP").  Ventura Dep. at 373:14-374:1; 428:6-16; 429:16-24; Hummel Decl. at ¶ 6.  See also DiChiara Decl., Ex. 14, AZB_C0001820-38.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 31:**

Undisputed.

**PLAINTIFF'S FACT NO. 32:**

32.    The bonus element of Hummel's – and all PSSs – compensation is based upon an estimate of the number of prescriptions filled in the PSS's territory along with other criteria, including strategic objectives and professional behavior. Hummel Decl. at ¶ 6; Ventura Dep. at 377:4-13; 380:4-381:24; 383:14-19; 384:4-19; 389:18-391:9; 413:5-416:3; 423:15-424:19.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 32:**

Immaterial, in that Hummel testified that <u>her</u> incentive compensation was calculated in part based either on new prescriptions or total prescription market share.  Appx. Vol. I, Tab 1, Hummel Tr., 330:18-331:3.

**PLAINTIFF'S FACT NO. 33:**

33.    The bonus was only a small part of Hummel's annual wages.  Hummel Decl. at ¶ ¶ 6, 34.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 33:**

Immaterial and conclusory.  Hummel testified that her incentive compensation constituted approximately 10-20% of her total annual compensation.  Appx. Vol. I, Tab 1, Hummel Tr., 329:6-15.

**PLAINTIFF'S FACT NO. 34:**

34.    PSSs do not receive "commissions" that salespeople typically receive.  PSS's are eligible for the Field Sales Incentive Plan ("FSIP"). DiChiara Decl., Ex. 14, AZB_C0001820-38.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 34:**

This is not a fact, but a conclusory legal opinion.  Hummel's unsupported, conclusory allegations will not create an issue of fact.  <u>BellSouth Telecomms. v. W.R. Grace & Co.</u>, 77 F.3d 603, 615 (2d Cir. 1996); <u>Bickerstaff v. Vassar College</u>, 196 F.3d 435, 452 (2d Cir. 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.").  Undisputed that PSSs are eligible for incentive compensation in accordance with the terms of applicable field sales incentive plans.

**PLAINTIFF'S FACT NO. 35:**

35.     Compensation received according to the FSIP is based on a complicated logarithm which cannot be traced to any individual PSS.  DiChiara Decl., Ex. 14, AZB_C0001820-38; Ventura Dep. 377:2-13; Hummel Decl. at ¶ 35.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 35:**

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating summary judgment.  See Anderson, 477 U.S. at 248.  Also, Hummel's unsupported, conclusory allegations will not create an issue of fact.  BellSouth Telecomms., 77 F.3d at 615; Bickerstaff, 196 F.3d at 452 (2d Cir. 1999).  Moreover, Ms. Ventura testified that sales efforts can be tracked to PSS efforts.  See DiChiara Dec., Ex. 3, Ventura Tr., 184:4-189:3; 382:13-21.

**PLAINTIFF'S FACT NO. 36:**

36.     Unlike commissions, incentive pay for PSSs in not based solely on sales, as there is a financial component that accounts for 80% of the incentive bonus, but there is also a subjective component of the incentive bonus. DiChiara Decl., Ex. 14, AZB_C0001820-38.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 36:**

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating summary judgment.  See Anderson, 477 U.S. at 248.

**PLAINTIFF'S FACT NO. 37:**

37.     The FSIP is also very unlike a commission because if a PSS is on a performance improvement plan, yet still meets their "sales" target, the PSS is not eligible for a bonus.  In addition, if a PSS in on a paid leave of absence and not making sales calls during their leave, the PSS is still eligible for the incentive bonus.  DiChiara Decl., Ex. 14, AZB_C0001820-38.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 37:**

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating summary judgment.  See Anderson, 477 U.S. at 248.

**PLAINTIFF'S FACT NO. 38:**

38.    AZ cannot link the "sale" of a particular drug to particular PSS, because several PSSs will call on the same doctor to promote the same drug. Ventura Dep. at 393:9-395:22 ("But they both would get credit in the calculation of their formula for their bonus…"); Capistrano Dep. at 105:5-106:7 (no way to tell which PSS is responsible for increase in market share).

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 38:**

Immaterial.  This is not a fact but a conclusory legal opinion.  Unsupported, conclusory allegations will not create an issue of fact.  BellSouth Telecomms., 77 F.3d at 615; Bickerstaff, 196 F.3d at 452.  Moreover, AstraZeneca objects to Hummel's reliance on the Capistrano deposition on the ground that the testimony lacks foundation, as Hummel failed to establish that Mr. Capistrano (a California PSS) has any basis for knowledge as to how AstraZeneca tracks sales; and further objects on the ground that this motion is directed to Hummel individually, not PSSs generally, and the testimony of a PSS in a different state cannot be used as evidence of Hummel's own job duties.  See, e.g., Prosser, 70 F.3d at 1008; Fed. R. Evid. 602.

**PLAINTIFF'S FACT NO. 39:**

39.    The link between a PSS's sales calls and a sale is further attenuated because not all pharmacies report their prescription data to IMS, the company that reports to AZ the number of prescriptions sold.  Ventura Dep. at 380:8-381:3, 383:14-389:25 (IMS data is approximately 75% accurate).  Bradley Dep. 95:3-22.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 39:**

Immaterial. Moreover, the so-called "attenuation" is a conclusory legal opinion insufficient to create a genuine issue of fact. See Anderson, 477 U.S. at 248 (asserting that "factual disputes that are irrelevant or unnecessary will not be counted" in considering a motion for summary judgment); BellSouth Telecomms., 77 F.3d at 615; Bickerstaff, 196 F.3d at 452.

**PLAINTIFF'S FACT NO. 40:**

40.    Even Defendant's PSSs had no idea how AZ calculated the bonus aspect of their compensation. Johnson Dep. at 53:11-54:20 (after inquiring how bonus was calculated, did not understand the company's explanation and gave up trying to figure it out).

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 40:**

Immaterial, conclusory, and lacks foundation. Moreover, this motion is directed to Hummel individually, not all PSSs generally, and Hummel cannot rely on deposition testimony of Susan Johnson (former California PSS) or any other PSS to contradict her own deposition testimony. See, e.g., Prosser, 70 F.3d at 1008 (plaintiff cannot avoid summary judgment by proffering testimony from another person that contradicts plaintiff's own testimony); Fed. R. Evid. 602 (requiring personal knowledge of matters testified to; Hummel's failure to establish that the witnesses had personal knowledge of her own job duties precludes this evidence from being used to establish what her duties were). In any event, testimony of California PSSs is of no help to Hummel, as the district court in the California action already has concluded that AstraZeneca's California PSSs are exempt outside salespeople. See Brody v. AstraZeneca Pharmaceuticals LP, No. CV 06-6862 ABC (MANx) (C.D. Cal. June 11, 2008) (order granting summary judgment in favor of AstraZeneca on outside sales exemption) (a copy of the Brody

Order is attached as Exhibit B to the accompanying Declaration of Harry Johnson ("Johnson Decl.")).

**PLAINTIFF'S FACT NO. 41:**

41.    PSSs receive credit for prescriptions written by doctors they never called on if the prescription is filled in their territory.  Ventura Dep. at 390:13-391:9.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 41:**

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating summary judgment.  See Anderson, 477 U.S. at 248.

> **G.    ASTRAZENECA MISCLASSIFIED HUMMEL AS AN EXEMPT OUTSIDE SALESPERSON**
>
> **1.    Hummel Did Not Sell Anything Or Take Orders**

**PLAINTIFF'S FACT NO. 42:**

42.    Non-PSS employees of AZ are involved in selling and entering into contracts with entities that purchase AZ products. Bradley Dep. at 22:14-23:2; 31:25-33:15; 40:17-42:9; Hummel Decl. at  ¶ ¶ 19-24.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 42:**

This is not a fact, but a conclusory legal opinion as to who at AstraZeneca is involved in "selling."  Undisputed that PSSs do not interact with wholesalers.  Hummel cannot create a triable issue by inserting conclusory legal opinions into a declaration.  BellSouth Telecomms., 77 F.3d at 615; Bickerstaff, 196 F.3d at 452.

**PLAINTIFF'S FACT NO. 43:**

43.    PSSs -- including Hummel -- do not sell AZ's products to physicians or to anyone else. Id.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 43:**

This is not a fact, but a conclusory legal opinion.  Hummel cannot create a triable issue by inserting conclusory legal opinions into a declaration.  See, e.g., BellSouth Telecomms., 77 F.3d at 615; Bickerstaff, 196 F.3d at 452.

**PLAINTIFF'S FACT NO. 44:**

44.    The traditional "sale of cash exchanging and transfer of title taking place does not happen in the sale transaction that occurs with a PSSs and a physician or a health care provider." Ventura Dep. at 242:19-243:5.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 44:**

Immaterial, but undisputed that there is no exchange of money for product during a PSS sales call.

**PLAINTIFF'S FACT NO. 45:**

45.    Health care providers do not purchase AZ's products from PSSs. Ventura Dep. 372:7-19; Hummel Decl. at ¶ ¶ 20. 23.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 45:**

Immaterial, but undisputed.

**PLAINTIFF'S FACT NO. 46:**

46.    PSSs do not sell samples to health care providers. Ventura Dep. at 167:10-13; 167:20-168:2; 168:15-16; Atha Dep. at 179:16-19.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 46:**

Immaterial, but undisputed.

**PLAINTIFF'S FACT NO. 47:**

47.    PSSs do not negotiate prices or terms for AZ products or services. Hummel Decl.

at ¶ 22; Bradley Dep. at 22:14-23:2; 31:25-33:15: 40:17-42:9.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 47:**

Undisputed as to Hummel, but immaterial.

**PLAINTIFF'S FACT NO. 48:**

48.    PSSs do not negotiate or execute contracts for AZ products or services. Hummel

Decl. at ¶ 19; Bradley Dep. at 22:14-23:2; 31:25-33:15: 40:17-42:9.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 48:**

Immaterial, but undisputed as to Hummel.

**PLAINTIFF'S FACT NO. 49:**

49.    PSSs do not take orders for AZ products or services. Atha Dep. at 32:15-18;

33:23-34:16.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 49:**

Hummel's "Fact" 49 is not supported by the cited evidence because Hummel

mischaracterizes Atha's testimony.  Indeed, Ms. Atha testified that PSSs take "orders" and that

"PSSs ask for scripts" which are "a doctor's way of placing an order."  See DiChiara Dec., Ex. 2

Atha Tr., 21:14-21.  Moreover, Hummel's "Fact" 49 is not a fact but a conclusory legal opinion,

and thus, cannot create an issue of fact.  See, e.g., BellSouth Telecomms., 77 F.3d at 615;

Bickerstaff, 196 F.3d at 452.

