UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**HOLLY MARIE HUMMEL, on behalf of
herself and others similarly situated,**

**Plaintiff,**

-against-

**ASTRAZENECA LP,**

**Defendant.**

No.:  07-CV-5473(VM)

### ASTRAZENECA LP'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant AstraZeneca LP ("AstraZeneca"), pursuant to Local Civil Rule 56.1, submits

its Reply to Plaintiff's Response to Defendant's Statement of Undisputed Material Facts.

### ASTRAZENECA'S GENERAL REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff Holly Hummel's ("Hummel") responses to AstraZeneca's Statement of

Undisputed Material Facts fall into four categories: (i) outright admission of 16 of AstraZeneca's

65 undisputed material facts; (ii) admissions qualified by irrelevant or immaterial assertions;

(iii) admissions resulting from failure to specifically deny the fact asserted; and (iv) denials

based upon unsupported, unsubstantiated conclusions, irrelevant or immaterial assertions or

inadmissible hearsay.  Specifically, Hummel cites no admissible evidence to contradict any of

AstraZeneca's undisputed material facts.  Instead, Hummel provides legal argument and

conclusory and overly broad unsupported statements, all of which is insufficient to defeat

summary judgment, and relies on self-serving declarations and irrelevant documentation and

deposition testimony, none of which is even properly before this Court.[1]

_____

[1] AstraZeneca's specific objections to this purported evidence is contained in its Objections to the
Declaration of Holly Hummel and Objections to the Declaration of Michael DiChiara, filed concurrently herewith.

That Hummel has done so is not entirely surprising; a mere four days prior to her deadline for responding to AstraZeneca's Motion for Summary Judgment (after having a period of 39 days to draft her response) – Hummel requested an enlargement of the page limit from 25 pages to 40 pages.  Having appropriately found that "the case is no more complex" for Plaintiff than for AstraZeneca, whose Motion was within the Court's 25-page limit, the Court denied this request, advising Plaintiff that "[b]y appropriate use of the Rule 56.1 Statement and affidavits from knowledgeable person, the parties can minimize unnecessary repetition of factual background in these legal briefs."  July 10, 2008 Endorsed-Letter Order, at p. 2.  Hummel's "Response to Defendant's Statement of Undisputed Material Facts" demonstrates that Hummel has not heeded the Court's admonishment, nor its Individual Rules and Procedures, but rather has used this document as a manner of avoiding the Court's page limit by presenting "argumentation of legal issues [and] extensive recitation of deposition testimony [and] repetition of conclusory pleadings."  Individual Rules and Practices, Rule II.C.

Because Hummel has failed to properly respond to AstraZeneca's Rule 56.1 Statement, and has not put forth any admissible evidence, all of the material facts remain undisputed, and the Court should deem all of AstraZeneca's Undisputed Facts admitted.  See Union Carbide Corp., 179 F.R.D. 425, 428 & nn.4-5 (S.D.N.Y. 1998) (rejecting plaintiff's Rule 56.1 statement which constituted a "compendium of the arguments plaintiff plan[ned] to make at trial, rather than a short and concise statement of *facts*") (emphasis in original).

**Legal Argument or Opinion is Not Admissible to Defeat Summary Judgment**

A party cannot defeat summary judgment by characterizing legal argument or opinion as "additional facts."  Rodriguez v. Schneider, 1999 WL 459813, at *1 n.3 (S.D.N.Y. June 29, 1999) ("Rule 56.1 statements are not argument," "should contain factual assertions, with citation

to the record," "should not contain conclusions, and they should be neither the source nor the result of 'cut-and-paste' efforts with the memorandum of law."); see also, Rowe Entertainment, Inc. v. William Morris Agency, Inc., 2005 WL 22833, at *1 n.1 (S.D.N.Y. Jan. 5, 2005) (striking "argumentative and conclusory" Rule 56.1 statements that were "often not supported by citations to evidence"); Union Carbide Corp., 179 F.R.D. at 428.

Hummel's debate about the meaning of the words "sold" or "sell" or the significance of the phrase "exercise of independent judgment" as they relate to her job duties is merely legal argument masquerading as fact. Similarly, Hummel's tactic of asserting trivial objections to the phrasing of undisputed statements of fact, and nit-picking the legal significance of undisputed facts is not only improper use of a 56.1 statement, but also insufficient to defeat summary judgment.

**Speculation and Conclusory Allegations Cannot Be Used To Defeat Summary Judgment**

A party opposing summary judgment must put forth specific evidence that is not based on speculation; otherwise, the "Court must grant summary judgment for defendant where plaintiff's evidence is 'merely colorable, conclusory, speculative, or not significantly probative.'" Ford v. Consolidated Edison Co., 2006 WL 538116, at *9 (S.D.N.Y. Mar. 3, 2006) (Plaintiff's disputed facts "must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions.") (citations omitted). Similarly, "a plaintiff must provide more than conclusory allegations to defeat a motion for summary judgment." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997); see also, Khan v. Costco Wholesale, Inc., 2001 WL 1602168, at *5 (E.D.N.Y. Dec. 13, 2001) (non-moving party must present "significant probative supporting evidence" of a factual dispute; "[m]ere conclusory allegations will not suffice" ); Griffin v. Ambika Corp., 103 F. Supp. 2d 297, 308-11 (S.D.N.Y. 2000) (granting summary judgment where plaintiff's statements were "replete

with conclusions" and required substantial guesswork); <u>BellSouth Telecomms., Inc. v. W.R.</u>

<u>Grace & Co.-Conn.</u>, 77 F.3d 603, 615 (2d Cir. 1996) (unsupported, conclusory allegations will

not create an issue of fact); <u>Bickerstaff v. Vassar College</u>, 196 F.3d 435, 452 (2d Cir. 1999)

("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to

defeat a properly supported motion for summary judgment.").

Hummel's conclusory statements, as well as her speculation regarding other PSSs

generally – which is also inadmissible hearsay, <u>see</u> <u>supra</u>, and in any event, irrelevant since

AstraZeneca's motion is directed at Hummel individually – cannot be used to create an issue of

fact in order to avoid summary judgment.

**<u>Affidavits Contradicting Record Testimony Cannot Be Used To Create Factual Issues</u>**

"A party may not create an issue of fact by submitting an affidavit in opposition to a

summary judgment motion that, by omission or addition, contradicts the affiant's previous

deposition testimony." <u>Nugen v. St. Luke's/Roosevelt Hosp. Center</u>, 2007 WL 1149979, at *20

(S.D.N.Y. Apr. 18, 2007). "Courts in this Circuit have rejected such attempts to rely on

declarations that contradict the witness's prior deposition testimony and have granted summary

judgment even where the purported new evidence would otherwise create a triable issue of fact."

<u>Golden v. Merrill Lynch & Co., Inc.</u>, 2007 WL 4299443, at *9 (S.D.N.Y. Dec. 6, 2007)

(collecting cases); <u>see</u>, <u>e.g.</u>, <u>Santos v. Murdock</u>, 243 F.3d 681, 684 (2d Cir. 2001) (holding that

affidavit contradicting prior deposition testimony could not be used to oppose a motion for

summary judgment); <u>Raskin v. Wyatt Co.</u>, 125 F.3d 55, 63 (2d Cir. 1997) ("a party may not

create an issue of fact by submitting an affidavit in opposition to a summary judgment motion

that, by omission or addition, contradicts the affiant's previous deposition testimony."). In other

words, it is well-recognized that "factual issues created solely by an affidavit crafted to oppose a

summary judgment motion are not 'genuine' issues for trial." <u>Hayes v. New York City Dep't of</u>

Corrections, 84 F.3d 614, 619 (2d Cir. 1996) (quoting Perma Research & Development Co. v.

Singer Co., 410 F.2 d 572, 578 (2d Cir. 1969)).

        Hummel's attempt to contradict her own testimony and contemporaneous writings with

her eleventh-hour declaration is plainly insufficient to create any genuine issues of fact in order

to survive summary judgment.  Similarly, testimony of other employees which contradicts

Hummel's own deposition testimony is also insufficient to create a triable issue of fact.  See

Prosser v. Ross, 70 F.3d 1005, 1008 (8th Cir. 1995).

**Inadmissible Evidence And Hearsay Cannot Be Used To Oppose Summary Judgment**

        Admissible evidence is required to defeat summary judgment.  See Maier-Schule GMC,

Inc. v. Gen. Motors Corp., 154 F.R.D. 47, 57-60 (W.D.N.Y. 1994).  Indeed, Rule 56.1 dictates

that each statement of material fact "must be followed by citation to evidence which would be

admissible" under the Federal Rules of Evidence.  Local Civ. R. 56.1(d); see Amico v. County of

Monroe, 2004 WL 2966950, at *5 (W.D.N.Y. Dec. 21, 2004) (parties must produce "evidentiary

proof in admissible form").

        Accordingly, "[a] non-movant may not avoid summary judgment by proffering

documents that are not in admissible form," White Diamond Co., Ltd., v. Castco, Inc., 436 F.

Supp. 2d 615, 624 (S.D.N.Y. 2006), or by relying upon evidence that constitutes or contains

inadmissible hearsay.  See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769

F.2d 919, 924 (2d Cir. 1985) (a party "cannot rely on inadmissible hearsay in opposing a motion

for summary judgment absent a showing that admissible evidence will be available at trial")

(citations omitted); Biffer v. Capital One Services, Inc., 2006 WL 387394, at *1 (D. Conn. Feb.

