UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
HOLLY MARIE HUMMEL, on behalf of　　)　　No. 07 CIV 5473 (VM)
herself and others similarly situated,　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)　　DECLARATION OF JOY SCHAUER IN
　　　　　　　　Plaintiff,　　　　　　　　　　　)　　SUPPORT OF DEFENDANT'S MOTION
　　　　　　　　　　　　　　　　　　　　　　　)　　FOR SUMMARY JUDGMENT
　　　　　　　-against-　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)　　Judge:　　Victor Marrero
ASTRAZENECA LP,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendant.　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
------------------------------------------------------- x

　　　　I, Joy Schauer, state as follows:

　　　　1.　　I make this declaration based on my personal knowledge and, if called by a court of law, could and would competently testify to the facts set forth herein.

　　　　2.　　I am employed by defendant AstraZeneca LP ("AstraZeneca") as a paralegal in AstraZeneca's Legal Department.

　　　　3.　　Attached hereto as Exhibit A is a true and correct copy of a letter to AstraZeneca from Holly Hummel's attorney, Edward Hernstadt, enclosing the original executed Mutual Consent Release agreement between Ms. Hummel and AstraZeneca. This document was received, and is maintained, by AstraZeneca's Legal Department in the ordinary course of business. It is the regular practice of AstraZeneca's Legal Department to maintain this type of correspondence from counsel representing employees.

　　　　I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

　　　　Executed on August 6, 2008 in Wilmington, Delaware

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　Joy Schauer

LAI-2966699v1

# EXHIBIT A



**FRANKFURT KURNIT KLEIN & SELZ** PC

488 Madison Avenue
New York, New York 10022
Telephone:      (212) 980-0120
Facsimile:      (212) 593-9175

November 22, 2005

Edward Hernstadt
Direct Dial: (212) 826-5582
Direct Fax: (347) 438-2106
e-mail: ehernstadt@fkks.com

**Via Federal Express**

John Bogan, Esq.
AstraZeneca US Legal
1800 Concord Pike (A2C-716)
Wilmington, Delaware 19803

Re:   Holly Hummel

Dear John:

    Enclosed please find two fully executed original Mutual Consent Releases; please send the checks to me, or deposit the money directly into Ms. Hummel's checking account, if that facility still exists. Anticipating my client's impending inquiries, would you also provide me with a final list (via email is fine) of the amounts and approximate dates of the various payments (salary, severance, awards, bonus, etc.) that will be made to Ms. Hummel.

    Again, I am very glad we were able to resolve this matter, and I enjoyed working with you.

Best regards,

Edward Hernstadt

FKKS 280867.v1

FORM 3

MUTUAL CONSENT RELEASE

For and in consideration of the benefits set forth below in paragraph 2 to be provided to me by AstraZeneca (the "Employer") under the AstraZeneca Separation Plan (the "Separation Plan"), I **Holly Hummel** agree as follows:

1. Employee acknowledges that Employee was given notice that Employee's employment with the Employer would be terminated as of **October 14, 2005**. Employee acknowledges that a copy of the summary plan description (the "SPD") describing benefits under the Separation Plan has been provided to Employee.

2. Employee acknowledges that the following benefits offered to Employee under the Separation Plan shall not be payable (i) if Employee terminates employment by reason of an Ineligible Termination (as that term is defined in the Separation Plan) prior to the Termination Date; (ii) if Employee fails to execute this Mutual Consent Release (the "Release"), or (iii) if Employee revokes Employee's execution of the Release in accordance with paragraph 8, below.

   a. Separation Payment. A single lump sum cash payment in the amount of $13,077.00 less applicable deductions.

   b. Health and Dental Coverage. For up to six (6) calendar months following the calendar month in which the Termination Date falls, Employee may elect to continue, at no premium cost, coverage under the health and dental care plans in which Employee is enrolled as of Employee's Termination Date as such plans may be amended, and under the option and at the level the Employee was enrolled at Employee's Termination Date (or, to the extent available, comparable coverage under any successor plans implemented by the Employer during that six-month period). If, during the six (6) month continuation period, Employee secures employment with a new employer, these benefits will become secondary to benefits provided by Employee's new employer and will be administered under standard coordination of benefits principles. At the end of the six (6) month period, Employee may elect to continue health and dental care coverage as permitted under COBRA.

   c. Basic Life Insurance. Coverage under the Basic Life Insurance Plan (or any successor plan implemented by the Employer) will continue at no premium cost to Employee for the period of six (6) calendar months following the calendar month in which the Termination Date falls. The amount of life insurance shall be one times pay or $50,000, whichever is less. Life insurance proceeds shall be paid to the Employee's designated beneficiary. If there is no designated beneficiary, the proceeds will be paid to the Employee's spouse or to Employee's estate in the absence of a spouse.

   d.   <u>Employee Assistance Program (EAP)</u>. Employee and Employee's eligible dependents shall be eligible to participate in the Employee Assistance Program (or any successor program implemented by the Employer) at no cost for a period of six (6) calendar months following the calendar month in which the Termination Date falls.

   e.   <u>Outplacement Assistance</u>. Employee shall be eligible to receive professional outplacement assistance commensurate with Employee's pay band or salary grade level, as determined in the sole discretion of the Employer.

   3.   Employee, for and in consideration of the benefits provided by the Separation Plan and intending to be legally bound, does hereby irrevocably and unconditionally REMISE, RELEASE AND FOREVER DISCHARGE THE EMPLOYER AND ASTRAZENECA of and from any and all action and causes of actions, suits, debts, claims and demands whatsoever in law or in equity, which Employee ever had, now has, or hereafter may have or which Employee's heirs, assigns, executors, or administrators hereafter may have by reason of any matter, cause, or thing whatsoever which has occurred in the past up to the date of execution of this Agreement and, particularly, but without limitation of the foregoing general terms, any federal, state, or local claims arising from or relating in any way to Employee's employment relationship or the termination of Employee's employment relationship with the Employer.