**PLAINTIFF'S FACT NO. 50:**

50.    Instead, members of the operations group, managed markets, and business

development and licensing at AZ receive and process the purchase orders and enter into contracts

with the entities that actually purchase AZ products--such as wholesalers, pharmacies, and retailers. Bradley Dep. at 17:14-18:6, 20:25-21:16, 31:25-33-25.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 50:**

Immaterial, but undisputed that AstraZeneca's customer relations and services department enters into contracts with wholesalers.  See DiChiara Dec., Ex. 4, Bradley Tr., 21:3-21.  The remainder of Fact 50 is not supported by any of Hummel's cited evidence, including the claimed order "processing."  The record shows that orders are electronically initiated by wholesalers and  received in an automated process by the company without members of any of the operations group, managed markets, business development, or licensing soliciting them or interacting with anyone to "take" them; an invoice merely prints out at AstraZeneca, along with a packing slip printed at the AstraZeneca warehouse so the products specified can be shipped. DiChiara Dec., Ex. 4, Bradley Tr., 20:16-22:4; 37:5-39:7; 50:19-52:6.

**PLAINTIFF'S FACT NO. 51:**

51.    AZ sells to wholesaler and wholesalers sell to pharmacies. Ventura Dep. at 364:17-19; 366:5-6.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 51:**

Immaterial, but undisputed that the transaction between AstraZeneca and wholesalers is but one step in a multi-step sales process.

**PLAINTIFF'S FACT NO. 52:**

52.    "Wholesalers buy the AstraZeneca products and consumers purchase through a prescription at the retail level pharmacy the AstraZeneca product.  When they do that, it creates the demand for the wholesaler, which then triggers the sale by AstraZeneca."  Ventura Dep. at 69:13-19

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 52:**

Immaterial, but undisputed.  Moreover, Hummel takes Ventura's deposition out of context, in that Ventura also testified:

> Drug wholesalers purchase products from AstraZeneca in anticipation of the demand for those products.  The demand of those products is created by the sales representatives selling at the health care provider level, then gaining a commitment from the health care provider to prescribe the product.  As the health care provider prescribes the product, the patient will redeem the prescription at the pharmacy and a sale takes place there, too.

DiChiara Dec., Ex. 3, Ventura Tr., 70:13-71:1.

**PLAINTIFF'S FACT NO. 53:**

53.     Sales to wholesalers account for 90% of all of AZ's sales. Bradley Dep. at 29:8-16 (AZ records income when it ships its product to wholesalers).

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 53:**

Immaterial, but undisputed that AstraZeneca ships approximately 90% of its product to wholesalers.  DiChiara Dec., Ex. 4, Bradley Tr., 29:8-12.  Fact 53 as asserted is not a fact, but a conclusory legal opinion as to the meaning of "sales."

**PLAINTIFF'S FACT NO. 54:**

54.     Sales to Medco, a pharmacy benefit manager, account for 8% of AZ's sales. Bradley Dep. at 29:23-30:6 (AZ records income when it ships its product to Medco.)

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 54:**

Immaterial, but undisputed that 8% of AstraZeneca shipments are to Medco.  DiChiara Dec., Ex. 4, Bradley Tr., 29:25-30:2.  Fact 54 as asserted is not a fact, but a conclusory legal opinion as to the meaning of "sales."

**PLAINTIFF'S FACT NO. 55:**

55.     The remaining two percent (2%) of AZ's sales is compromised of companies,
pharmacies, hospitals, and physicians that purchase Zoladex, an injectable oncology drug,
through a third party known as SDS, which takes the orders from physicians.  Sales to
pharmacies, hospitals, and Zoladex account for less than one-half of one percent of AZ's total
sales. Bradley Dep. at 30:7-31:24; 85:18-86:19.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 55:**

Immaterial.  Moreover, Fact 55 is not supported by the cited evidence, and
mischaracterizes Ms. Bradley's testimony.  See Anderson, 477 U.S. at 248.

**PLAINTIFF'S FACT NO. 56:**

56.     AZ receives its orders from wholesalers electronically. Bradley Dep. at 37:20-24.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 56:**

Immaterial, but undisputed that orders from wholesalers are received electronically.
DiChiara Dec., Ex. 4, Bradley Tr., 37:6-18.

**PLAINTIFF'S FACT NO. 57:**

57.     When AZ ships its products to wholesalers or the other entities that purchase its
products, an invoice is generated for which the purchaser must remit payment to AZ, as AZ
records income when its product is shipped.  Bradley Dep. at 38:16-39:4.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 57:**

Immaterial, but undisputed.

**PLAINTIFF'S FACT NO. 58:**

58.     PSS do not have any role in the order and invoice process. Bradley Dep. at 22:14-
23:2; 31:25-33:25; Hummel Decl. at ¶ 25.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 58:**

This "fact" is an overstatement taken out of context. It is not supported by the cited

evidence, and nothing more than a conclusory legal opinion which is insufficient to defeat a

motion for summary judgment. See, e.g., BellSouth Telecomms., 77 F.3d at 615; Bickerstaff,

196 F.3d at 452. It is true that PSSs do not interact with wholesalers (DiChiara Dec., Ex. 4,

Bradley Tr., 22:18-23:2); however, as Debra Ventura testified,

> [t]here is definitely a sales transaction that happens within this
> process. There's multiple sales transactions that happen, and none
> of which happens at all unless the health -- the pharmaceutical
> sales specialist begins the process of educating the physician about
> the brands, the features, and the benefits, promoting the brands, the
> benefits of the brand for the patient, selling to the specific patient
> type, which leads to the prescription. And then the redemption of
> that is a sale, which leads to the wholesaler demand, which, again,
> is a sale for AstraZeneca. So it is a sales transaction.

See DiChiara Dec., Ex. 3, Ventura Tr., 301:23-302:18.

**PLAINTIFF'S FACT NO. 59:**

59.    If a hospital wanted to actually purchase an AZ product they would go to a

wholesaler who gets it from AZ. Atha Dep. 32:20-33:

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 59:**

Immaterial, and a mischaracterization of Ms. Atha's testimony. See Anderson, 477 U.S.

at 248.

**PLAINTIFF'S FACT NO. 60:**

60.    In addition to an invoice being generated when an entity purchases a product

directly from AZ, a pick and pack slip is also generated at the warehouse. The pick and pack slip

functions as an order form. Bradley Dep. at 50:25-51:25.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 60:**

Immaterial, and mischaracterization of Ms. Bradley's testimony.  Ms. Bradley did not testify that a pick and pack slip is an "order form;" rather, she testified that when a wholesaler places an order online, a pick and pack slip is generated at the warehouses "in order for [the warehouse] to pull the product onto the pallet."  DiChiara Dec., Ex. 4, Bradley Tr., 51:3-25.  See Anderson, 477 U.S. at 248.

**PLAINTIFF'S FACT NO. 61:**

61.    Invoices and pick and pack slips are not generated in response to a PSS interacting with a health care provider.  The invoices and pick and pack slips are not generated at the time of the PSS's sale call with a health care provider.  Nor are they generated following the sales call.  The invoices and pick and pack slips are also not generated when a health care provider writes a prescription for an AZ product or when a patient gets a prescription filled at a pharmacy.  Bradley Dep. at 66:6-71:22.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 61:**

Immaterial, but undisputed that such slips are not generated at the time of the sales call or the time of the writing of a prescription.  The rest is a mischaracterization of the testimony.  Bradley testified that PSS interactions with physicians ultimately cause sales to wholesalers.  DiChiara Dec., Ex. 4, Bradley Tr. at 91:14-98:14.

2.    **Doctors Do Not Purchase Drugs From PSSs**

**PLAINTIFF'S FACT NO. 62:**

62.    Doctors do not give money to AZ for the purchase of drugs.  Atha Dep. at 23:17-20; Hummel Decl. at ¶¶ 20, 23.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 62:**

Immaterial, but undisputed.  Ms. Atha's actual testimony was "[t]he doctor doesn't fork over the money <u>but the doctor generated the entire process</u>."  Dichiara Dec., Ex. 2, Atha Tr., 23:17-20 (emphasis added).

**PLAINTIFF'S FACT NO. 63:**

63.    The patient or consumer is the one who goes to the pharmacy to purchase and pay for the drug.  Atha Dep. at 23:9-16.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 63:**

Immaterial, but undisputed that Ms. Atha testified that the patient or his/her insurance company pays the pharmacy to purchase the drug.  DiChiara Dec., Ex., 2, Atha Tr., 23:11-16.

**PLAINTIFF'S FACT NO. 64:**

64.    "The health care practitioners don't buy drugs from anyone directly.  They don't supply drugs to patients through a prescription."  Ventura Dep. at 372:7-10.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 64:**

Immaterial, but undisputed that health care practitioners do not purchase drugs directly from PSSs, nor, in most cases, would a doctor actually have drugs on hand and thus supply them to a patient.  Moreover, Ms. Ventura testified that health care providers provide prescriptions to their patients, and patients in turn redeem those prescriptions at the pharmacy.  <u>See</u> DiChiara Dec., Ex. 3, Ventura Tr., 70:13-71:1; 444:21-445:10.

**PLAINTIFF'S FACT NO. 65:**

65.    AZ does not record income when a health care provider tells a PSS that he or she will consider prescribing an AZ product. Bradley Dep. at 61:14-21.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 65:**

Immaterial, but undisputed.

**PLAINTIFF'S FACT NO. 66:**

66.     AZ does not record income when a health care provider tells a PSS that he or she will prescribe an AZ product. Id. at 61:23-62:5

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 66:**

Immaterial, but undisputed.

**PLAINTIFF'S FACT NO. 67:**

67.     AZ does not record income when a health care provider promises a PSS that he or she will prescribe an AZ product. Id. at 62:7-11.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 67:**

Immaterial, but undisputed.

**PLAINTIFF'S FACT NO. 68:**

68.     AZ does not record income when a health care provider commits to prescribing an AZ product. Id. at 62:14-22.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 68:**

Immaterial, but undisputed.

**PLAINTIFF'S FACT NO. 69:**

69.     AZ does not record income when a health care provider writes a prescription for an AZ product. Id. at 62:24-63:5.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 69:**

Immaterial, but undisputed.

**PLAINTIFF'S FACT NO. 70:**

70.    AZ does not record income when a health care provider gives a prescription to a

patient for an AZ product.  *Id*. at 63:7-64:6.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 70:**

Immaterial, but undisputed.

**PLAINTIFF'S FACT NO. 71:**

71.    AZ does not record income when a patient fills a prescription for an AZ product

at a pharmacy.  *Id*. at 64:8-13.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 71:**

Immaterial, but undisputed.

**PLAINTIFF'S FACT NO. 72:**

72.    AZ does not record income when a patient pays for a prescription for an AZ

product at a pharmacy.  *Id*. at 64:15-20.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 72:**

Immaterial, but undisputed.

**PLAINTIFF'S FACT NO. 73:**

73.    AZ does not record income when an insurance company reimburses a pharmacy

for a prescription that was filled for an AZ product.  Id. at 64:22-65:4.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 73:**

Immaterial, but undisputed.

### 3.    Non-Binding Commitments From Doctors

**PLAINTIFF'S FACT NO. 74:**

74.    PSSs ask doctors to perform some action in the future, including prescribe an AZ product to appropriate patients.   AZ refers to this as getting a "commitment." Ventura Dep. At 75:7-13; 158:9-15; Hummel Decl. at ¶ 19.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 74:**

Undisputed that the PSS's responsibility is to "ask for a commitment by the health care provider to prescribe [AstraZeneca] product and to get that commitment as the appropriate patient is presented to the doctor…"  DiChiara Dec., Ex. 3, Ventura Tr., 75:7-13.