15, 2006) (striking inadmissible hearsay).  Where evidence is not properly authenticated, and or

has not had its foundation properly laid, or is purely hearsay, it is not admissible at trial and thus,

cannot be considered to create any disputed issues of fact for purposes of avoiding summary judgment.

Hummel's statements about the purported job duties of other PSSs falls squarely within the hearsay rule, and as such, cannot be considered as creating any genuine issue of fact with regards to AstraZeneca's summary judgment motion. As well, Hummel's reliance on testimony and documentation from other lawsuits, where no foundation has been laid for its relevance to this matter, is also of no avail in avoiding summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (asserting that "factual disputes that are irrelevant or unnecessary will not be counted" in considering a motion for summary judgment). Finally, Hummel's citation to a USA Today article, which has not been submitted to AstraZeneca or the Court in any manner, is thus not properly part of the record in this matter and therefore, lacks any evidentiary value, cannot be considered in her opposition. See Crown Heights Jewish Comm. Council, Inc. v. Fischer, 63 F. Supp. 2d 231, 234 (E.D.N.Y. 1999) (document cited in, but not attached to, affidavit lacked evidentiary value and was not properly considered under Rule 56 to defeat summary judgment); Ofudu v. Barr Laboratories, Inc., 98 F. Supp. 2d 510, 513 (S.D.N.Y. 2000) (striking statements in Rule 56.1 statement due to failure to attach cited testimony).

### ASTRAZENECA'S SPECIFIC REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

**I.    Background**

**DEFENDANT'S FACT 1:**

1.    AstraZeneca is engaged in the business of research, development, and manufacturing of pharmaceutical products designed to fight disease in major areas of healthcare. Defendant AstraZeneca's Appendix of Record Evidence In Support of Motion for Summary Judgment ("Appx."), Tab 11, Declaration of Debra Ventura ("Ventura Dec."), ¶ 3.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 1:**

Undisputed.

**DEFENDANT'S REPLY:**

Undisputed.

**DEFENDANT'S FACT 2:**

2.    AstraZeneca employs thousands of individuals, including a field-based sales force of  Pharmaceutical Sales Specialists ("Sales Specialists").  Appx., Tab 11, Ventura Dec., ¶ 3.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 2:**

Undisputed.

**DEFENDANT'S REPLY:**

Undisputed.

**DEFENDANT'S FACT 3:**

3.    AstraZeneca hired Plaintiff Holly Hummel ("Hummel") as a Sales Specialist in December 1999, and she held this position until October 14, 2005.  Appx., Tab 1, Deposition testimony of Plaintiff Holly Hummel ("Hummel Tr."), 10:23-11:7, 12:10-13; Id., Tab 12, Resume; see also, id., Tab 1, Hummel Tr., 33:14-34:23, 35:4-36:5 (admitting resume is accurate).

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 3:**

Undisputed.

**DEFENDANT'S REPLY:**

Undisputed.

**DEFENDANT'S FACT 4:**

4.      As a Sales Specialist, Hummel worked in several different therapeutic areas, including AstraZeneca's cardiovascular group, long term care group, and specialty care group. Appx., Tab 1, Hummel Tr., 15:2-9, 71:13-72:8.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 4:**

Undisputed.

**DEFENDANT'S REPLY:**

Undisputed.

**DEFENDANT'S FACT 5:**

5.      Within each therapeutic area, Hummel worked with a small team, or "pod," of Sales Specialists with whom she coordinated her sales efforts.  Appx., Tab 1, Hummel Tr., 73:3-74:23, 197:25-198:6.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 5:**

Undisputed.

**DEFENDANT'S REPLY:**

Undisputed.

**DEFENDANT'S FACT 6:**

6.      Hummel sold a variety of cardiovascular and neuroscience drugs, including Atacand, Toprol-XL, Nexium, and Seroquel, all of which patients could obtain only via a doctor's prescription.  Appx., Tab 1, Hummel Tr., 89:25-91:18, 302:12-303:9.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 6:**

Disputed.  Defendant's citations to the record do not support this statement.  On the cited pages, Hummel did not testify that she sold anything.  Rather, Plaintiff was asked questions

concerning which products she carried, and if patients had to obtain prescriptions to obtain AZ products.  Moreover, Plaintiff did not "sell" anything.

**DEFENDANT'S REPLY:**

Hummel does not truly dispute the fact asserted, but instead quibbles with the phrasing of the statement because of the use of the term "sold."

## II.     Hummel Was an Exempt Outside Salesperson

### A.     Hummel Received Extensive Product and Sales Training

**DEFENDANT'S FACT 7:**

7.     AstraZeneca provided Hummel with extensive training on the products that she would be selling, and the Company likewise trained her on how to sell them.  Appx., Tab 1, Hummel Tr., 349:18-350:13.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 7:**

Undisputed that AZ provided Plaintiff with training.  Disputed that this training indicates that Plaintiff sold anything.

**DEFENDANT'S REPLY:**

Hummel does not truly dispute the fact asserted, but instead quibbles with the phrasing of the statement because of the use of the term "sell."

**DEFENDANT'S FACT 8:**

8.     Hummel participated in "selling skills classes" and product knowledge training, including ongoing refresher training on new clinical studies and product indications (i.e. FDA approved uses).  Appx., Tab 1, Hummel Tr., 349:18-350:13, 351:7-11, 351:16-24.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 8:**

Undisputed that AZ provided Plaintiff with training.  Disputed that this training indicates that Plaintiff sold anything.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted, which is Hummel's own testimony.

**DEFENDANT'S FACT 9:**

9.      Hummel asked to take a "flexible selling styles" class.  Appx., Tab 1, Hummel Tr., 319:20-320:12; id., Tab 13, Email dated February 10, 2004 from Hummel to Mark Ragone; see also, id., Tab 1, Hummel Tr., 319:5-9.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 9:**

Disputed.  Defendant's citations to the record do not support this statement.  Plaintiff testified that the referenced class was a requirement to obtain a promotion.  Moreover, participation in this class does not indicate that Plaintiff sold anything.

**DEFENDANT'S REPLY:**

Plaintiff does not truly dispute the fact asserted, and it is undisputed that Hummel authored the cited document.  See Appx., Tab 13 ("I would really like to join this flexible selling styles class on March 3rd."); Tab 1, Hummel Tr., 319:20-320:12.  Hummel cannot contradict her own contemporaneous writings.  See, e.g., Golden, 2007 WL 4299443, at *9-10 (disapproving of declaration which contradicted documents evidencing plaintiff's exempt status and further noting that plaintiff's resume confirmed that she performed exempt duties).

**DEFENDANT'S FACT 10:**

10.      Hummel received additional product and "marketing" training during her career as she went into different therapeutic areas.  Appx., Tab 1, Hummel Tr., 350:7-13.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 10:**

Undisputed.

**DEFENDANT'S REPLY:**

Undisputed.

**DEFENDANT'S FACT 11:**

11.     Hummel was trained on AstraZeneca's selling philosophy, the Interactive

Strategic Selling ("ISS") model.  Appx., Tab 1, Hummel Tr., 94:7-14; id., Tabs 14 & 15

(documents describing the ISS model); see also, id., Tab 1, Hummel Tr., 94:21-96:4, 96:16-97:5.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 11:**

Undisputed that Plaintiff received training on the ISS model.  Disputed that training on

the ISS model indicates that Plaintiff sold anything.  Moreover, Plaintiff and other PSSs were

required to follow the ISS model.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.  Hummel merely takes issue with the legal

significance of the fact.

**DEFENDANT'S FACT 12:**

12.     Hummel used the ISS model in her daily activities as a Sales Specialist for the

purpose of getting physicians to write prescriptions for more AstraZeneca products.  Appx., Tab

1, Hummel Tr., 94:21-96:4, 96:16-97:10, 98:10-15; id., Tabs 14 & 15 (documents describing the

ISS model).

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 12:**

Undisputed that Plaintiff used the ISS model.  Disputed that Defendant's citation to the

record support this statement.  The actual questions and answers were: Q: Okay.  And when you

used it for--with physicians for the purpose of getting them to write more AstraZeneca product, right? A: That's what the company wanted us to do.  Q: And you did do it, right?  A: We used this model, yes.  Def. App. Tab 1 at 98:10-98:15.  Furthermore, the use of the ISS model was not an indication that Plaintiff sold anything.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.

**DEFENDANT'S FACT 13:**

13.    Among other things, the ISS model included an "Emphasis on closing — asking for the business."  Appx., Tab 15, ISS Presentation 2004, at AZB_C0003578; see also, id., Tab 1, Hummel Tr., 96:12-97:5, 97:6-10.  It also described various general types of Sales Aids that a Sales Specialist could use during a sales call (id., Tab 15, at AZB_C0003595, C0003656) in order to increase the chance of an effective interaction (id., at AZB_C0003657); required the Sales Specialist to use a "complex thinking process" in having a dialogue with a physician (id. at AZB_C0003615); asked Sales Specialists to "leverage current success" with physicians to "expand market" and "motivate customer to switch from competitive product."  Id., at AZB_C0003645.  The ISS model also focused on having Sales Specialists making a "close" — "a well timed & well stated question to garner business."  Id., at AZB_C0003671.  "Closing" was defined as important in the ISS model because "If you don't ASK, you don't GET!"  Id. at AZB_C0003672 (emphasis in original).