   In addition to but not in limitation of the foregoing, Employee expressly waives any rights, claims, suits, and causes of actions that Employee may have against the Employer and AstraZeneca concerning employment discrimination based upon race, age, color, sex, religion, disability, national origin, or any other protected category or characteristics, including but not limited to any and all claims arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Acts of 1866 and 1871, the National Labor Relations Act, the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 et. seq.), the Americans with Disabilities Act, or any other federal, state, or local human rights, civil rights, or employment discrimination statute, rule, or regulation, with respect to Employee's employment relationship, the termination of Employee's employment or which otherwise arose on or before the date the Agreement is executed by Employee.

   Nothing herein, however, shall affect Employee's right to collect benefits or payments due to Employee under the terms of the qualified retirement plan(s) and/or the executive compensation plan(s) in which the Employee participated as an Employee of the Employer, or to seek or receive any workers' compensation or unemployment compensation benefits for which Employee may be eligible under applicable law.

   4.   Employee further agrees that Employee will not file or cause to be filed any civil action, suit or legal proceeding for personal relief (including any action for damages, injunctive, declaratory, monetary or other relief) against the Employer involving any matter occurring up to and including the date of this Release or involving any continuing effects of any acts or practices which may have arisen or occurred prior to the date of this Release. Employee agrees not to accept any personal relief if any person, organization or other entity brings a claim against the Employer involving any such matter. Employee also agrees to cooperate with the Employer in the defense of

FORM 3

any civil action, suit or legal proceeding brought against the Employer by any person, organization or other entity.

5. Employee hereby certifies that Employee has delivered to the Company any money owed to Company, all Company property, including but not limited to Employee's Company vehicle, computer, ID, expense authorization, corporate credit card, writings, records, data, memoranda, contracts, orders, sale literature, price lists, customer lists, data processing materials (to include all documents stored on Employee's computer and computer disks), manufacturing, technical, and production materials, and other documents, whether or not obtained from the Company, which pertain to or were used by Employee in connection with Employee's employment by the Company.

6. Employee hereby certifies that Employee has carefully read the terms of this Release and the SPD, that Employee understands them, and that Employee voluntarily enters into the Release with the intention of releasing all claims, if any, recited herein, in exchange for Separation Plan Benefits, which Employee acknowledges as adequate consideration and satisfactory. Employee further certifies that neither the Employer, the AstraZeneca group, nor any of their agents, representatives, or attorneys have made any representations to Employee concerning the Release other than those contained herein.

7. Employee acknowledges and agrees that, except as otherwise provided herein, any payments made to Employee under the Separation Plan shall not be used to determine Employee's eligibility for or the amount of any benefits due to Employee under or any other employee benefit plan maintained by the Employer.

8. Employee has been provided a period of twenty-one (21) days within which to consider whether to elect the Separation Plan Benefits. Employee understands that Employee must execute the Release prior to the expiration of said 21-day period in order to elect Separation Plan Benefits and that Employee's failure to timely execute the Release will render Employee ineligible to participate in the Separation Plan. Employee further understands that Employee may revoke execution of the Release by delivery to the Employer of a writing to that effect within the seven (7) days immediately following Employee's signing of the Release. After expiration of said seven (7) days, Employee's right to revoke shall lapse. Employee understands that none of the benefits offered to Employee under the Separation Plan will be provided prior to the later of (i) the date that Employee's right to revoke has lapsed, or (ii) the return of Company property as set forth in paragraph 5, above.

9. The Employer reserves the right to withhold all federal, state, and local income and employment taxes that the Employer determines, in good faith, are required to be withheld on any payments due Employee under this Release.

10. For purposes of this Release, the term "AstraZeneca" means the following group of entities: the Employer and AstraZeneca PLC and their respective direct and indirect parent companies, affiliates, subsidiaries and partnerships, including without limitation, AstraZeneca LP, AstraZeneca Pharmaceuticals LP, and AstraZeneca AB, and their respective former and present

FORM 3

officers, directors, trustees, shareholders, limited and general partners, employees and agents, and their respective successors and assigns, heirs, executors, and administrators.

11. The term "Person" means any individual who brings or could bring a claim, action, or lawsuit against the Employer or AstraZeneca with respect to any matter released or discharged by Employee under the Release to include, without limitation, Employee's heirs, executors, administrators, spouse, or beneficiaries.

12. The Release constitutes a binding and enforceable agreement between the Employer and the Employee and shall in all respects be interpreted, enforced, and governed under the internal laws of the State of Delaware.

13. In the event that any portion of a provision of the Release is found invalid or unenforceable by any court of competent jurisdiction, the holding of such court shall not affect the remainder of such provision or any other provision of the Release, and the remainder of such provision and all other provisions of the Release shall remain valid and enforceable.

14. Employee acknowledges and agrees that the employment relationship Employee had with the Company has been permanently and irrevocably severed; and that Employee will not apply for or otherwise seek employment or re-employment as an employee, or engagement as a consultant or independent contractor, with the Company or AstraZeneca.

15. Employee hereby certifies that Employee has carefully read the terms of this Release, and acknowledges that by delivery of the Release to Employee, the Employer has advised Employee to consult with an attorney prior to executing the Release.

IN WITNESS WHEREOF, and intending to be legally bound, the Employee executes the foregoing Release this ___17th___ day of __November__, 2005.

___Holly Hummel___
(Print Name)

___Holly Hummel___
(Signature)

___118581878___
(Social Security Number)

Form 3. Mutual Consent Release
(11/01/02, revised 05/21/03)

FORM 3