**PLAINTIFF'S FACT NO. 75:**

75.    Doctors do not commit to prescribe a certain number of prescriptions nor do they commit to prescribe a certain drug for a specific patient.  Ventura Dep. at 77:8-79:4.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 75:**

Mischaracterizes Ms. Ventura's testimony.  Ms. Ventura actually testified: "A physician commits to the sales representatives that for the products for which they were discussing and the appropriate indications and patient types, that they will prescribe the product for that particular patient the next time available."  DiChiara Dec., Ex. 3, Ventura Tr., 77:13-21 (emphasis added). Moreover, Ms. Ventura did not testify that physicians do not commit to prescribe for a specific type of patient; rather, she testified that physicians do not identify patients by name when speaking with PSSs, as that would be a HIPAA violation.  Id., 78:10-79:4.  She also clarified her testimony by noting that "sometimes a PSS will ask for and obtain a commitment to prescribe a product regarding the next group of an appropriate type of patient that the prescriber will treat, like the next one or five or ten patients out of that type."  See Johnson Decl., Ex. A, Ventura Errata Sheet.

**PLAINTIFF'S FACT NO. 76:**

76.    "The PSS does not get a commitment to purchase."  Ventura Dep. at 316:12-13.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 76:**

Mischaracterizes Ms. Ventura's testimony.  Ms. Ventura testified that PSSs obtain a

commitment from the health care provider to prescribe AstraZeneca products for approved uses,

which then translates into a purchase by the consumer, as part of a multi-layer sales process:

> The PSS role is an independent sales representative in the country
> calling on health care providers to sell -- position our brands with
> health care providers so that they prescribe the brands to the
> appropriate patient types, which leads to a script being filled at the
> pharmacy, a sale, which leads to then the demand at the wholesaler
> level that AstraZeneca then sells the products to the wholesaler.

DiChiara Dec., Ex. 3, Ventura Tr., 29:22-30:13; see also, id., 70:13-71:1 ("Drug wholesalers

purchase products from AstraZeneca in anticipation of the demand for those products.  The

demand of those products is created by the sales representatives selling at the health care

provider level, then gaining a commitment from the health care provider to prescribe the product.

As the health care provider prescribes the product, the patient will redeem the prescription at the

pharmacy and a sale takes place there, too."); id., 444:24-445:10 ("the commitment by the

physician is the first step in the selling process.  At that point, the prescription will be written.

The retail chain will be required to fill a prescription for the representative, which will create

demand at the wholesaler. So the commitment is the first step in the selling process.").

**PLAINTIFF'S FACT NO. 77:**

77.    After a PSS receives a "commitment" from a doctor, the doctor is still free to not

prescribe the AZ drugs.  Atha Dep. at 59:3-29.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 77:**

Immaterial, but undisputed.  Also, mischaracterizes Ms. Atha's testimony, in that Ms. Atha also testified that a PSS would "follow up with the physician on the next call" to address the issue.  DiChiara Dec., Ex. 2, Atha Tr., 60:1-13.

**PLAINTIFF'S FACT NO. 78:**

78.    Doctors sometimes give a "commitment" to PSSs but do not subsequent to giving a "commitment" prescribe AZ drugs. Atha Dep. at 59:22-24.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 78:**

This fact is vague and ambiguous.  In any event, it is immaterial that doctors may give a commitment to a PSS to prescribe a drug but later decide not to write a prescription.

**PLAINTIFF'S FACT NO. 79:**

79.    Hummel did not receive any guarantee from a doctor that the doctor would prescribe the products to patients in the future. Hummel Decl. at ¶ 19

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 79:**

Immaterial, but undisputed as to "guarantee."  However, Hummel testified that the purpose of her job was to persuade physicians to write prescriptions for AstraZeneca products for approved uses:

> Q.  What was the purpose?  I mean, what was -- what the company would have liked to have seen from that doctor after you had talked to him or her?
>
> A.  To write the product, or products, that you were marketing.
>
> Q.  Okay.  And those would be AstraZeneca products.
>
> A.  Correct.
>
> Q.  And those would be prescriptions for AstraZeneca products.
>
> A.  Correct.

Appx., Vol I., Tab 1, Hummel Tr., 31:10-21; <u>see also</u>, <u>id</u>., 304:5-12 ("I mean, the goal was -- is that to increase, you know, prescriptions. Was a goal, is what we were told. So this is what, you know, we want to do. Go in, market, use the core selling method, talk to the physicians in hopes that that would deliver results").

### 4.    PSSs Advertise for AZ

<u>**PLAINTIFF'S FACT NO. 80:**</u>

80.    AZ invests millions of dollars in print and media advertisement. Atha Dep. at 36:24-37:5; Bradley Dep. at 50:7-12.

<u>**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 80:**</u>

Immaterial, and mischaracterizes both Ms. Atha's and Ms. Bradley's testimony on this point, which lacks foundation. <u>See</u> <u>Anderson</u>, 477 U.S. at 248. Ms. Bradley was asked at deposition by Hummel's counsel: "Would it surprise you if AstraZeneca spent more than a hundred million in advertising for its pharmaceutical products in a particular year?" to which Ms. Bradley responded "No." DiChiara Dec., Ex. 4, Bradley Tr., 50:7-12 (AstraZeneca's counsel objected to this line of questioning). Similarly, Hummel's counsel asked Ms. Atha "wouldn't you venture to say that millions of dollars are spent on that advertising campaign?" Ms. Atha responded: "I can't say the exact amount of money, but we do invest in marketing and advertising." Hummel's counsel then asked, "would it be fair to say that millions of dollars in marketing and advertising through print and media ads?" and Ms. Atha responded "It would be fair to say." DiChiara Dec., Ex., 2, Atha Tr., 35:18-36:5 (AstraZeneca's counsel objected to this line of questioning). However, Hummel's counsel failed to establish a foundation to demonstrate that either Ms. Atha or Ms. Bradley has personal knowledge of AstraZeneca's spending on print and media ads, and this subject matter was not a topic upon which either witness was designated by the Company.

**PLAINTIFF'S FACT NO. 81:**

81.    AZ uses advertisements to promote market expansion for its drugs. *Pa. Emples. Benefit Trust Fund v. Zeneca, Inc*., 499 F.3d 239, 245 (3rd Cir. 2007).

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 81:**

Immaterial, but undisputed.  In any event, the portion of the case cited by Hummel is not a statement in reference to AstraZeneca specifically, but a statement about the purpose of advertising in general: the court stated that the "primary purpose" of advertising is "to promote market expansion."  Pennsylvania Employees Benefit Trust Fund v. Zeneca, Inc., 499 F.3d 239, 245 (3rd Cir. 2007).

**PLAINTIFF'S FACT NO. 82:**

82.    AZ uses physician-directed pitches by sales representatives as one form of advertisement of its drugs. *Pa. Emples. Benefit Trust Fund*, 499 F.3d at 245.  ("advertisements are published in journals, magazines, and newspapers, and are broadcast through media such as television and radio. Advertisements also come in the form of physician-directed pitches by sales representatives, computer programs, and electronic media.)

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 82:**

This is not a "fact" based on any factual record evidence, nor any evidence applicable to Hummel as an <u>individual</u>.  Instead, Hummel grasps at a general statement made by a court in a case that had absolutely nothing to do with the job duties of AstraZeneca's Pharmaceutical Sales Specialists.  The court in that case made a general statement that "[a]dvertisements also come in the form of physician-directed pitches by sales representatives…" (499 F.3d at 245), and there is no indication that the court's statement was based on evidence submitted by AstraZeneca, nor did the court specifically say that "AZ uses physician-directed pitches by sales representatives as

one form of advertisement for its drugs." See id.  As such, Hummel's reliance on this Third

Circuit case as factual evidence is entirely inappropriate.  See also, Anderson, 477 U.S. at 248.

## PLAINTIFF'S FACT NO. 83:

83.    PSSs are part of the "marketing mix" (or "promotional mix") for AZ products.

Ventura Dep. at 401:9-19.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 83:

Misleading.  Ms. Ventura actually testified: "I don't know if the organization would

consider PSSs as part of the promotional mix."  See DiChiara Dec., Ex. 3 Ventura Tr., 405:17-

19.  She also testified that "PSSs are responsible for selling the product to the customers, to the

health care providers."  Id., 403:4-7.  She explained that "[t]he marketing mix for any product,

which includes sales promotions, sales representatives, advertising, lunch programs, dinner

programs, medical education events, conventions, all of that goes into the promotional mix of a

product and each of those influence the prescribing and the usage of those products."  Id., 401:9-

19.

## PLAINTIFF'S FACT NO. 84:

84.    Many elements influence whether a doctor prescribes a drug, including,

television and print advertisement, the PSS is merely one element.  Ventura Dep. at 400:13-

401:19; 406:2-408:10.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 84:

Immaterial, but undisputed.

## PLAINTIFF'S FACT NO. 85:

85.    The PSS's job is to perform an advertising function by keeping the name of AZ

products in the minds of health care providers. Hummel Decl. at ¶ 9.

**<u>DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 85:</u>**

Hummel cannot contradict her sworn deposition testimony and contemporaneous documents through a self-serving declaration. <u>See</u>, <u>e.g.</u>, <u>Santos</u>, 243 F.3d at 684; <u>Raskin</u>, 125 F.3d at 63; <u>Nugen</u>, 2007 WL 1149979, at *20; <u>Golden</u>, 2007 WL 4299443, at *9-10. Hummel testified that her job was to increase prescriptions of AstraZeneca products for approved uses, and admitted that her job was to sell. <u>See</u> Defendant's SUF, ¶¶ 16, 23, 25-28. In any event, it is undisputed that if Hummel's job did not constitute "sales," it was promotion/marketing/advertising.

### 5. Many Factors Affect Whether a Doctor Writes a Prescription

**<u>PLAINTIFF'S FACT NO. 86:</u>**

86. Many factors impact the number of prescriptions filled in the PSS's territory, including: visits by PSSs, medical education events and conventions, patients requests, television commercials, newspaper advertisements, radio advertisements, and recommendations from other physicians. Ventura Dep. at 400:13-401:19; 406:8-408:10; Johnson Dep. at 46:16-47:17 (doctors would write prescriptions for products on formulary because it was cheaper for patients).

**<u>DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 86:</u>**

Immaterial, but undisputed.

**<u>PLAINTIFF'S FACT NO. 87:</u>**

87. Almost one third (32%) of Americans have talked to a doctor about a drug as a result of seeing a drug advertisement; in approximately half (44%) of the cases, the doctor wrote a prescription for the requested drug. USA Today Survey at 4, 19.