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 13:**

Undisputed that the quoted language appears in the referenced exhibits.  While Plaintiff may have used the ISS model, there is no dispute that Plaintiff did not sell anything.  Defendant strictly controlled what Plaintiff and other PSSs could relay to a doctor, because if a PSS violates

FDA guidelines, Defendant could be subject to severe fines.  Defendant mandates specific standards and tasks that all PSSs must perform during a "sales" call.  When calling on health care providers, all PSSs are required to follow AstraZeneca's standards for interacting with healthcare professionals.  PSSs present information about AZ products from company-generated "detail pieces" that are shown to physicians as part of the product presentation – a practice known as "detailing."  PSSs cannot present statements out of context from the full prescribing information or approved promotional materials.  They cannot highlight or mark up promotional pieces or prepare their own materials.  Stanley Int. at 8; AZB_C003828-AZB_C003829; AZB_C0001540; Atha Dep. 134:21-135:7, 137:13-138:31, 40:17-141:3

**<u>DEFENDANT'S REPLY:</u>**

Hummel does not dispute the fact asserted.  Moreover, this Motion is directed to Hummel individually, not <u>all</u> <u>PSSs</u> generally, and Hummel cannot create a triable issue of fact by making conclusory and overly broad unsupported statements.  <u>See</u> <u>BellSouth Telecomms.</u>, 77 F.3d at 615; <u>Bickerstaff</u>, 196 F.3d at 452 ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.").  Hummel's cited evidence does not support her assertions, and it is not admissible in any event.  Hummel purports to rely upon a hearsay statement made by a New Mexico PSS, Bob Stanley.  <u>See</u> Dichiara Dec., Ex. 18.  Defendant <u>objects</u> to Ex. 18 of the DiChiara Dec. as inadmissible hearsay pursuant to Federal Rule of Evidence 802.  Ex. 18 is unreliable for the additional reason that the transcriptionist specifically noted in that document that "it was extremely difficult to hear what [Mr. Stanley] was saying…" (DiChiara Dec., Ex. 18 at AZ0025072).

**DEFENDANT'S FACT 14:**

14.    In her role as a "Crestor training champion," Hummel ensured that Sales Specialists were prepared for the product launch.  Appx., Tab 1, Hummel Tr., 66:20-67:14.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 14:**

Disputed that Defendant's citation to the record supports this statement.  Plaintiff's role as "Crestor training champion" was to pass along information to other PSSs as to when the district manager or marketing department wanted them to take company-mandated tests concerning Crestor.  Def. Appx. Tab 1 at 66:18-68:4.

**DEFENDANT'S REPLY:**

Hummel does not – and cannot – truly dispute Fact 14, which is her *own* testimony:

> I facilitated teleconferences.  I sent out e-mails to keep people updated on what the timeline was for studying exams that we had to complete, and anything else that was sent down, either through the district manager or the marketing department.  *So it was my role to keep everyone moving along the continuum, to pass the tests and just be ready to launch Crestor.*

Appx. Vol. I, Tab 1, Hummel Tr., 66:20-67:4 (emphasis added).

**DEFENDANT'S FACT 15:**

15.    Hummel even trained other Sales Specialists on how to use the ISS model when she served as a "district training champion."  Appx., Tab 1, Hummel Tr., 95:16-25, 307:16-308:6; id., Tab 14, ISS Presentation Materials - 2001; id., Tab 1, Hummel Tr., 94:21-96:4; id., Tab 16, Email dated December 30, 2000 from Andrew Strow regarding District Specialists, at 141480; id., Tab 1, Hummel Tr., 306:11-20.  Hummel also gathered and summarized competitor products for background and analysis purposes.  Id., Tab 1, Hummel Tr., 307:11-15; id., Tab 16, Email dated December 30, 2000 from Andrew Strow regarding District Specialists, at 141479; id., Tab 1, Hummel Tr., 306:11-25.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 15:**

Disputed that Defendant's citation to the record supports this statement.  Plaintiff testified that she did a presentation concerning the ISS model (Def. Tab 1 at 95:16-25), and that the gathering and summarizing of competitor information and alleged training was simply passing along information that was provided to her by AZ.  (*Id.* at 307:23-308:6.)

**DEFENDANT'S REPLY:**

Hummel does not truly dispute Fact 15 or the supporting evidence, but merely quibbles with the phrasing of the statement.  Fact 15 is Hummel's own testimony, which cannot be disputed.

> **B.     Hummel's Job Was to Increase Sales of AstraZeneca Products by Engaging Physicians in Persuasive Dialogues and Asking for Commitments to Prescribe AstraZeneca Products for Approved Uses**

**DEFENDANT'S FACT 16:**

16.     As a Sales Specialist, Hummel's job was to persuade doctors to write more AstraZeneca product prescriptions for appropriate patients in order to generate sales revenue. Appx., Tab 1, Hummel Tr., 31:10-21, 38:22-39:4, 194:12-21.  Hummel's goal was to increase prescription growth among her physician customers.  Id., 304:5-13.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 16:**

Undisputed that Plaintiff's role was to promote AZ products with the hope that health care providers would prescribe the product.  See also, Response No. 13.

**DEFENDANT'S REPLY:**

Hummel does not, and cannot, dispute the fact asserted, which is her own testimony.

**DEFENDANT'S FACT 17:**

17.     Hummel was evaluated on, among other things, her skills as a salesperson. Hummel admitted that a highly important measure of her performance from the Company's

perspective was "[n]umbers", i.e. her ability to move market share.  Appx., Tab 1, Hummel Tr., 51:17-23, 286:14-20.  Further, Hummel's annual evaluations contained a description of Hummel's territory sales objectives and an assessment of Hummel's efforts to achieve those objectives.  See, e.g., id., 121:10-123:25; id., Tab 2, 2002 Performance Evaluation.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 17:

Undisputed that Plaintiff was evaluated on "selling skill," but disputed as to whether Plaintiff actually sold anything. Furthermore, market share increases in a particular territory do not correlate with the efforts of the individual PSS.  Rather, many elements influence whether a doctor prescribes a drug, including, television and print advertisement, and the rep is merely one of those elements.  Many factors impact the number of prescriptions filled in a PSS's territory, including: visits by PSSs (multiple PSSs will call on the same doctors to promote the same product), medical education events and conventions, patient requests, television commercials, newspaper advertisements, radio advertisements, and recommendations from other physicians. AZ invests millions of dollars in print and media advertisement to promote market expansion for its drugs.  Almost one third (32%) of Americans have talked to a doctor about a drug as a result of seeing a drug advertisement; in approximately half (44%) of the cases, the doctor wrote a prescription for the requested drug.  Finally, some products do better in the market simply because of the nature of the market (regardless of what the PSS does).  Atha dep 36:24-37:5; Ventura Dep. 395:9-11, 400:13-401:19, 406:2-408:10; USA Today Article pp. 4, 19; *Pa. Emples. Benefit Trust Fund v. Zeneca, Inc.*, 499 F.3d 239, 245 (3rd Cir. 2007).

**DEFENDANT'S REPLY:**

Hummel admits she was evaluated on selling skill. She does not, and cannot, dispute the fact asserted, which is her own testimony. Hummel's so-called "dispute" as to "whether Plaintiff actually sold anything" is not a factual dispute, but a question of law.

**DEFENDANT'S FACT 18:**

18.    Furthermore, sales performance was an important factor in determining whether Hummel was ready to be promoted. Appx., Tab 17, Deposition testimony of Cindy Atha, 100:13 –101:5; see also, id., Tab 18, Career Ladder Self Evaluation; id., Tab 1, Hummel Tr., 148:21-150:2, 150:22-151:10.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 18:**

Disputed that Defendant's citations to the record support this statement. Atha testified that sales performance was simply "a factor," not an important factor.

Despite the fact that AZ refers to its pharmaceutical representatives as "sales specialist" and to physicians as "customers," PSSs do not sell AZ's products to physicians or to anyone else. Defendant has admitted "health care practitioners don't buy drugs from anyone directly. They don't supply drugs to patients through a prescription." The patient or consumer is the one who goes to the pharmacy to purchase and pay for the drug. The traditional "sale of cash exchanging and transfer of title taking place does not happen in the sale transaction that occurs with a PSSs and a physician or a health care provider." "The health care practitioners don't buy drugs from anyone directly. They don't supply drugs to patients through a prescription." AZ does not record income when a health care provider promises to write or prescription or even when he or she writes a prescription for an AZ product, because the patient may not fill that prescription at all or may fill it with a non-AZ product. Rather, the purchase occurs when "[w]holesalers buy

the AstraZeneca products and consumers purchase through a prescription at the retail level

pharmacy the AstraZeneca product.  When they do that, it creates the demand for the wholesaler,

which then triggers the sale by AstraZeneca."  Indeed, AZ has stated that it considers the

detailing work performed by PSSs to be promotional work. Ventura Dep. 69:9-19, 242:19-243:5,

372:7-19; Atha Dep. 23:17-24:1. AZB_C0002636; AZB_C0002650; AZB_C0002682; Ventura

Dep. 156:17-157:24.

**DEFENDANT'S REPLY:**

Hummel mischaracterizes Ms. Atha's deposition testimony.  Hummel does not truly

dispute Fact 18, but instead quibbles with the phrasing of the statement.  Hummel's "dispute" is

not a true dispute of fact, but rather a dispute as to the legal significance of the fact.