**<u>DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 87:</u>**

Immaterial. Furthermore, this "fact" is not based on admissible evidence; the USA Today survey referenced by Hummel has not been attached to any declaration or otherwise

submitted in any other manner in connection with Hummel's papers in opposition to AstraZeneca's summary judgment motion. Therefore, this survey is not properly part of the record in this case, and thus is inadmissible and lacks any evidentiary value. See Crown Heights Jewish Comm. Council, Inc. v. Fischer, 63 F. Supp. 2d 231, 234 (E.D.N.Y. 1999) (document cited in, but not attached to, affidavit lacked evidentiary value and was not properly considered under Rule 56 to defeat summary judgment). In any case, AstraZeneca hereby objects to use of this survey under Federal Rules of Evidence 702 and 104. Hummel improperly purports to submit expert testimony in the form of this unauthenticated survey, without any showing whatsoever that the survey is (1) based on sufficient facts or data, (2) the product of reliable principles and methods, or (3) that the survey authors applied the principles and methods reliably to the facts of the case. See Federal Rule of Evidence 702. Hummel bears the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. See Bourjaily v. United States, 483 U.S. 171 (1987)

## PLAINTIFF'S FACT NO. 88:

88.     AZ's intention is for doctors to prescribe their product when it is medically necessary. Atha Dep. at 25:10-19.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 88:

Immaterial, but undisputed.

## PLAINTIFF'S FACT NO. 89:

89.     The "first and foremost" reason why a doctor prescribes a particular product is if the product is safe and effective for the particular patient. Ventura Dep. at 438:2-7.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 89:

Immaterial, but undisputed.

**PLAINTIFF'S FACT NO. 90:**

90.    Some products do better in the market just because of the nature of the market, and not because of anything a PSS does on a sales call. Hummel Decl. at ¶ 36; DiChiara Decl, Ex. 18., AZ0025084.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 90:**

Immaterial.  In any event, the cited evidence does not support the fact asserted, and is not admissible.  Hummel purports to rely upon a hearsay statement made by a New Mexico PSS, Bob Stanley.  See Dichiara Dec., Ex. 18.  Defendant objects to Ex. 18 of the DiChiara Dec. as inadmissible hearsay pursuant to Federal Rule of Evidence 802.  Ex. 18 is unreliable for the additional reason that the transcriptionist specifically noted in that document that "it was extremely difficult to hear what [Mr. Stanley] was saying…" (DiChiara Dec., Ex. 18 at AZ0025072).  Moreover, the cited paragraph from Hummel's declaration does not relate to the asserted fact, and any such statement would be pure speculation on Hummel's part, not a "fact," and thus, insufficient to defeat summary judgment.  See Anderson, 477 U.S. at 248; see also, Bickerstaff, 196 F.3d at 452.

**PLAINTIFF'S FACT NO. 91:**

91.    Multiple PSSs will call on the same doctors to promote the same product. Ventura Dep. at 395:9-11; Hummel Decl. ¶ 35.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 91:**

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating summary judgment.  See Anderson, 477 U.S. at 248.  Ms. Ventura testified that individual PSSs have different weightings for each product, and AstraZeneca does not have PSSs "that have the same products with the same weightings calling on the same doctors" because "[t]hat would be duplicative."  DiChiara Dec., Ex. 3, Ventura Tr., 396:18-397:10.

### 6.    The Writing of a Prescription Does Not Necessarily Result In The Filling Of The Prescription

**PLAINTIFF'S FACT NO. 92:**

92.    Patients are free to choose to decide whether they will fill a prescription that a doctor has written for them.  Atha Dep. at 23:21-24:1.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 92:**

Immaterial, but undisputed.

**PLAINTIFF'S FACT NO. 93:**

93.    A significant percentage of consumers/patients do not fill their prescriptions because of cost. USA Today Survey at 3, 17.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 93:**

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating summary judgment.  See Anderson, 477 U.S. at 248.  Furthermore, this "fact" is not based on admissible evidence; the USA Today survey referenced by Hummel has not been attached to any declaration or otherwise submitted in any other manner in connection with Hummel's papers in opposition to AstraZeneca's summary judgment motion.  Therefore, this survey is not properly part of the record in this case, and thus is inadmissible and lacks any evidentiary value.  See Crown Heights Jewish Comm. Council, Inc., 63 F. Supp. 2d at 234 (document cited in, but not attached to, affidavit lacked evidentiary value and was not properly considered under Rule 56 to defeat summary judgment).  In any case, AstraZeneca hereby objects to use of this survey under Federal Rules of Evidence 702 and 104.  Hummel improperly purports to submit expert testimony in the form of this unauthenticated survey, without any showing whatsoever that the survey is (1) based on sufficient facts or data, (2) the product of reliable principles and methods, or (3) that the survey authors applied the principles and methods reliably to the facts of the case.

See Federal Rule of Evidence 702. Hummel bears the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. See Bourjaily, 483 U.S. 171 (1987).

### H. HUMMEL IS NOT EXEMPT UNDER THE ADMINISTRATIVE EXEMPTION

#### 1. Hummel did not Perform Administrative Duties

**PLAINTIFF'S FACT NO. 94:**

94.    All of decisions made by PSSs are solely for the promotion of Defendant's pharmaceutical products. Atha Dep. at 241:1-243:5; Johnson Dep. at 94:18-23 (all decisions made by PSSs in the field designed to help increase sales of product).

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 94:**

Hummel's cited evidence does not even relate to the fact asserted and does not support "Fact" 94. Moreover, the asserted fact is not truly a fact, but a conclusory legal opinion. Unsupported, conclusory allegations will not create an issue of fact. BellSouth Telecomms., 77 F.3d at 615; Bickerstaff, 196 F.3d at 452. Moreover, Hummel attempts to direct the Court's attention away from her own admissions about her specific job duties by pointing to testimony of AstraZeneca's corporate representative and a California PSS, which is not appropriate in the context of this motion. This motion is directed to Hummel individually, not PSSs generally. Hummel cannot ignore her own admissions. See Defendant's SUF, ¶¶ 12, 16, 23-28, 30-31, 43-56. In any event, promotion work is a "quintessential example" of work directly related to management policies or general business operations for purposes of the administrative exemption. 29 C.F.R. § 205(c)(5) (2004).

**PLAINTIFF'S FACT NO. 95:**

95.    PSSs present a "promotional messag[e]" during the sales call.  The promotional

message is the "brand" or "core" message. Ventura Dep. at 157:4-5; 157:21-24.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 95:**

Immaterial, but undisputed that "promotional messaging" is one element of a sales call.

**PLAINTIFF'S FACT NO. 96:**

96.    Defendant considers PSSs to be engaged in "promotional activities" when they try

to encourage a doctor to prescribe AZ products. Ventura Dep. at 156:17-157:24.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 96:**

Hummel mischaracterizes Ms. Ventura's testimony.  Ms. Ventura actually testified (over

objection, which the Court would have to rule on) that there are promotional elements to a sales

call:

> Q:   What promotional activities are the PSSs involved in?  What
> is deemed to be promotional activities?
>
> MR. JOHNSON:  Legal conclusion.
>
> BY MR. FIESCHKO: Q.    As you understand them.
>
> A.   Within the sales conversation, the sales call, there's elements
> of that call where the pharmaceutical sales specialist reviews
> promotional messaging, shares promotional messaging, with the
> health care providers.  There's elements in that call where the
> pharmaceutical sales specialist is reviewing clinical reprints and
> clinical data, and there's elements of that call where the
> pharmaceutical sales specialist is asking for a commitment from
> the health care prescriber to prescribe.  So during that
> conversation, those elements occur.

DiChiara Dec., Ex., 3, Ventura Tr., 156:17-157:16.

Moreover, Hummel attempts to direct the Court's attention away from her own

admissions about her specific job duties by pointing to testimony of AstraZeneca's corporate

representatives, which is not appropriate in the context of this motion.  This motion is directed to Hummel individually, not PSSs generally.  Hummel cannot ignore her own admissions.  <u>See</u> Defendant's SUF, ¶¶ 12, 16, 23-28, 30-31, 43-56.  In any event, promotion work is a "quintessential example" of work directly related to management policies or general business operations for purposes of the administrative exemption.  29 C.F.R. § 205(c)(5) (2004).

## PLAINTIFF'S FACT NO. 97:

97.     Hummel did not make, affect, interpret, or implement policy for AZ. Hummel Decl. at ¶ 37; Johnson Dep. at 94:24-95:4.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 97:

This is not a fact, but a conclusory legal opinion.  Unsupported, conclusory allegations will not create an issue of fact.  <u>BellSouth Telecomms.</u>, 77 F.3d at 615; <u>Bickerstaff</u>, 196 F.3d at 452.

## PLAINTIFF'S FACT NO. 98:

98.     Hummel was not involved in planning long term or short term business objectives for AZ. Id.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 98:

"Fact" 98 is flatly contradicted by Hummel's own deposition testimony and contemporaneous writings she authored during her employment with AstraZeneca.  <u>See</u>, <u>e.g.</u>, Defendant's SUF, ¶ 55 (Hummel "[p]repared detailed business plans of action designed to increase market share" and she "[m]anaged and built the Westchester territory"); ¶ 51 (Hummel "developed strategies to penetrate her significant accounts.  This is evidenced in her business action plans" and she "met and developed a business plan with all of her counterparts (CNS and Hospital) that incorporate short-term goals and long-term business objectives"); ¶¶ 52-54.

Hummel cannot create a genuine dispute of fact by contradicting her prior deposition testimony and contemporaneous writings with a self-serving conclusory declaration.  See, e.g., Santos, 243 F.3d at 684; Raskin, 125 F.3d at 63; Nugen, 2007 WL 1149979, at *20; Golden, 2007 WL 4299443, at *9-10.

### 2. Hummel Did Not Exercise Discretion or Independent Judgment Concerning Matters of Significance

#### a. AstraZeneca's Strict Control of PSSs

__PLAINTIFF'S FACT NO. 99:__

99.    AZ has set up a framework to instruct PSSs on what "they need to do, what they can do and what they can't do, and to keep them safe and ethical and AstraZeneca safe and ethical."  Ventura Dep. at 144:15-21.

__DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 99:__

Immaterial, and mischaracterizes Ms. Ventura's testimony.  See Anderson, 477 U.S. at 248.  Ms. Ventura actually testified that PSSs could use their own discretion and judgment within regulatory parameters:

> I think one of the things that we need to keep in mind is, we have 6,000 pharmaceutical sales representatives out on territory calling on doctors in a highly regulated environment.  And as such, we need to have parameters for which they know they need to work within and -- and the -- they need to be clear about the areas that they can use their own judgment and discretion.  So this is a framework to help pharmaceutical sales specialists to know what they need to do, what they can do and what they can't do, and to help keep them safe and ethical and AstraZeneca safe and ethical.

DiChiara Dec., Ex., 3, Ventura Tr., 144:2-21.

## PLAINTIFF'S FACT NO. 100:

100.    All PSSs are required to work at least 7.5 hours a day in the field calling on health care providers, exclusive of lunch and drive time to and from the first and last call.  Atha Dep. at 62:6-10; DiChiara Decl., Ex. 10,  AZB_C0001336-38.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 100:

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating summary judgment.  See Anderson, 477 U.S. at 248.  Also, mischaracterizes Ms. Atha's testimony.  Ms. Atha testified that the Work Expectations document contains guidelines, not policy, and there is flexibility in these guidelines.  DiChiara Dec., Ex. 2, Atha Tr., 270:23-272:23.