**DEFENDANT'S FACT 19:**

19.    Likewise, Hummel's manager accompanied her on sales calls approximately

every 3-4 weeks, and in connection with these "ride alongs" the manager prepared "field

coaching forms" that contained the manager's evaluation of Hummel's selling skills, such as

"sell to the need" and "close," as well as her activities and accomplishments in the field for that

day.  Appx., Tab 1, Hummel Tr., 278:5-17, 280:16-19, 281:3-15, 290:8-24; id., Tabs 3-4, 19,

Field Coaching Forms.  See also, id., Tab 1, Hummel Tr., 287:4-288:5, 288:7-17, 291:3-292:20.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 19:**

Undisputed that Plaintiff's managers accompanied her on "ride alongs" and that her

managers prepared "field coaching forms."  Plaintiff disputes that she sold anything, and refers

the Court to response No. 18.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.  Moreover, Hummel's "dispute" as to whether she sold anything is not a triable issue of fact, but rather a question of law.

**DEFENDANT'S FACT 20:**

20.    A portion of Hummel's compensation was tied to achievement of sales targets and product sales within her assigned geography.  Appx., Tab 1, Hummel Tr., 175:6-9, 313:21-314:23, 330:18-331:11, 332:6-10, 332:15-333:10, 341:11-14, 346:7-347:15; id., Tab 5, Email dated October 27, 2003 from James Ader; id., Tab 6, Email dated July 4, 2001 from Andrew Strow; id., Tab 7, Email Dated July 1, 2004 from Mark Ragone; id., Tab 11, Ventura Dec., ¶ 5.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 20:**

Undisputed that part of Plaintiff's compensation was compromised of the Field Service Incentive Plan that was purportedly connected to sales targets.  However, Plaintiff refers the Court to Responses 17 and 18.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.

**DEFENDANT'S FACT 21:**

21.    Hummel was responsible for calling on numerous physicians in her territories, and she considered such physicians to be her "clients."  Appx., Tab 1, Hummel Tr., 38:4-19.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 21:**

Undisputed that Plaintiff referred to physicians as "clients."  However, Plaintiff did not sell anything to physicians, and refers the Court to Responses 17 and 18.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.

**DEFENDANT'S FACT 22:**

22.     Hummel also understood that AstraZeneca wanted her to call on physicians and others with prescribing authority because they had the authority to prescribe its products. Appx., Tab 1, Hummel Tr., 302:12-303:20.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 22:**

Undisputed.  However, this understanding does not reflect that Plaintiff was engaged in sales, and Plaintiff refers the Court to Responses 17 and 18.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.

**DEFENDANT'S FACT 23:**

During her calls, Hummel engaged the doctors in persuasive dialogues designed to increase the number of AstraZeneca prescriptions that they wrote for approved uses:

> I mean, the goal was -- is that to increase, you know, prescriptions. Was a goal, is what we were told.  So this is what, you know, we want to do.  Go in, market, use the core selling method, talk to the physicians in hopes that that would deliver results.

Appx., Tab 1, Hummel Tr., 303:21-304:12; <u>see</u> <u>also</u>, <u>id</u>., 31:5-21 (testifying that the purpose of making calls on doctors was to convince the doctor "to write [prescriptions for] the product, or products, that you were marketing").

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 23:**

Undisputed that Plaintiff described her job as a form of marketing of AZ products. Disputed that Defendant's citations to the record support this statement, as Plaintiff did not testify that she engaged in persuasive dialogues.

**DEFENDANT'S REPLY:**

Hummel does not, and cannot, dispute the fact asserted, which is Hummel's own

testimony.  Hummel merely quibbles with the phrasing of the statement.

**DEFENDANT'S FACT 24:**

Hummel admitted that she used the ISS model to acquire new business – i.e., new

prescriptions — for AstraZeneca.  Appx., Tab 1, Hummel Tr., 152:21-153:6.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 24:**

Disputed.  Defendant's citations to the record do not support this statement.  Defendant

also refers the Court to Responses 17 and 18.

**DEFENDANT'S REPLY:**

Hummel cannot dispute the fact asserted, which is Hummel's own testimony:

> Q:    Well, at any point in your career, did you ever use the ISS
> to apply [to] what you would regard as new business?
>
> A:    Yeah.  That's what the company told us.  You use the
> selling model, then here's the numbers, and you would look at
> your numbers and – you know, yes.
>
> Q:    Okay.  And so the new business, I gather, would be new
> prescriptions, right?
>
> A:    Yes.

Appx., Tab 1, Hummel Tr., 152:21-153:6.

**DEFENDANT'S FACT 25:**

Hummel testified that her performance goals for 2001 included 32,736 prescriptions for

Toprol XL and 41,135 prescriptions for Zestril/Zestoretic.  Appx., Tab 1, Hummel Tr., 22:6-

25:6, 26:2-27:19; Appx., Tab 8, 2001 Performance Plan, at 160267.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 25:**

Undisputed that Tab 8 references performance goals and that Plaintiff had goals for prescriptions of her products.  Disputed that these goals indicate that Plaintiff engaged in sales, and Plaintiff refers to the Court to Responses 17 and 18.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.  Hummel's "dispute" as to whether "Plaintiff engaged in sales" is not a true dispute of fact, but rather a dispute as to the legal significance of the fact asserted.

C.     **Hummel Made Sales And Obtained Orders**

**DEFENDANT'S FACT 26:**

Hummel admitted that her job was to sell.  In describing how her AstraZeneca experience helped her get a job at Novartis, Hummel stated: "I had been both in hospital selling as well as office selling, so they – they liked that."  Appx., Tab 1, Hummel Tr., 49:2-25.  She also stated that one of her job duties was working with other Sales Specialists "to coordinate selling efforts." Id., 197:25-198:6.  She further testified that she "sold Seroquel."  Id., 50:17.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 26:**

Disputed that Plaintiff admitted that her job was to sell.  Plaintiff also refers the Court to Responses 17 and 18.

**DEFENDANT'S REPLY:**

Hummel cannot dispute the fact asserted, which is her own testimony.  Moreover, Hummel's unsupported, conclusory allegations will not create an issue of fact.  BellSouth Telecomms., 77 F.3d at 615 (2d Cir. 1996); Bickerstaff, 196 F.3d at 452.

**DEFENDANT'S FACT 27:**

Hummel used a professional to draft a resume on her behalf.  Appx., Tab 12, Resume; id., Tab 1, 33:14-34:23.  Hummel testified in her deposition that she approved the resume, it was accurate (except for the title of her degree), and she intends to use it in future job searches.  Id., Tab 1, Hummel Tr., 34:14-23, 35:4-36:5.  In her resume, Hummel was described as a "Senior Sales Professional with extensive . . . experience in pharmaceutical sales; a results-driven producer adept at building and retaining client relationships [and] conducting in-depth sales presentations…"  Appx., Tab 12, Resume; id., Tab 1, 33:14-34:23.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 27:**

Undisputed that Plaintiff's resume contains the referenced language.  Disputed that such language is an indication that Plaintiff engaged in sales, and Plaintiff refers the Court to Responses No. 17 and 18.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.  Further, Hummel cannot contradict her previous testimony or admissions in her resume.  See, e.g., Golden, 2007 WL 4299443, at *9-10 (disapproving of declaration which contradicted documents evidencing plaintiff's exempt status and further noting that plaintiff's resume confirmed that she performed exempt duties).  Hummel's "dispute" as to whether "Plaintiff engaged in sales" is not a true dispute of fact, but rather a dispute as to the legal significance of the fact asserted.

**DEFENDANT'S FACT 28:**

Hummel's resume also stated that, among other products, she "sold Seroquel," and she "sold cardiovascular pharmaceuticals (Crestor) to physicians, cardiologists and hospitals."  Appx., Tab 12, Resume; id., Tab 1, Hummel Tr., 33:14-34:23, 35:4-36:5.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 28:**

Undisputed that Plaintiff's resume contains the referenced language. Disputed that such language is an indication that Plaintiff engaged in sales, and Plaintiff refers the Court to Responses No. 17 and 18.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted. Hummel's "dispute" as to whether "Plaintiff engaged in sales" is not a true dispute of fact, but rather a dispute as to the legal significance of the fact asserted.

**DEFENDANT'S FACT 29:**

Hummel wrote in an email that she was "taking a promotion in the Long Term Care division-selling Nexium and Seroquel." Appx., Tab 20, Email dated October 18, 2002 from Hummel to Carianne Fugich; see also, id., Tab 1, Hummel Tr., 313:8-11, 317:8-24.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 29:**

Undisputed that the referenced language appears in Plaintiff's e-mail of October 18, 2002. Disputed that such is an indication that Plaintiff engaged in sales, and Plaintiff refers the Court to Responses No. 17 and 18.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted. Hummel's "dispute" as to whether "Plaintiff engaged in sales" is not a true dispute of fact, but rather a dispute as to the legal significance of the fact asserted.

**DEFENDANT'S FACT 30:**

One of Hummel's initiatives that she admitted executing in her 2004 Personal Scorecard was to "continue to ask for business on every call/interaction." Appx., Tab 9, 2004 Personal

Scorecard, at 143838; see also, id., Tab 1, Hummel Tr., 126:8-24, 127:12-24, 130:4-6.  Hummel

also admitted that her manager expected her to "close" (i.e. ask for a commitment) at the

conclusion of the calls that she made.  Id., Tab 1, Hummel Tr., 313:4-7, 315:17-316:3, 317:2-7;

id., Tab 10, Email dated June 22, 2005 from Brian Heffernan to Hummel; see also, id., Tab 15,

Presentation on ISS model at AZB_C0003578, 3671-72, 3679; id., Tab 1, Hummel Tr., 96:12-

97:5, 97:6-10, 290:5-24.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 30:

Undisputed that the referenced language concerning Plaintiff's initiatives, which her

district manager helped her develop (Def. Tab 1 at 127: 19-21), appears in Plaintiff's Personal

Scorecard.