## PLAINTIFF'S FACT NO. 101:

101.    If a PSS cannot be in the field for two or more hours on a particular day, the PSS must notify their district manager prior to 9 a.m. Atha Dep. at 64:5-25; DiChiara Decl., Ex. 10, AZB_C0001336-38.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 101:

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating summary judgment.  See Anderson, 477 U.S. at 248.  Also, misstates the content of the document.  None of the evidence cited supports the assertion that a PSS must notify his/her district manager prior to 9:00 a.m. if he/she cannot be in the field for two or more hours on a particular day.  See DiChiara Dec., Ex. 10, AZB_C0001336-1338.  Also, mischaracterizes Ms. Atha's testimony.  Ms. Atha testified that the Work Expectations document contains guidelines, not policy, and there is flexibility in these guidelines.  DiChiara Dec., Ex. 2, Atha Tr., 270:23-272:23.

**PLAINTIFF'S FACT NO. 102:**

102.    PSSs are required to be in the field a set number of days per year. (In 2007, PSSs were required to be in the field 220 days per year.) DiChiara Decl., Ex. 10,  AZB_C0001336-38.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 102:**

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating summary judgment.  See Anderson, 477 U.S. at 248.  Mischaracterizes document.  Ms. Atha testified that the Work Expectations document contains guidelines, not policy, and there is flexibility in these guidelines.  DiChiara Dec., Ex. 2, Atha Tr., 270:23-272:23.  Also, Hummel provides no evidentiary support for the 220-day figure for 2007 and Hummel was not even an AstraZeneca employee in 2007, so this figure would not have applied to her in any event. Hummel attempts to deflect the Court's attention away from her own admissions about her specific job duties by pointing to a general corporate document, which is not appropriate in the context of this motion.  This motion is directed to Hummel individually, not PSSs generally.

**PLAINTIFF'S FACT NO. 103:**

103.    Defendant requires each PSS to check their voice mail a minimum of three times per day, and a PSS must respond to all voice messages within 48 hours. A PSS is required to synchronize every night (including Friday).  If a PSS is unable to synchronize for two consecutive days, the PSS must notify the DSM.  In addition, all email messages requiring a response must be submitted within 48 hours of receipt. DiChiara Decl., Ex. 10, AZB_C0001336-38.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 103:**

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating summary judgment.  See Anderson, 477 U.S. at 248.  Also, mischaracterizes the document.  Ms. Atha testified that the Work Expectations document contains guidelines, not policy, and there is

flexibility in these guidelines.  DiChiara Dec., Ex. 2, Atha Tr., 270:23-272:23.  Hummel attempts

to deflect the Court's attention away from <u>her</u> own admissions about <u>her</u> specific job duties by

pointing to a general corporate document, which is not appropriate in the context of this motion.

This motion is directed to Hummel individually, not PSSs generally.

## PLAINTIFF'S FACT NO. 104:

104.    All of the above-referenced expectations are *not suggestions*; rather, they are

*requirements* of a PSSs job. Failure "to meet these expectations can and may result in discipline,

up to an including termination." DiChiara Decl., Ex. 10, AZB_C0001336-38.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 104:

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating

summary judgment.  <u>See</u> <u>Anderson</u>, 477 U.S. at 248.  Also, mischaracterizes document.  Ms.

Atha testified that the Work Expectations document contains guidelines, not policy, and there is

flexibility in these guidelines.  DiChiara Dec., Ex. 2, Atha Tr., 270:23-272:23.  Hummel attempts

to deflect the Court's attention away from <u>her</u> own admissions about <u>her</u> specific job duties by

pointing to a general corporate document, which is not appropriate in the context of this motion.

This motion is directed to Hummel individually, not PSSs generally.

## PLAINTIFF'S FACT NO. 105:

105.    All PSSs are expected to comply with Defendant's policies, as well as FDA laws

and regulations.  Atha Dep. at 106:25-107:14.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 105:

Immaterial, but undisputed.  Also, Hummel's cited evidence does not even relate to the

fact asserted.

## PLAINTIFF'S FACT NO. 106:

106.    All promotional materials must be approved by AZ through an internal process referred to as eSTaR.  Atha Dep. at 145-21; DiChiara Decl., Ex. 16, AZB_C0002658; DiChiara Decl., Ex. 19.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 106:

Immaterial, but undisputed.  Also, the cited pages of Ms. Atha's transcript do not relate to the asserted fact, and Defendant also objects to Hummel's use of Ex. 19 of the DiChiara Dec., as misleading.  DiChiara Dec., Ex. 19 is not an example of an eStar promotional material, and Hummel has laid <u>no foundation</u> for this document including whether <u>she even used it or it applied to her.</u>

## PLAINTIFF'S FACT NO. 107:

107.    Defendant provides PSSs with promotional material to assist them in their presentations with doctors, but those materials marked for background use only cannot be shared with health care providers. Thus, even if a PSS, in exercising discretion and independent judgment, believes such material may be helpful to provide to a health care provider, Defendant prohibits a PSS from doing do.  DiChiara Decl., Ex. 5, AZB_C 0000820 ("these documents are for your information only"), AZB_C0000822-0000828 ("For Background Use Only.  Not To Be Shared With Customers" (bottom of each page)); Ex. 6, AZB_C0000944 (and every other page thereafter) ("For education use only by AstraZeneca personnel. Not to shared with customers."); Ex. 7, AZB_C0001002 ("DO NOT LEAVE BEHIND"); Ex. 8, AZB_C0001222-0001233 ("For Review Only" (on side of each page)); Ex. 9, AZB_C0001238-0001249 (same); Johnson Dep. at 40:6-24.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 107:**

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating summary judgment.  See Anderson, 477 U.S. at 248.  Also, the documents cited by Hummel in Fact 107 were produced in connection with a *different* lawsuit involving a different plaintiff in a different state, entitled Baum v. AstraZeneca, Case No. 3:07-cv-00090-KRG (W.D. Pa.), and what may have been provided to the named plaintiff in that lawsuit during the course of her employment with AstraZeneca has no bearing whatsoever on Hummel.  See Johnson Decl., ¶ 4 (no agreement between parties allowing Hummel to submit documents produced in Baum matter).  There is no foundation for this "fact" as it relates to Hummel.  Indeed, there is no evidence that Hummel even received Exs. 5-8 at any time during her employment with AstraZeneca.  Finally, Ex. 7 is an example of material that is to be shared in a sales call with doctors:  it is a core visual aid that is twenty-six pages long, illustrating the PSS's discretion in choosing what information to discuss.  A PSS simply cannot leave it behind after the call.

**PLAINTIFF'S FACT NO. 108:**

108.    PSSs cannot mark, highlight or underline promotional materials or reprints.  Atha Dep. at 144:2-10; DiChiara Decl., Ex. 16, AZB_C0002658; DiChiara Decl., Ex. 19; Hummel Decl. at ¶ 11.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 108:**

Immaterial, but undisputed.  These prohibitions extend only to altering the documents.  DiChiara Dec. Ex. 16 AZB-C0002659.  Also, the cited pages of Ms. Atha's transcript do not relate to the asserted fact, and Defendant also objects to Hummel's use of Ex. 19 of the DiChiara Dec., as misleading.  DiChiara Dec., Ex. 19 is not an example of an eStar promotional material,

and Hummel has laid no foundation for this document including whether she used it or it applied to her.

**PLAINTIFF'S FACT NO. 109:**

109.    PSSs may only go on three access meals with a particular doctor in a given year. Atha Dep. at 166:7-15; 168:2-7.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 109:**

Immaterial.  See Anderson, 477 U.S. at 248 (asserting that "factual disputes that are irrelevant or unnecessary will not be counted" in considering a motion for summary judgment). In any event, the fact asserted is not supported by the cited pages from Ms. Atha's transcript. This motion is directed to Hummel individually, not all PSSs generally.  Hummel cannot ignore her own admissions.  Hummel testified that she had two or three lunch sales calls per week, on average.  Appx. Vol. I., Tab 1, Hummel Tr., 134:18-135:3; 137:12-21.

**PLAINTIFF'S FACT NO. 110:**

110.    AZ required Plaintiff to have lunches, dinners, and other programs for doctors; she was given a budget for the programs that she was required to use entirely.  Hummel Decl. at ¶¶ 29, 30; Dempsey Dep. at 39:13-40:17.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 110:**

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating summary judgment.  See Anderson, 477 U.S. at 248.  Moreover, Hummel exercised discretion in deciding how to use her budget.  She testified that there was no company manual or guideline dictating how much to spend on any particular doctor, and it was up to Hummel and her manager to decide what expenditures were appropriate.  Appx. Vol. I., Tab 1, Hummel Tr., 297:2-21.

**PLAINTIFF'S FACT NO. 111:**

111.    AZ provided PSSs with a list of approved speakers from which a PSS could not deviate if the PSS wanted to hold a speaker program.  Dempsey Dep. at 43:9-44:1.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 111:**

Immaterial, and lacks foundation as to Hummel.  This motion is directed to Hummel, not PSSs in general, and Hummel cannot rely on the testimony of a former California PSS (Dempsey) as evidence of Hummel's own job duties.  See Fed. R. Evid. 602 (requiring personal knowledge of matters testified to; Hummel's failure to establish that the witnesses had personal knowledge of her own job duties precludes this evidence from being used to establish what her duties were).  In any event, Stephanie Dempsey's deposition testimony is of no help to Hummel, as the district court in the California action already has concluded that AstraZeneca's California PSSs are exempt outside salespeople.  See Brody v. AstraZeneca Pharmaceuticals LP, No. CV 06-6862 ABC (MANx) (C.D. Cal. June 11, 2008) (order granting summary judgment in favor of AstraZeneca on outside sales exemption).

**PLAINTIFF'S FACT NO. 112:**

112.    During the work day, PSSs are required to check their voice mail at least two times per day. DiChiara Decl. Ex. 10, AZB_C 0001336-38; Hummel Decl. at ¶ 33.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 112:**

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating summary judgment.  See Anderson, 477 U.S. at 248.

**PLAINTIFF'S FACT NO. 113:**

113.    During the work day, all PSSs must check their email once a day. DiChiara Decl. Ex. 10, AZB_C 0001336-38.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 113:**

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating

summary judgment.  See Anderson, 477 U.S. at 248.

**PLAINTIFF'S FACT NO. 114:**

114.    In addition, Defendant dictates when PSS must respond to emails and submit

expense reports.  DiChiara Decl. Ex. 10, AZB_C 0001336-38.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 114:**

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating

summary judgment.  See Anderson, 477 U.S. at 248.

**PLAINTIFF'S FACT NO. 115:**

115.    AZ provides PSSs -- including Hummel -- a list of doctors in their territory with

whom PSSs should interact.  Only under the guidance of their district manager, a PSS could

refine this list, *e.g.* removing the names of deceased doctors from the list. Atha Dep. at 111:4-20;

Ventura Dep. at 123:7-19; Hummel Decl. at ¶ 12; Capistrano Dep. at 288:7-289:22 (DM has

final say over changes to call list).