During all "sales" calls, Plaintiff and other PSSs were required to include a direct request

from a PSS for the appropriate action from the customer.  PSSs were supposed to ask doctors to

perform some action in the future, including a request to prescribe an AZ product to appropriate

patients.  AZ refers to this as getting a "commitment" or a "close."  However, doctors do not

commit to prescribe a certain number of prescriptions nor do they commit to prescribe a certain

drug for a specific patient.  A "commitment" is wholly nonbinding; the doctor is still free to not

prescribe the AZ drugs.  In fact, it would not have been ethical for a doctor to make a guarantee

that he would prescribe the products to patients in the future.  Def. Tab 1 at 289:15-290:4(getting

a commitment "does not mean anything" because a PSS never knows that a physician will do);

AZC0002998; AZB_C0001474; Ventura Dep. 75:7-13, 77:8-79:4, 158:9-15, 316:12-13; Atha

Dep. 59:3-29.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.  Hummel <u>further</u> <u>admits</u> in her response that she was <u>supposed</u> to make requests to physicians to prescribe AstraZeneca products.  Moreover, AstraZeneca's corporate witness Debra Ventura testified: "A physician commits to the sales representatives that for the products for which they were discussing and the appropriate indications and patient types, <u>that they will prescribe the product for that particular patient the</u> <u>next time available</u>."  DiChiara Dec., Ex. 3, Ventura Tr., 77:13-21 (emphasis added).  Ms. Ventura also noted that "sometimes a PSS will ask for and obtain a commitment to prescribe a product regarding the next group of an appropriate type of patient that the prescriber will treat, like the next one or five or ten patients out of that type."  <u>See</u> Declaration of Harry Johnson ("Johnson Decl.") Ex. A, Ventura Errata Sheet.

**DEFENDANT'S FACT 31:**

Hummel understood her role was to increase market share for AstraZeneca's products.  Hummel was proud of herself when her manager congratulated her for an increase in market share.  Appx., Tab 1, Hummel Tr., 313:4-7, 315:17-316:25; <u>id</u>., Tab 10, Email dated June 22, 2005 from Brian Heffernan to Hummel.  Furthermore, one of Hummel's initiatives that she admitted executing in her 2004 Personal Scorecard was "…achieving Seroquel market share growth…."  <u>Id</u>., Tab 9, 2004 Personal Scorecard, at 143837; <u>see also</u>, <u>id</u>., Tab 1, Hummel Tr., 126:8-24, 127:12-24, 130:4-6.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 31:**

Undisputed that Plaintiff testified that she was proud when her manager congratulated her.  Disputed that the citations to the record indicate that Plaintiff engaged in sales, and Plaintiff refers the Court to Response No. 17, 18, and 30.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted. Hummel's "dispute" as to whether "Plaintiff engaged in sales" is not a true dispute of fact, but rather a dispute as to the legal significance of the fact asserted.

**DEFENDANT'S FACT 32:**

Hummel "demonstrate[d] a good understanding of the ISS selling model" and used it to acquire new business. Appx., Tab 18, Career Ladder Self Evaluation, at 143640; id., Tab 1, Hummel Tr., 148:21-150:2, 150:22-151:10.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 32:**

Disputed that Defendant's citations to the record support this statement. Plaintiff also refers the Court to Response No. 17, 18, and 30.

**DEFENDANT'S REPLY:**

Hummel does not, and cannot, truly dispute Fact 32. It is undisputed that Hummel herself authored the document quoted, and Hummel also admitted that she used the ISS model to acquire new business. Appx. Vol I, Tab 1, Hummel Tr., 152:21-153:6. Hummel cannot contradict her own testimony and contemporaneous writings. See, e.g., Santos, 243 F.3d at 684 (holding that affidavit contradicting prior deposition testimony could not be used to oppose a motion for summary judgment); Raskin, 125 F.3d at 63 ("a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony."); Nugen, 2007 WL 1149979, at *20 (refusing to consider affidavit which conflicted with affiant's prior testimony); Golden, 2007 WL 4299443, at *9-10.

### D. Hummel Spent Almost All Of Her Work Time Traveling To And Selling At Physician's Offices

**DEFENDANT'S FACT 33:**

Hummel spent the vast majority of her working time in the field making calls to doctors in her territory.  Appx., Tab 1, Hummel Tr., 176:15-23.  In making these calls, Hummel was almost wholly free of direct supervision – she worked in the field alone most of the time, and her manager accompanied her on "ride-alongs" only once every 3-4 weeks or once every month.  Id., 79:10-13, 280:4-15, 278:9-17; see also, id., 279:8-280:3 (testifying that managers met her for programs about once every two months).

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 33:**

Undisputed that Plaintiff spent the vast majority of her time working in the filed [sic] making calls.  Disputed that Plaintiff was almost wholly free of direct supervision.

**DEFENDANT'S REPLY:**

Hummel does not, and cannot, dispute the fact asserted, including that she worked alone for most of the time.  These facts are from her own testimony.

**DEFENDANT'S FACT 34:**

Hummel testified that she approximately worked between 8 and 12 hours per day (not including drive time to the first call and back from the last call in the field).  Appx., Tab 1, Hummel Tr., 228:2-23; 245:13-21; 246:11-15; 247:5-7.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 34:**

Undisputed that Plaintiff worked more than 8 hours per day.  Tab 1 at 343:5-24; Hummel Decl. at ____. [sic]

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.

### III.    Hummel Qualified for the Administrative Exemption

#### A.    Hummel Meets The Salary Test

**DEFENDANT'S FACT 35:**

Hummel earned an annual base salary of $50,158 effective November 1, 2001; $52,164 effective March 1, 2002; $54,251 effective September 1, 2002; $55,878 effective November 1, 2002; $56,996 effective March 1, 2003; $61,342 effective September 1, 2003; $63,796 effective March 1,2004; and $68,000 effective August 1, 2004 through Hummel's termination of employment on or about October 15, 2005.  Appx., Tab 11, Ventura Dec., ¶ 5.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 35:**

Undisputed.

**DEFENDANT'S REPLY:**

Undisputed.

#### B.    Hummel's Primary Duty Was Management or General Business Operations

**DEFENDANT'S FACT 36:**

Hummel testified that she spent the vast majority of her time as a PSS calling on physicians.  Appx., Tab 1, Hummel Tr., 176:15-23.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 36:**

Undisputed that Plaintiff testified as such. However, AZ strictly controlled all aspects of PSS calls upon physicians.  They were provided a four-week routing plan for the frequency of times, they should call upon a doctor.  PSSs also were required to visit a set number of doctors per day.  Once they met with the doctor, they had, Defendant told PSSs the message they were to convey to the doctors as well as the order in which the message should be presented.  AZ provided PSSs -- including Plaintiff -- scripts of what they should say during their sales calls.

PSSs were required to stay within the scripted company message and only present information provided to them by AZ.  Each and every piece of printed or written materials (*e.g.* clinical studies) PSSs utilized or provided to doctors had to have been pre-approved and supplied by AZ.  PSSs are required to offer the doctor a copy of the product insert and cannot present statements out of context from the full prescribing information or approved promotional materials.  After a "sales" call is completed, all PSSs are required to immediately enter call notes into their computer.  The computer entry indicates the PSS who made the entry, the doctor seen by the PSS, call notes from the call, and the time and date of the entry.  Atha Dep. at 83:20-84:2, 90:3-21, 90:22-91:13, 140:11-19, 144:12-18; Ventura Dep. 103:10-105:2, 114:2-5; 118:9-119:21, 122:1-16, 242:13-245:13; AZB_C0000826; AZB _C0000828; AZ_C0003628; AZ_C0003629; AZB_C0038288.

## DEFENDANT'S REPLY:

Hummel does not dispute the fact asserted.  The allegation that AstraZeneca "strictly controlled <u>all</u> aspects of PSS calls upon physicians" is legal argument, does not address <u>Hummel herself</u>, and is not supported by the cited evidence because it does not show "strict control" of "all aspects" of a call.  For instance, Hummel cites Ms. Atha's testimony at 144:12-18, which merely states:

> THE WITNESS: Okay.
>
> BY MR. KRAVEC:
>
> Q. So you've read the entirety of 5.1.1?
>
> A. 5.1.1.
>
> Q. Okay. Which goes all the way over to the second page, right?
>
> A. Yes.

She neglects to cite, however, the remaining testimony wherein Ms. Atha testified that while PSSs are expected to present information consistent with the product insert, "[h]ow they present that information is individualized on each PSS," and that PSSs can present product information in "multiple ways." DiChiara Dec., Ex. 2, Atha Tr. 45:2-11. The documents cited by Hummel also fail to establish that AstraZeneca controlled "all aspects" of a call. Moreover, these documents were produced in connection with a *different* lawsuit involving a different plaintiff in a different state, entitled Baum v. AstraZeneca, Case No. 3:07-cv-00090-KRG (W.D. Pa.), and what may have been provided to the named plaintiff in that lawsuit during the course of her employment with AstraZeneca has no bearing whatsoever on Hummel. See Johnson Decl., ¶ 4 (no agreement between parties allowing Hummel to submit in this case documents produced in Baum). There is no foundation for the use of these documents in relation to Hummel. Indeed, there is no evidence that Hummel even received these documents at any time during her employment with AstraZeneca.