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 115:**

Immaterial, but undisputed that Hummel was provided a list of doctors in her territory to

call on, which Hummel and her pod of fellow PSS's could modify as appropriate, within

Company guidelines.  Also, many of the transcript pages cited by Hummel in Fact 115 do not

even relate to the asserted fact.

**PLAINTIFF'S FACT NO. 116:**

116.    AZ expected Hummel to target high-prescribing or high-purchasing doctors by

visiting them first and more frequently than others.  Hummel Decl. at ¶ 12; Johnson Dep. at

25:21-26:6 (required to call on higher ranked physicians more frequently than other doctors on

call list); Dempsey Dep. at 26:3-27:2 (PSSs dictated number of times PSS to call on a particular

physician and to visit higher ranked physicians more frequently).

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 116:**

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating

summary judgment. See Anderson, 477 U.S. at 248. Moreover, Hummel's self-serving

declaration is contradicted by her own contemporaneous writings, which reflect that Hummel

herself, among other things, "focused on doctors that have an immediate and dramatic impact on

the business" and "developed strategies to penetrate her significant accounts" (Defendant's SUF,

¶51). See Golden, 2007 WL 4299443, at *9-10 (disapproving of declaration which contradicted

documents evidencing plaintiff's exempt status and further noting that plaintiff's resume

confirmed that she performed exempt duties). Also, Hummel cannot rely on the testimony of

PSSs in other states to contradict her own deposition testimony and contemporaneous writings.

See, e.g., Prosser, 70 F.3d at 1008 (plaintiff cannot avoid summary judgment by proffering

testimony from another person that contradicts plaintiff's own testimony); Fed. R. Evid. 602

(requiring personal knowledge of matters testified to; Hummel's failure to establish that the

witnesses had personal knowledge of her own job duties precludes this evidence from being used

to establish what her duties were).

**PLAINTIFF'S FACT NO. 117:**

117.    Even if a PSS is obtaining their sales goals, they would have, at the very least, a

conversation with their manager if the PSS were not calling on their assigned physicians.

Dempsey Dep. at 31:16-32:7.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 117:**

Immaterial, vague, and lacks foundation as to Hummel.  See Anderson, 477 U.S. at 248. This motion is directed to Hummel individually, not PSSs generally, and Hummel cannot rely on the testimony of different PSSs in different states (including Dempsey in California) to establish what her own job duties were.  See Fed. R. Evid. 602 (requiring personal knowledge of matters testified to; Hummel's failure to establish that the witnesses had personal knowledge of her own job duties precludes this evidence from being used to establish what her duties were).  In any event, Stephanie Dempsey's deposition testimony is of no help to Hummel, as the district court in the California action already has concluded that AstraZeneca's California PSSs are exempt outside salespeople.  See Brody v. AstraZeneca Pharmaceuticals LP, No. CV 06-6862 ABC (MANx) (C.D. Cal. June 11, 2008) (order granting summary judgment in favor of AstraZeneca on outside sales exemption).

**PLAINTIFF'S FACT NO. 118:**

118.    PSSs may make changes to the target list of doctors, but must obtain the approval of their district manager. Atha Dep. at 114:3-20; Hummel Decl. at ¶ 12.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 118:**

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating summary judgment.  See Anderson, 477 U.S. at 248.  The cited pages from Ms. Atha's deposition do not even relate to the asserted fact.

**PLAINTIFF'S FACT NO. 119:**

119.    AZ also dictated that PSSs had to use a pen, rather then their finger, when using a visual aid on a sales call.  Johnson Dep. at 82:17-83:4; Dempsey Dep. at 59:1-5.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 119:**

Immaterial, and lacks foundation as to Hummel.  See Anderson, 477 U.S. at 248.  This motion is directed to Hummel individually, not PSSs generally, and Hummel cannot rely on the testimony of different PSSs in different states about their individual job duties to create a dispute of fact about her own specific job duties.  See, e.g., Prosser, 70 F.3d at 1008 (plaintiff cannot avoid summary judgment by proffering testimony from another person that contradicts plaintiff's own testimony).  In any event, the deposition testimony of former California PSSs Stephanie Dempsey and Susan Johnson is of no help to Hummel, as the district court in the California action already has concluded that AstraZeneca's California PSSs are exempt outside salespeople.  See Brody v. AstraZeneca Pharmaceuticals LP, No. CV 06-6862 ABC (MANx) (C.D. Cal. June 11, 2008) (order granting summary judgment in favor of AstraZeneca on outside sales exemption).

> **b.  AstraZeneca's Strict Control of Sales Calls**

**PLAINTIFF'S FACT NO. 120:**

120.  Hummel's visits with doctors were strictly controlled by AZ.  Hummel Decl. at ¶ 10.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 120:**

This legally conclusory statement is flatly contradicted by Hummel's prior testimony and contemporaneous writings.  See, e.g., Defendant's SUF, ¶ 51 (Hummel "continues to gain access in key accounts by establishing long term relationships, doing lunch/learns and thinking outside of the box, in turn setting herself apart…Holly follows her own judgment in the face of opposition…" and she "developed strategies to penetrate her significant accounts.  This is evidenced in her business action plans.  She proactively addresses obstacles that may impede account progress…"); ¶¶ 52-56.  Hummel's unsupported, conclusory allegations will not create

an issue of fact.  <u>BellSouth Telecomms.</u>, 77 F.3d at 615; <u>Bickerstaff</u>, 196 F.3d at 452; <u>see also</u>,

<u>Santos</u>, 243 F.3d at 684; <u>Raskin</u>, 125 F.3d at 63; <u>Nugen</u>, 2007 WL 1149979, at *20; <u>Golden</u>,

2007 WL 4299443, at *9-10.

**PLAINTIFF'S FACT NO. 121:**

121.    AZ told PSSs -- including Hummel -- the message she was to convey to the

doctors as well as the order in which the message should be presented.  Hummel Decl. at ¶¶ 10-

11.

**<u>DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 121:</u>**

This "Fact" is flatly contradicted by Hummel's prior deposition testimony and

contemporaneous writings.  <u>See</u>, <u>e.g.</u>, Defendant's SUF, ¶¶43-48.  Hummel cannot create a

triable issue by contradicting her own prior testimony and contemporaneous writings (<u>see</u>

<u>Santos</u>, 243 F.3d at 684; <u>Raskin</u>, 125 F.3d at 63; <u>Nugen</u>, 2007 WL 1149979, at *20; <u>Golden</u>,

2007 WL 4299443, at *9-10), and Hummel's unsupported, conclusory allegations will not create

an issue of fact.  <u>BellSouth Telecomms.</u>, 77 F.3d at 615; <u>Bickerstaff</u>, 196 F.3d at 452.

**PLAINTIFF'S FACT NO. 122:**

122.    AZ provides PSSs -- including Hummel --scripts of what they should say during

their sales calls.   Hummel Decl. at ¶ 11; DiChiara Decl., Ex. 5, AZB_C0000826 ("When

presenting information to customers, keep it simple: 'Doctor, let me direct your attention to this

chart…'"); AZB_C0000828 ("Clarify and acknowledge the feedback: 'Doctor, I am glad you

asked that questions. I do have some new information I can share with you in just a minute.  But

before I do that, let me remind you how NEXIUM compared to PRILOSEC.'"); DiChiara Decl.,

Ex. 19, AZ0006596-6597 ("Canned Detail-Prilosec Versus Prevacid.")

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 122:**

Immaterial, and lacks foundation as to Hummel. This "Fact" is contradicted by Hummel's prior testimony and contemporaneous writings showing that Hummel herself had latitude in how to conduct a sales call. See, e.g., Defendant's SUF, ¶¶ 43-46, 48. See also, Santos, 243 F.3d at 684; Raskin, 125 F.3d at 63; Nugen, 2007 WL 1149979, at *20; Golden, 2007 WL 4299443, at *9-10. Also, AstraZeneca objects to Exhibits 5 and 19 of the DiChiara Dec. on the ground that the documents cited by Hummel in Fact 122 were produced in connection with two *different* lawsuits in *different* states, entitled Baum v. AstraZeneca, Case No. 3:07-cv-00090-KRG (W.D. Pa.) and Brody v. AstraZeneca Pharmaceuticals LP, Case No. 06-6862-ABC (MANx) (C.D. Cal.), and what may have been provided to the named plaintiffs in those lawsuits during the course of their employment with AstraZeneca has no bearing whatsoever on Hummel herself. See Johnson Decl., ¶ 4 (no agreement between parties allowing Hummel to submit documents produced in Baum or Brody matters). There is no foundation for this "fact" as it relates to Hummel. Indeed, there is no evidence that Hummel even saw or received any of the cited documents at any time during her employment with AstraZeneca. Ex. 5 moreover relates to a single reprint—the Castell reprint and is not in itself a "complete" sales call; the language quoted is a "Suggested Response," not a script. Defendant also objects to Hummel's use of Ex. 19 of the DiChiara Dec., as misleading. DiChiara Dec., Ex. 19 is not an example of an eStar promotional material, and Hummel has laid no foundation for Ex. 19 or Ex. 5.

**PLAINTIFF'S FACT NO. 123:**

123.     Hummel was required to stay within the scripted company message and only present information provided to her by AZ on sales calls. Hummel Decl. at ¶¶ 10-11.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 123:

Hummel's Fact 123 is contradicted by her own prior testimony and contemporaneous writings. See, e.g., Defendant's SUF, ¶¶ 43-46, 48. Hummel cannot create a triable issue by contradicting her prior deposition testimony and contemporaneous writings through a self-serving declaration. See, e.g., Santos, 243 F.3d at 684; Raskin, 125 F.3d at 63; Nugen, 2007 WL 1149979, at *20; Golden, 2007 WL 4299443, at *9-10.

## PLAINTIFF'S FACT NO. 124:

124.    PSSs are required to convey the core message and use a visual aid on each sales call. Dempsey Dep. at 58:6-12 (PSSs required to use convey core message and use visual aid).

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 124:

Immaterial, and lacks foundation as to Hummel. This motion is directed to Hummel individually, not PSSs generally, and the deposition testimony of a former California PSS (Dempsey) is not admissible to establish what Hummel's job duties were. See Fed. R. Evid. 602 (requiring personal knowledge of matters testified to; Hummel's failure to establish that the witnesses had personal knowledge of her own job duties precludes this evidence from being used to establish what her duties were). In any event, testimony of California PSSs is of no help to Hummel, as the district court in the California action already has concluded that AstraZeneca's California PSSs are exempt outside salespeople. See Brody v. AstraZeneca Pharmaceuticals LP, No. CV 06-6862 ABC (MANx) (C.D. Cal. June 11, 2008) (order granting summary judgment in favor of AstraZeneca on outside sales exemption). Furthermore, the core message constituted a very small part of the sales call – core messages usually were only one sentence. Appx. Vol. I, Tab 1, Hummel Tr., 178:17-22. And, Hummel had discretion to decide how to "bridge into the

marketing piece" during the sales call and also decided which portions of the core visual aid to discuss with physicians during sales calls.  Id., 252:2-25.