**DEFENDANT'S FACT 37:**

Hummel testified that she was successful in promoting Atacand in her district. Appx., Tab 1, Hummel Tr., 54:10-15.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 37:**

Undisputed that Plaintiff testified as such.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.

**DEFENDANT'S FACT 38:**

Hummel testified that AstraZeneca's "marketing materials used promotional terminology." Appx., Tab 1, Hummel Tr., 367:9-16.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 38:**

Undisputed that the quoted language appears in Plaintiff's deposition transcript.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.

**DEFENDANT'S FACT 39:**

Hummel wrote in the "Initiatives" section of her 2004 Personal Scorecard that she would "[c]ontinue to promote Nexium…."  Appx., Tab 1, Hummel Tr., 126:8-24, 127:12-24; id., Tab 9, 2004 Personal Scorecard, at 000143836.  Hummel testified that she actually executed the initiatives that she wrote in her 2004 Personal Scorecard.  Id., Tab 1, Hummel Tr., 130:4-6.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 39:**

Undisputed that the referenced language concerning Plaintiff's initiatives, which her district manager helped her develop (Def. Tab 1 at 127: 19-21), appears in Plaintiff's Personal Scorecard.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.

**DEFENDANT'S FACT 40:**

Hummel testified that she discussed the promotion of AstraZeneca products with pharmacists.  Appx., Tab 1, Hummel Tr., 241:7-10.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 40:**

Undisputed that the above testimony appears in Plaintiff's deposition transcript.  ??  [sic]

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.

**DEFENDANT'S FACT 41:**

Hummel admitted that her financial objective in her 2002 Performance Evaluation was to achieve total prescription goals for her "promoted Cardiovascular products."  Appx., Tab 1, Hummel Tr., 121:10-122:17; Tab 2, 2002 Performance Evaluation, at 000139840.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 41:**

Undisputed that the quoted language appears in Plaintiff's deposition transcript. However, prescription and market share increases in a particular territory do not correlate with the efforts of the individual PSS.  Rather, many elements influence whether a doctor prescribes a drug, including, television and print advertisement, and the rep is merely one of those elements. Many factors impact the number of prescriptions filled in a PSS's territory, including: visits by PSSs (multiple PSSs will call on the same doctors to promote the same product), medical education events and conventions, patient requests, television commercials, newspaper advertisements, radio advertisements, and recommendations from other physicians.  AZ invests millions of dollars in print and media advertisement to promote market expansion for its drugs. Almost one third (32%) of Americans have talked to a doctor about a drug as a result of seeing a drug advertisement; in approximately half (44%) of the cases, the doctor wrote a prescription for the requested drug.  Finally, some products do better in the market simply because of the nature of the market (regardless of what the PSS does).  Atha dep 36:24-37:5; Ventura Dep. 395:9-11, 400:13-401:19, 406:2-408:10; USA Today Article pp. 4, 19; *Pa. Emples. Benefit Trust Fund v. Zeneca, Inc.*, 499 F.3d 239, 245 (3rd Cir. 2007)

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.  Her remaining assertions are irrelevant, legal argument, or an inadmissible newspaper article.

**DEFENDANT'S FACT 42:**

In describing her job duties, Hummel testified "I marketed to physicians."  Appx., Tab 1, Hummel Tr., 359:15-16.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 42:**

Undisputed that the quoted language appears in Plaintiff's deposition.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.

C.    **Hummel's Primary Duty Included The Exercise Of Discretion And Independent Judgment**

**DEFENDANT'S FACT 43:**

Hummel admitted that during a sales call, she would uncover the physician's need and work that need into the product discussion so that the doctor would write more prescriptions. Appx., Tab 1, Hummel Tr., 257:24-258:11.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 43:**

Undisputed that Plaintiff testified as such at her deposition.  However, Plaintiff disputes that she exercised discretion and independent judgment, because she was required to stay "on label" and could only use AZ approved materials.  Def. Tab 1 at 259:2-6.  Plaintiff was also required to follow AZ's interactive selling process, and AZ provided Plaintiff with questions, probing statements, and answers to objections to use on "sales" calls.  Id. at 259:7-260:12. Plaintiff also refers the Court to Response No. 13.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.  Hummel's "dispute" as to the exercise of "discretion and independent judgment" is not a dispute of fact, but a dispute as to the legal significance of the fact asserted.  Moreover, Hummel admitted that she was not required to say

any particular statement.  Appx., Tab 1, Hummel Tr., 260:13-18 (testifying that she was given

"guidance" on how to "structure the call" but was "[n]ot forced" to say particular statements);

see also, id., Tabs 14-15 (ISS model did not provide scripts or a comprehensive set of dialogue).

**DEFENDANT'S FACT 44:**

Hummel conceded that doctors reacted differently to sales calls and that their interests

varied.  Appx., Tab 1, Hummel Tr., 257:8-22, 258:21-25.  Some doctors would spend more time

with her, and others would "just have questions."  Id., 257:19-22.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 44:**

Undisputed that Plaintiff testified as such at her deposition.  Plaintiff disputes that this

testimony indicates she exercised independent judgment and discretion, and refers the Court to

Response No. 13 and 43.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.  Hummel's "dispute" as to the exercise of

discretion and independent judgment is not a dispute of fact, but a dispute as to the legal

significance of the fact asserted.

**DEFENDANT'S FACT 45:**

Hummel admitted that there are various ways to present information during a sales call

and there are several different topics that a Sales Specialist could cover with a doctor, who is an

expert.  Appx., Tab 1, Hummel Tr., 260:4-18, 357:4-7.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 45:**

Disputed that the citations to the record support this statement.  Plaintiff also refers the

Court to Response No. 13 and 43.

**DEFENDANT'S REPLY:**

Hummel cannot dispute the fact asserted, which is her own testimony.  Further, Hummel admitted varying her call presentations; for example, she admitted planning for upcoming calls by selecting "the opening statement that [she] wanted to make, and how [she] wanted to bridge into the marketing piece, maybe what --what page [she] wanted to use in the marketing piece." Appx., Tab 1, Hummel Tr., 252:7-10.

**DEFENDANT'S FACT 46:**

Hummel testified that doctors would ask questions that were not covered in AstraZeneca training.  Appx., Tab 1, Hummel Tr., 354:3-9.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 46:**

Undisputed the Plaintiff testified as such at her deposition, but there is no citation to the record indicating that Plaintiff could answer such questions.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.

**DEFENDANT'S FACT 47:**

Hummel testified that she would do pre-call planning 1-2 times a day.  Appx., Tab 1, Hummel Tr., 247:24-248:4.  In creating her plan, she would review the names of people in the office who had influence.  See id., at 248:7-22.  She would sometimes review the doctor's prescribing history.  See id., 248:23-249:9.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 47:**

Undisputed that Plaintiff testified as such during her deposition.  Plaintiff disputes that pre-call planning indicates that she exercised independent judgment and discretion, as AZ

required her to do so as part of the interactive selling process.  Plaintiff also refers the Court to

Response No. 13 and 43.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.  Hummel's "dispute" as to the exercise of

discretion and independent judgment is not a dispute of fact, but a dispute as to the legal

significance of the fact asserted.

**DEFENDANT'S FACT 48:**

During her pre-call planning, Hummel would also prepare an opening message and select

the marketing materials she wanted to use in her sales call.  Appx., Tab 1, Hummel Tr., 252:6-

17.  Hummel admitted that the materials she used and the opening messages would differ from

call to call.  Id., at 253:1-10.  Indeed, Hummel testified:

Q.  Okay.  And so based on what you did have -- I mean, what came out at the end of the
pre-call planning?  Did you have a game plan to go into the office?

A.  Yeah.  You would have a -- you know, an opening statement that you wanted to
make, and how you wanted to bridge into the marketing piece, maybe what -- what page you
wanted to use in the marketing piece, because if you only have 30 seconds, a lot of times you can
just cover – you couldn't go through the entire piece, because it's page by page.

So you might think about, you know, I'm just going to use this page today.  And
so you'd know that before you went in.  You might have an opportunity to do it, you might not.

Q.  You would have to make some call as to what would be the most effective page to
use.  Is that right?

A.  Yes.  It may just be the call message.

Q.  That may be it.

A.  Yes.

Q.  Maybe something else.

A.  Correct.

Q.  Okay.  Did all your pre-call plans end up with the same result?  I mean, you did the
same thing every time, same page of the CVA every time?

A.  Did I use the same page every time?

Q.  Right.

    A.  No.

    Q.  And did you have the same opening statement every time?

    A.  No.

<u>Id</u>., 252:2-253:10.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 48:**

Undisputed that the quoted testimony appears on the referenced pages.  However, Plaintiff disputes that this testimony indicates that she exercised discretion and independent judgment, and refers the Court to Response No. 13 and 43.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.  Hummel's "dispute" as to the exercise of discretion and independent judgment is not a dispute of fact, but a dispute as to the legal significance of the fact asserted.

**DEFENDANT'S FACT 49:**

Hummel testified that she would sometimes review a physician's prescribing history but she often found that some of the data provided by AstraZeneca was not specific enough to be useful for the cultivation of her local market.  Appx., Tab 1, Hummel Tr., 20:16-21:3.  She further testified that to overcome this limitation, she would have to come up with information herself in order to figure out what to do.  <u>Id</u>., 21:19-25.  Indeed, she stated: "You know, you had to kind of put it all -- a little bit of each piece together and draw your own conclusion."  <u>Id</u>., 21:8-11.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 49:**

Disputed that the citation to the record supports this statement.  Plaintiff testified that the information concerning prescribing history was provided to her be AZ.  Def. Tab. 1 at 21:12-17.