**PLAINTIFF'S FACT NO. 125:**

125.    Each and every piece of printed or written materials (e.g. clinical studies) PSSs - including Hummel - utilized or provided to doctors was pre-approved and supplied by AZ. Hummel Decl. at ¶ 10; Ventura Dep. at 103:10-105:2.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 125:**

Immaterial, but undisputed.

**PLAINTIFF'S FACT NO. 126:**

126.    Hummel was required to stay within FDA guidelines on sales calls. Hummel Decl. at ¶ 10.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 126:**

Immaterial, but undisputed that Hummel was required to comply with applicable laws and regulations during sales calls.

**PLAINTIFF'S FACT NO. 127:**

127.    AZ's policies limit Plaintiff and other PSS's to using "access tools" with healthcare providers that have prescribing authority.  It is not appropriate for a PSS to use an access tool to build goodwill or rapport. DiChiara Decl., Ex. 16, AZB_C0002636-38.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 127:**

Immaterial, but undisputed.

**PLAINTIFF'S FACT NO. 128:**

128.    Defendant strictly controls what PSSs can relay to a doctor, because if a PSS violates FDA guidelines, Defendant could be subject to severe fines.  DiChiara Decl., Ex. 19 AZ0025072-25081.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 128:**

Hummel's Fact 128 is a misleading overstatement.  It is true that PSSs must stay within FDA and Company guidelines during their product discussions with doctors, but that does not mean that AstraZeneca "strictly controls" what PSSs can relay to a doctor, as Hummel's own prior testimony and contemporaneous writings reflect.  See, e.g., Defendant's SUF, ¶¶ 43-46, 48. Moreover, the cited evidence does not support the fact asserted and is not admissible.  Hummel purports to rely upon a hearsay document summarizing a telephone interview with a New Mexico PSS, Bob Stanley.  See DiChiara Dec., Ex. 18 (AZ0025072-25088) (mistakenly cited by Hummel in Fact 128 as Ex. 19).  Defendant objects to Ex. 18 of the DiChiara Dec. as inadmissible hearsay pursuant to Federal Rule of Evidence 802.  Ex. 18 is unreliable for the additional reasons that (1) the transcriptionist specifically noted in that document that "it was extremely difficult to hear what [Mr. Stanley] was saying…" (DiChiara Dec., Ex. 18 at AZ0025072) and (2) Hummel cannot rely on the testimony of another PSS to prove what Hummel's own job duties were.  See Fed. R. Evid. 602.

**PLAINTIFF'S FACT NO. 129:**

129.    Hummel and all PSSs are required to comply with FDA guidelines when addressing doctors, as they cannot discuss any off-label use for Defendant's products.  Ex. 18, AZ0025076-25077.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 129:**

Immaterial, but undisputed.

**PLAINTIFF'S FACT NO. 130:**

130.    Defendant mandates specific standards and tasks that all PSSs must perform during a "sales" call.  AZB_C0038282-AZB_C0038298; Atha Dep. at 140:17-141:3; DiChiara Decl., Ex. 18, AZ0025081.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 130:**

Hummel's Fact 130 is a misleading and vague conclusory overstatement, and the cited evidence does not support Fact 130.  Hummel's unsupported, conclusory allegations will not create an issue of fact.  BellSouth Telecomms., 77 F.3d at 615; Bickerstaff, 196 F.3d at 452. And, Hummel purports to rely upon a hearsay document summarizing a telephone interview with a New Mexico PSS, Bob Stanley.  See DiChiara Dec., Ex. 18 (AZ0025072-25088).  Defendant objects to Ex. 18 of the DiChiara Dec. as inadmissible hearsay pursuant to Federal Rule of Evidence 802.  Ex. 18 is unreliable for the additional reasons that (1) the transcriptionist specifically noted in that document that "it was extremely difficult to hear what [Mr. Stanley] was saying…" (DiChiara Dec., Ex. 18 at AZ0025072) and (2) Hummel cannot rely on the testimony of another PSS to prove what Hummel's own job duties were.  See Fed. R. Evid. 602 (requiring personal knowledge of matters testified to; Hummel's failure to establish that the witnesses had personal knowledge of her own job duties precludes this evidence from being used to establish what her duties were).

**PLAINTIFF'S FACT NO. 131:**

131.    When calling on health care providers, all PSSs are required to follow AZ's standards for interacting with healthcare professionals.  Atha Dep. at 134:21-135:7, 137:13-138:3.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 131:**

Immaterial, but undisputed.  These generalized requirements discussed in the testimony do not remove discretion.

**PLAINTIFF'S FACT NO. 132:**

132.    All PSSs are required to present information about Defendant's products in accordance with the FDA prescribing information, *i.e.* the product insert.  Atha Dep. at 138:23-140:15.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 132:**

Immaterial, but undisputed.  These generalized requirements do not remove discretion given the broad scope of a product insert.  The cited pages from Ms. Atha's transcript do not relate to the fact asserted.

**PLAINTIFF'S FACT NO. 133:**

133.    PSSs are required to offer the doctor a copy of the product insert.  Atha Dep. at 140:11-19.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 133:**

Immaterial, but undisputed.  These generalized requirements do not remove discretion. The cited pages from Ms. Atha's transcript do not relate to the fact asserted.

**PLAINTIFF'S FACT NO. 134:**

134.    PSSs are not allowed to minimize the risks of any of Defendant's products, nor are they allowed to discuss off-label issues with health care providers.  Atha Dep. at 139:19-23; 141:9-13.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 134:**

Immaterial, but undisputed.  These generalized requirements do not remove discretion.

The cited pages from Ms. Atha's transcript do not relate to the fact asserted.

**PLAINTIFF'S FACT NO. 135:**

135.    If a doctor requests off-label information, the PSS is required to have a

Professional Information Request sent to AZ.  Atha Dep. at 141:14-19.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 135:**

Immaterial, but undisputed.  Moreover, it was left to Hummel in the first instance to

determine whether the information requested was indeed off-label.  Appx. Vol. I, Tab 1,

Hummel Tr., 260:22-261:25.

**PLAINTIFF'S FACT NO. 136:**

136.    PSSs are required to give an objective and balanced presentation of the benefits

and risks of a product.  Atha Dep. at 142:10-16.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 136:**

Immaterial, but undisputed.  Moreover, Hummel had to exercise discretion and

independent judgment in making an objective and balanced presentation.  See, e.g., Appx., Tab

15, ISS Presentation 2004, at AZB_C0003615 (ISS model required the Sales Specialist to use a

"complex thinking process" in having a dialogue with a physician); id., Tab 1, 257:24-258:11

(admitting that during a sales call, Hummel would uncover the physician's need and work that

need into the product discussion so that the doctor would write more prescriptions); Tab 12

(Hummel describing herself as "a results-driven producer adept at building and retaining client

relationships [and] conducting in-depth sales presentations…"); see also, Defendant's SUF, ¶ 48.

Also, the cited pages from Ms. Atha's transcript do not relate to the fact asserted.

**PLAINTIFF'S FACT NO. 137:**

137.    PSSs are required to point out the limits of a product's indications.  Atha Dep. at 143:19-24.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 137:**

Immaterial, but undisputed.  This is a small part of the sales call and also involved Hummel's exercise of judgment and discretion.   See, e.g., Appx., Tab 15, ISS Presentation 2004, at AZB_C0003615 (ISS model required the Sales Specialist to use a "complex thinking process" in having a dialogue with a physician); id., Tab 1, 257:24-258:11 (admitting that during a sales call, Hummel would uncover the physician's need and work that need into the product discussion so that the doctor would write more prescriptions); Tab 12 (Hummel describing herself as "a results-driven producer adept at building and retaining client relationships [and] conducting in-depth sales presentations…"); see also, Defendant's SUF, ¶ 48.  Also, the cited pages from Ms. Atha's transcript do not relate to the fact asserted.

**PLAINTIFF'S FACT NO. 138:**

138.    PSSs cannot present statements out of context from the full prescribing information or approved promotional materials.  Atha Dep. at 144:12-18.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 138:**

Immaterial, but undisputed.  This generalized requirement does not remove discretion.  Also, the cited pages from Ms. Atha's transcript do not relate to the fact asserted.

**PLAINTIFF'S FACT NO. 139:**

139.    PSS's are not allowed to present a side effect as a clinical benefit.  Atha Dep. at 143:13-17.

**<u>DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 139:</u>**

Immaterial, but undisputed.  The cited pages from Ms. Atha's transcript do not relate to the fact asserted.

**<u>PLAINTIFF'S FACT NO. 140:</u>**

140.    PSS's cannot highlight or mark up promotional pieces. DiChiara Decl., Ex. 11, AZB_C0001538-44.

**<u>DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 140:</u>**

Immaterial, but undisputed.

**<u>PLAINTIFF'S FACT NO. 141:</u>**

141.    PSS's cannot use homemade materials on sales calls. DiChiara Decl., Ex. 11, AZB_C0001538-44.

**<u>DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 141:</u>**

Immaterial, but undisputed.

**<u>PLAINTIFF'S FACT NO. 142:</u>**

142.    A PSS cannot compare Defendant's products with those of a competitor unless the PSS received direction from the company. DiChiara Decl., Ex. 11, AZB_C0001538-44.

**<u>DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 142:</u>**

Immaterial, and mischaracterizes document.  The document makes clear that comparisons may happen after there are two head-to-head clinical trials; and that PSSs can always address healthcare providers' questions about competitors.  <u>See</u> AZB_C0001541.  Moreover, Ms. Ventura explained that this requirement simply means that:

> AZ employees may not initiate any discussion involving
> comparisons with competitive products unless there is evidence
> that there is clinical evidence to compare those products.
> And so you need a clinical study to compare head-to-head

products; and so if there is no clinical study, you can't have that conversation. If there is a clinical study, but it hasn't been approved by AstraZeneca, it hasn't been approved because there's probably off-label usage of the product in that clinical study, something that would not be -- that could be harmful, potentially harmful for patients.   So a representative cannot just use whatever studies that they want. They need to use approved clinical studies, and those clinical studies meet the indications approved by the FDA.

DiChiara Dec., Ex. 3, Ventura Tr., 222:14-223:12.

## PLAINTIFF'S FACT NO. 143:

143.    AZ also strictly controls the ability of a PSS to send a facsimile to health care professional and consumers. DiChiara Decl., Ex. 12, AZB_C0004230.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 143:

Immaterial, but undisputed.

## PLAINTIFF'S FACT NO. 144:

144.    After a sales call is completed, all PSSs are required to immediately enter call notes into their computer.  DiChiara Decl., Ex. 10, AZB_C0001336-38.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 144:

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating summary judgment.  See Anderson, 477 U.S. at 248.  And, Ms. Atha testified that the Work Expectations document contains guidelines, not policy, and there is flexibility.  See DiChiara Dec., Ex. 2, Atha Tr., 270:23-272:23.

## PLAINTIFF'S FACT NO. 145:

145.    A PSS may not engage in promotional discussions with patients. DiChiara Decl., Ex. 16, AZB_C0002650.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 145:

Immaterial, but undisputed.