**DEFENDANT'S REPLY:**

Hummel cannot dispute the fact asserted, which is her own deposition testimony. The testimony cited by Hummel is irrelevant to the fact that Hummel found that the AstraZeneca-provided prescribing history often was not useful and she went beyond it to form "[her] own conclusion." Appx Vol I, Tab 1, Hummel Tr., 21:4-11.

**DEFENDANT'S FACT 50:**

Hummel also testified that she managed a budget for programs she conducted. See Appx., Tab 1, Hummel Tr., 297:2-21. AstraZeneca did not direct her to spend a certain amount of money on a particular physician. Id., 297:9-13. Hummel testified that she and her manager would approve the expenditures that she thought were appropriate. Id., 297:18-21; see also, id., 145:13-21.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 50:**

Undisputed that Plaintiff, with assistance and approval from her manager, managed a budget for programs.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.

**DEFENDANT'S FACT 51:**

Hummel has described her use of discretion and independent judgment on various occasions. In her Career Ladder Self Evaluation, which she completed and submitted in seeking a promotion (and which she wrote in the third person), she wrote, among other things, that she:

- has used her budget to capitalize on establishing herself in her new territory. She has used regional meetings to interact with her counterparts and gain insight on the territory and on customers, which they share as well as getting together on a regular basis to discuss the territory. She has established relationships with people in departments who have access to information and can be used as resources…

- is successful in handling both routine and new situations on her own.  She recognizes the impact of actions and takes appropriate steps to solve the problem.

- is very cognizant of when to be more/less aggressive when selling to physicians.

- gains knowledge of disease states and related products through self-study.  This was evident with her promotion to LTC and her learning Seroquel and Nexium.

- …has focused on doctors that have an immediate and dramatic impact on the business.

- continues to gain access in key accounts by establishing long term relationships, doing lunch/learns and thinking outside of the box, in turn setting herself apart…Holly follows her own judgment in the face of opposition….

- developed strategies to penetrate her significant accounts.   This is evidenced in her business action plans.  She proactively addresses obstacles that may impede account progress…

- has met and developed a business plan with all of her counterparts (CNS and Hospital) that incorporate short-term goals and long-term business objectives.  She understands the different associations to which LTC could benefit and their impact on physicians and other key customers.  She has participated in association meetings, such as NYASCAP to help build relationships.

Appx., Tab 18, Career Ladder Self Evaluation, at 000143640-641; id., Tab 1, Hummel Tr.

148:21-150:9, 150:22-151:10.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 51:**

Undisputed that the self-promotional language appears in the referenced exhibit.  Plaintiff

disputes that this language indicates that she exercised discretion and independent judgment, and

refers the Court to Response No. 13 and 43.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted, nor that she authored the quoted text.

Hummel's "dispute" as to the exercise of discretion and independent judgment is not a dispute of

fact, but a dispute as to the legal significance of the fact asserted.

**DEFENDANT'S FACT 52:**

In her resume, which she wrote, Hummel described herself as a "highly motivated,

resourceful, and high energy Pharmaceutical Sales Professional with progressive management,

administrative and troubleshooting experience within intensive customer service environment."

Appx., Tab 21, 2002 Resume; see also, id., Tab 1, Hummel Tr., 36:8-21, 37:4-38:3. She further

stated that she is a "tenacious problem solver who ascertains needs and goals, identifies

difficulties and formulates and implements strategic solutions to increase effectiveness and

productivity within budgets and time frames." Id., Tab 21, 2002 Resume. Hummel testified that

the resume was accurate. Id., Tab 1, Hummel Tr. 37:23-38:3.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 52:**

Undisputed that the quoted self-promotional language appears in the referenced exhibit.

Plaintiff disputes that the referenced language indicates that she exercised discretion and

independent judgment, as Plaintiff testified that she used the referenced language because that is

the language used within the industry. Def. Tab 1 at 359:8-360:14.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted, and it is undisputed that she authored the

quoted document. Hummel's "dispute" as to the exercise of discretion and independent

judgment is not a dispute of fact, but a dispute as to the legal significance of the fact asserted.

**DEFENDANT'S FACT 53:**

In her resume, which she wrote, Hummel described her Sales Specialist job duties as the

following:

> Organize, coordinate, and assume authority for daily activities,
> functions, and decisions; set priorities activate methodologies, and
> create plans for workflow and distribution. Utilize extensive
> leadership abilities to administer and promote company policies
> and procedures to attain specific organizational goals. Maintain
> open channels of communication to result in optimum delivery of
> service in an environment that fosters self-motivation, team
> concepts and responsible business development. Monitor
> operating budgets and direct the utilization of resources to
> effectively accomplish goals with the budgeted framework.

> Interact and consult with clients: assess and analyze specific situations and individual needs to move business. Establish procedures for excellent customer service including fielding, investigation, and resolving complaints and issues in a timely manner to preserve positive alliances.

Appx., Tab 21, 2002 Resume; see also, id., Tab 1, Hummel Tr., 36:8-21, 37:4-38:3.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 53:**

Undisputed that the quoted self-promotional language appears in the referenced exhibit. Plaintiff disputes that the referenced language indicates that she exercised discretion and independent judgment, and refers the Court to Response No. 52.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted, and it is undisputed that she authored the quoted document. Hummel's "dispute" as to the exercise of discretion and independent judgment is not a dispute of fact, but a dispute as to the legal significance of the fact asserted.

**DEFENDANT'S FACT 54:**

In her 2004 Personal Scorecard, Hummel wrote that her initiatives would be to, among other things:

- Analyze data on a regular basis from CNS counterparts, early view and pharmacy providers
- Leverage deployed resources (CSM, MIS) and valued added resources (NQL, vouchers, etc.) to access difficult customers and drive share
- Team with pharmacy providers and counterparts to identify key prescribers, influencers and consultants
- Ensure development and execution of precall analysis, critical information seeking and strategic influencing
- [Participate in] cylinder meetings to plan, target and address business ongoings with pod members
- Meet[] with LTC counterparts to plan business strategies within our overlapping targets

- Enhance clinical knowledge by keeping abreast with journals and new information related to disease states

- …start researching best possible ways to influence business at Group homes and Adult homes;

- …attend pharmacy provider preceptorship if offered again

Appx., Tab 9, 2004 Personal Scorecard, at 000134836-839; see also, id., Tab 1, Hummel Tr., at 126:8-24, 127:12-24.  Hummel admitted that she actually executed these initiatives.  Id., Tab 1, Hummel Tr., 130:4-6.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 54:

Undisputed that the quoted language appears in the referenced exhibit.  Plaintiff disputes that the referenced language indicates that she exercised independent judgment and discretion, and refers the Court to Response No. 13 and 43.

## DEFENDANT'S REPLY:

Hummel does not dispute the fact asserted, and it is undisputed that she authored the quoted document and that she actually executed all her objectives as described.  Hummel's "dispute" as to the exercise of discretion and independent judgment is not a dispute of fact, but a dispute as to the legal significance of the fact asserted.

## DEFENDANT'S FACT 55:

Hummel used a professional to draft a resume on her behalf.  Appx., Tab 12, Resume; id., Tab 1, 33:14-34:23.  Hummel testified in her deposition that she approved the resume, it was accurate (except for the title of her degree), and she intends to use it in future job searches.  Id., Tab 1, Hummel Tr., 34:14-23, 35:4-36:5.  In her resume, Hummel was described as a "Senior Sales Professional . . . [adept at] efficiently managing a territory and ensuring bottom-line profitability."  Appx., Tab 12, Resume; id., Tab 1, Hummel Tr., 33:14-36:5.  It further stated that, while working for AstraZeneca, Hummel "[p]repared detailed business plans of action

designed to increase market share" and that she "[m]anaged and built the Westchester territory." Id., Tab 12, Resume.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 55:

Undisputed that the quoted self-promoting language appears in the referenced exhibit. Plaintiff disputes that this language indicates that she exercised discretion and independent judgment, and refers the Court to Response No. 52.

## DEFENDANT'S REPLY:

Hummel does not dispute the fact asserted, including that the resume was accurate. Hummel's "dispute" as to the exercise of discretion and independent judgment is not a dispute of fact, but a dispute as to the legal significance of the fact asserted.

## DEFENDANT'S FACT 56:

When applying for the long term care Sales Specialist position, Hummel described herself as a "quick learner and a good strategic thinker who can digest complex information and build a coherent actionable structure from it.  I am also very good at sensing opportunities and creating ways to capitalize on them."  Appx., Tab 22, Email dated October 15, 2002 from Hummel to George Venidis; id., Tab 1, Hummel Tr., 109:4-20, 116:23-117:4.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 56:

Undisputed that the quoted self-promotional language appears in the referenced exhibit.

## DEFENDANT'S REPLY:

Hummel does not dispute the fact asserted, and it is undisputed that she authored the quoted document.