**PLAINTIFF'S FACT NO. 146:**

146.    If a PSS fails to follow the job requirements, the PSS can be disciplined or discharged.  In fact, PSSs are closely monitored by their District Managers who regulate the activities of a PSS through telephone calls, email communications, call logs, and weekly reports. DiChiara Decl., Ex. 10, AZB_C0001336-38; Hummel Decl. at ¶ 37; Johnson Dep. at 65:25-67:4; Dempsey Dep. at 52:6-54:13, 56:17-58:5 (manager checked call notes of her PSSs on regular basis); Capistrano Dep. at 84:5-16 (95% of District Manager's job is related to supervision of PSSs), 293:13-294:1 (using call entry screen to verify activities of PSS).

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 146:**

Fact 146 is a vague, conclusory overstatement, and not supported by the cited evidence. Fact 146 is flatly contradicted by Hummel's prior deposition testimony on being "closely monitored."  See Defendant's SUF, ¶ 57 (Hummel's manager accompanied her on sales calls only once every 3-4 weeks), ¶ 58 (most days, Hummel performed her work without management personnel observing her).  Hummel cannot contradict her prior deposition testimony with a declaration.  See, e.g., Santos, 243 F.3d at 684; Raskin, 125 F.3d at 63; Nugen, 2007 WL 1149979, at *20; Golden, 2007 WL 4299443, at *9-10.  And, this motion is directed to Hummel individually, not PSSs generally, and the deposition testimony of former California PSSs Dempsey and Capistrano is not admissible to establish what Hummel's job duties were or to contradict Hummel's prior testimony.  See, e.g., Prosser, 70 F.3d at 1008 (plaintiff cannot avoid summary judgment by proffering testimony from another person that contradicts plaintiff's own testimony).  In any event, testimony of California PSSs is of no help to Hummel, as the district court in the California action already has concluded that AstraZeneca's California PSSs are exempt outside salespeople.  See Brody v. AstraZeneca Pharmaceuticals LP, No. CV 06-6862

ABC (MANx) (C.D. Cal. June 11, 2008) (order granting summary judgment in favor of AstraZeneca on outside sales exemption).

**PLAINTIFF'S FACT NO. 147:**

147.    Hummel's average actual time with a doctor would be less than a minute, although she would oftentimes have to wait a long period of time before seeing a doctor. Hummel Decl. at ¶ 13.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 147:**

Fact 147 is contradicted by Hummel's prior testimony.  She testified that her average face time with doctors was five to ten minutes during lunch access sales calls.  Appx. Vol. I, Tab 1, Hummel Tr., 135:19-136:4.  Hummel typically had lunch access sales calls more than three times per week when she was a primary care PSS and two or three times per week when she was a long-term care and specialty care PSS.  Id., 134:18-135:3, 137:12-21.  Hummel cannot contradict her prior testimony with a self-serving declaration.  See, e.g., Santos, 243 F.3d at 684; Raskin, 125 F.3d at 63; Nugen, 2007 WL 1149979, at *20; Golden, 2007 WL 4299443, at *9-10.

**PLAINTIFF'S FACT NO. 148:**

148.    District Manager would sometimes go on ride-alongs with Hummel to judge her sales calls. Hummel Decl. at ¶ 28.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 148:**

Undisputed.

**PLAINTIFF'S FACT NO. 149:**

149.    After going on a call with a doctor, PSSs are required to input information about the call into a computer.  Atha Dep. at 83:20-84:2; 90:3-21; Ventura Dep. at 114:2-5; 118:9-119:21 Hummel Decl. at  ¶ 126.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 149:**

Immaterial, but undisputed.

**PLAINTIFF'S FACT NO. 150:**

150.    The computer entry indicates the PSS who made the entry, the doctor seen by the PSS, call notes from the call, and the time and date of the entry. Atha Dep. at 90:22-91:13; Ventura Dep. at 122:1-16.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 150:**

Immaterial, but undisputed.

**PLAINTIFF'S FACT NO. 151:**

151.    PSSs were required to visit a set number of doctors per day.  Hummel Decl. ¶ 15.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 151:**

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating summary judgment.  See Anderson, 477 U.S. at 248.

**PLAINTIFF'S FACT NO. 152:**

152.    PSSs were required to follow the ISS selling model on each and every sales call, even if they thought the ISS model was ineffective and they were reaching their sales target numbers.  Johnson Dep. at 89:23-90:20; Dempsey Dep. at 49:9-50:19; Capistrano Dep. at 166:8-167:2.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 152:**

Immaterial, but undisputed that Hummel received training on the ISS selling model and used the model during her interactions with physicians.  However, the cited evidence is not admissible in any event, as this motion is directed to Hummel individually, not PSSs generally; therefore the deposition testimony of Johnson, Dempsey and Capistrano (different PSSs from a

different state, California) is neither relevant nor admissible to establish what Hummel's own job duties were. See Fed. R. Evid. 602 (requiring personal knowledge of matters testified to; Hummel's failure to establish that the witnesses had personal knowledge of her own job duties precludes this evidence from being used to establish what her duties were).

**c.     A PSS's Job Involved Mainly Basic Common Sense**

**PLAINTIFF'S FACT NO. 153:**

153.     PSSs did something called "Routing," which is just a fancy term for scheduling doctor visits so that PSSs do not step on each other's toes by calling on the same doctor at the same time. Johnson Dep. at 24:7-25:9, 44:13-45:2 (routing also dictated by when doctors would see pharmaceutical reps); Dempsey Dep. at 35:13-15, 36:8-18.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 153:**

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating summary judgment. See Anderson, 477 U.S. at 248. However, the cited evidence is not admissible in any event, as this motion is directed to Hummel individually, not PSSs generally; therefore the deposition testimony of Johnson and Dempsey (different PSSs from a different state) is neither relevant nor admissible to establish what Hummel's own job duties were. See Fed. R. Evid. 602 (requiring personal knowledge of matters testified to; Hummel's failure to establish that the witnesses had personal knowledge of her own job duties precludes this evidence from being used to establish what her duties were). Testimony of California PSSs is of no help to Hummel anyway, as the district court in the California action already has concluded that AstraZeneca's California PSSs are exempt outside salespeople. See Brody v. AstraZeneca Pharmaceuticals LP, No. CV 06-6862 ABC (MANx) (C.D. Cal. June 11, 2008) (order granting summary judgment in favor of AstraZeneca on outside sales exemption).

## PLAINTIFF'S FACT NO. 154:

154.    The patient demographics of a doctor's office also dictated what a PSS would convey on a health care provider.  For example, a PSS would not promote Seroquel, a medication that treats bipolar disorder and schizophrenia, to a physician that did not have patients that suffered from those disorders.  Johnson Dep. at 45:12-46:9, 56:23-57:7 (common sense to provide Nexium samples to gastroenterologists more frequently than primary care physicians because they would see more patient that needed Nexium).

## DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 154:

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating summary judgment.  See Anderson, 477 U.S. at 248.  However, the cited evidence is not admissible in any event, as this motion is directed to Hummel individually, not PSSs generally; therefore the deposition testimony of Johnson (different PSS from a different state) is neither relevant nor admissible to establish what Hummel's own job duties were.  See Fed. R. Evid. 602 (requiring personal knowledge of matters testified to; Hummel's failure to establish that the witnesses had personal knowledge of her own job duties precludes this evidence from being used to establish what her duties were).  Testimony of California PSSs is of no help to Hummel anyway, as the district court in the California action already has concluded that AstraZeneca's California PSSs are exempt outside salespeople.  See Brody v. AstraZeneca Pharmaceuticals LP, No. CV 06-6862 ABC (MANx) (C.D. Cal. June 11, 2008) (order granting summary judgment in favor of AstraZeneca on outside sales exemption).

## PLAINTIFF'S FACT NO. 155:

155.    Even if there were different scripted core messages that a PSS could deliver on a sales call, in many cases the message delivered was determined by the practices of the physician.

Capistrano Dep. at 169:6-171:22 (if doctor already using proper dosage, no need to deliver dosing message).

### DEFENDANT'S RESPONSE TO PLAINTIFF'S FACT NO. 155:

Immaterial and thus, insufficient to create an issue of fact for purposes of defeating summary judgment. See Anderson, 477 U.S. at 248. Moreover, it was for Hummel in the first instance to interpret and determine the "practices" and needs of the particular physician, and tailor her sales calls accordingly. See, e.g., Appx., Tab 1, Hummel Tr., 257:24-258:11 (admitting that during a sales call, Hummel would uncover the physician's need and work that need into the product discussion so that the doctor would write more prescriptions); id., 252:6-17 (during her pre-call planning, Hummel would prepare an opening message and select the marketing materials she wanted to use in her sales call). Hummel's cited evidence is not admissible in any event, as this motion is directed to Hummel individually, not PSSs generally; therefore the deposition testimony of Capistrano (a different PSS from a different state) is neither relevant nor admissible to establish what Hummel's own job duties were. See Fed. R. Evid. 602 (requiring personal knowledge of matters testified to; Hummel's failure to establish that the witnesses had personal knowledge of her own job duties precludes this evidence from being used to establish what her duties were). Testimony of California PSSs is of no help to Hummel anyway, as the district court in the California action already has concluded that AstraZeneca's California PSSs are exempt outside salespeople. See Brody v. AstraZeneca Pharmaceuticals LP, No. CV 06-6862 ABC (MANx) (C.D. Cal. June 11, 2008) (order granting summary judgment in favor of AstraZeneca on outside sales exemption).

Dated:  August 13, 2008

Jones Day


By:  /s/ Matthew W. Lampe
     Matthew W. Lampe (*pro hac vice*)
     Shari M. Goldsmith  (SG 0909)
     JONES DAY
     222 East 41st Street
     New York, NY  10017
     Telephone: (212) 326-3939
     Facsimile: (212) 755-7306
     mwlampe@jonesday.com
     smgoldsmith@jonesday.com

     Harry I. Johnson, III (*pro hac vice*)
     JONES DAY
     555 S. Flower Street
     Fiftieth Floor
     Los Angeles, CA  90071
     Telephone: (213) 489-3939
     Facsimile: (213) 243-2539
     harryjohnson@jonesday.com

     Theresia Moser (*pro hac vice*)
     JONES DAY
     1420 Peachtree Street, N.E.
     Suite 800
     Atlanta, GA 30309
     Telephone: (404) 521-3939
     Facsimile:  (404) 581-8330
     tmoser@jonesday.com

     *Attorneys for Defendant*
     *AstraZeneca LP*

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2008, the foregoing Defendant AstraZeneca LP's

Response to Plaintiff's Statement of Disputed Material Facts was filed with the Clerk of the

Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern

District's Local Rules, and/or the Southern District's Rules on Electronic Service upon the

following parties:

Charles Joseph
Michael Palmer
JOSEPH & HERZFELD
757 Third Avenue, Suite 2500
New York, New York 10017
Tel:  212-688-5640
Fax:  212-688-2548

James A. Jones
GILLESPIE, ROZEN, WATSKY & JONES, P.C.
3402 Oak Grove Avenue
Suite 200
Dallas, TX  75204
Tel:  214-720-2009
Fax:  214-720-2291

/s/ Shari M. Goldsmith
Shari M. Goldsmith (SG-0909)
Jones Day
222 East 41st Street
New York, NY 10017-6702
smgoldsmith@jonesday.com
(212) 326-3939