**DEFENDANT'S FACT 57:**

Hummel's manager accompanied her on sales calls approximately every 3-4 weeks, and in connection with these "ride alongs" the manager prepared "field coaching forms" that contained the manager's evaluation of Hummel's selling skills, activities and accomplishments in the field for that day.  Appx., Tab 1, Hummel Tr., 278:9-17, 280:16-23.  On one such field coaching form, her manager wrote that Hummel "puts considerable thought into selecting the appropriate message, preparing the sales dialogue, and selecting the supporting materials."  Appx., Tab 19, March 2000 Field Coaching Form, at 167685; see also, id., Tab 1, Hummel Tr., 287:4-288:5.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 57:**

Undisputed that the quoted language appears in the referenced exhibit, which is from 2000 and not part of the potential class period in this action.  Plaintiff disputes that the referenced language indicates that Plaintiff exercised discretion and independent judgment, and refers the Court to Response No. 13 and 43.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted.  Indeed, according to Hummel, her job duties remained the same throughout her employment at AstraZeneca.  See Hummel Dec., ¶¶ 3, 7.  Moreover, Hummel admitted that throughout her employment that she planned for her calls by, among other things, selecting the appropriate message and sales materials.  See Appx., Tab 1, Hummel Tr. 247:24-248:4, 252:14-253:10.  Thus, Hummel cannot dispute the accuracy or relevance of the Field Coaching Form, attached as Tab 19.  Hummel's "dispute" as to the exercise of discretion and independent judgment is not a dispute of fact, but a dispute as to the legal significance of the fact asserted.

**DEFENDANT'S FACT 58:**

Hummel testified that on most days, she performed her work without management personnel observing her.  Appx., Tab 1, Hummel Tr., 79:10-13, 280:4-15.  She stated that she was accompanied by management in a ride-along about once every 3-4 weeks or every month.  Id., 278:9-17.  Other than ride-alongs, her supervisors did not accompany her in the field unless they met her at a program, which occurred once every two months.  Id., 279:8-280:3.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 58:**

Undisputed that Plaintiff testified as such at her deposition.  However, Plaintiff disputes that the referenced testimony indicates that she exercised discretion and independent judgment, as her managers supervised her in the field by reviewing her call notes, through voice mail, and email.  Hummel Decl. at ____.  [sic]

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted, which is her own testimony.  Hummel's "dispute" as to the exercise of discretion and independent judgment is not a dispute of fact, but a dispute as to the legal significance of the fact asserted.  Moreover, Hummel cannot contradict her testimony through a self-serving declaration.  See, e.g., Santos, 243 F.3d at 684 (2d Cir. 2001); Raskin, 125 F.3d at 63; Nugen, 2007 WL 1149979, at *20; Golden, 2007 WL 4299443, at *9-10.

**DEFENDANT'S FACT 59:**

Hummel used the ISS model in her daily activities as a Sales Specialist.  Appx., Tab 1, Hummel Tr., 96:16-97:10, 98:5-15.  The ISS model called for a "dialogue, not only a presentation", and encouraged PSS's to engage in a "dynamic dialogue" that involved a "complex thinking process" by the PSS.  Id., Tab 15, ISS Presentation - 2004, at AZB_C0003574, 3589-90, 3615; see also, id., Tab 1, Hummel Tr., 96:16-97:10.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 59:**

Undisputed that AZ required Plaintiff to use the ISS model.  Def. Tab 1 at 97:6-10; 98:7-13.  Plaintiff disputes that use of the ISS model indicates that she exercised discretion and independent judgment, and refers the Court to Response No. 17 and 18.

**DEFENDANT'S REPLY:**

Hummel does not dispute the fact asserted, including that the use of the model as it was written would require the PSS to have a "dynamic dialogue" that involved a "complex thinking process" by the PSS.  Hummel's "dispute" as to the exercise of discretion and independent judgment is not a dispute of fact, but a dispute as to the legal significance of the fact asserted.

**IV.    Termination of Hummel's Employment**

**DEFENDANT'S FACT 60:**

Hummel's employment with AstraZeneca ended on October 14, 2005.  Appx., Tab 1, Hummel Tr., 11:4-7.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 60:**

Undisputed.

**DEFENDANT'S REPLY:**

Undisputed.

**DEFENDANT'S FACT 61:**

On November 17, 2005, Hummel, in exchange for a cash payment of more than $13,000 and other settlement benefits, executed a Mutual Consent Release Agreement. Appx., Tab 1, Hummel Tr. 189:2-18, 190:14-21; id., Tab 23, Release.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 61:**

Undisputed.

**DEFENDANT'S REPLY:**

Undisputed.

**DEFENDANT'S FACT 62:**

The release signed by Hummel specifically waived any state law claims pertaining to Hummel's employment that arose prior to the effective date of the Release.  Specifically, it waived:

> [A]ny and all … causes of actions, suits, debts, claims and demands . . . which [Hummel] ever had, now has, or hereafter may have . . . . by reason of any matter, cause or thing whatsoever which has occurred in the past up to the date of execution of this Agreement and, particularly, but without limitation of the foregoing general terms, any federal, state, or local claims arising from or relating in any way to [Hummel's] employment relationship or the termination of [Hummel's] employment relationship with [AstraZeneca].

Appx., Tab 23, Release, ¶ 3; <u>see</u> <u>also</u>, <u>id</u>., Tab 1, Hummel Tr., 189:2-18.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 62:**

Disputed that the citations to the record support this statement.

**DEFENDANT'S REPLY:**

Hummel does not truly dispute Fact 62, but instead quibbles with the legal significance of the Release language.  It is undisputed that the Release contains the language quoted, and that Hummel signed the Release.  <u>See</u> Fact 61.

**DEFENDANT'S FACT 63:**

Hummel certified that she "carefully read the terms of this Release …, that [she] underst[ood] them, and that [she] voluntarily enter[ed] into the Release with the intention of releasing all claims…."  Appx., Tab 23, Release, ¶ 6; <u>id</u>., Tab 1, Hummel Tr., 189:2-18.

Hummel also testified that she had the opportunity to and did in fact review the Release.  Appx., Tab 1, Hummel Tr., 190:22-191:3.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 63:**

 Undisputed.

**DEFENDANT'S REPLY:**

 Undisputed.

**DEFENDANT'S FACT 64:**

 Hummel was provided a period of 21 calendar days within which to consider whether to sign the Release, and was afforded the right to revoke the Release within seven days of signing the Release.  Appx., Tab 23, Release, ¶ 8.  Hummel testified that she signed the Release and did not revoke it.  Id., 189:2-18, 191:4-6.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 64:**

 Undisputed.

**DEFENDANT'S REPLY:**

 Undisputed.

**DEFENDANT'S FACT 65:**

 AstraZeneca also "advised [Hummel] to consult with an attorney prior to executing the Release."  Appx., Tab 23, Release, ¶ 15; id., Tab 1, Hummel Tr., 189:2-18.  Hummel was in fact represented by an experienced New York employment attorney in negotiating the Release with AstraZeneca.  Id., 185:21-186:7.

**PLAINTIFF'S RESPONSE TO DEFENDANT'S FACT 65:**

Disputed that the citations to the record support this statement. Furthermore, Plaintiff testified that she could not recall if she consulted with an attorney prior to signing the release. (Def. Tab 1 at 189:19-190:7)

**DEFENDANT'S REPLY:**

Hummel does not, and cannot, dispute the quoted language, which is taken from the Release agreement she admittedly signed. Moreover, Hummel was in fact represented by counsel in negotiating the Release agreement with AstraZeneca. See Declaration of Joy Schauer, Ex. A (letter to AstraZeneca from Hummel's attorney enclosing original executed Release agreement). In any event, failure to consult with an attorney does not preclude enforcement of a release agreement. See Manti Transp., Inc. v. Associates Commercial Corp., No. 00-CV-6807 (FB), 2002 U.S. Dist. LEXIS 3738, at *10 (E.D.N.Y. Mar. 8, 2002).

Dated:  August 13, 2008                    Jones Day


By:  /s/ Matthew W. Lampe
     Matthew W. Lampe (*pro hac vice*)
     Shari M. Goldsmith  (SG 0909)
     JONES DAY
     222 East 41st Street
     New York, NY  10017
     Telephone: (212) 326-3939
     Facsimile: (212) 755-7306
     mwlampe@jonesday.com
     smgoldsmith@jonesday.com

     Harry I. Johnson, III (*pro hac vice*)
     JONES DAY
     555 S. Flower Street
     Fiftieth Floor
     Los Angeles, CA  90071
     Telephone: (213) 489-3939
     Facsimile: (213) 243-2539
     harryjohnson@jonesday.com

     Theresia Moser (*pro hac vice*)
     JONES DAY
     1420 Peachtree Street, N.E.
     Suite 800
     Atlanta, GA 30309
     Telephone: (404) 521-3939
     Facsimile:  (404) 581-8330
     tmoser@jonesday.com

     *Attorneys for Defendant*
     *AstraZeneca LP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 13, 2008, the foregoing Defendant AstraZeneca LP's

Reply to Plaintiff's Response to Defendant's Statement of Undisputed Material Facts was filed

with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure,

and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic

Service upon the following parties:

Charles Joseph
Michael Palmer
JOSEPH & HERZFELD
757 Third Avenue, Suite 2500
New York, New York 10017
Tel:  212-688-5640
Fax:  212-688-2548

James A. Jones
GILLESPIE, ROZEN, WATSKY & JONES, P.C.
3402 Oak Grove Avenue
Suite 200
Dallas, TX  75204
Tel:  214-720-2009
Fax:  214-720-2291


/s/ Shari M. Goldsmith
Shari M. Goldsmith (SG-0909)
Jones Day
222 East 41st Street
New York, NY 10017-6702
smgoldsmith@jonesday.com
(212) 326-3939